Mark E. Griffin, OSB No. 761528
Griffin & McCandlish
1631 NE Broadway, #721
Portland, OR 97232
mark@markgriffin.com
Telephone: (503) 224-2348

FILED27 OCT '11 13:37USDC-ORP

Of attorneys for Plaintiffs

## IN THE UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF OREGON

#### Portland Division

| | |
|---|---|
| KIP O'CONNOR, LISA KONELL, and BIG MOUNTAIN CO. an Oregon Business Corporation /dba BIG MOUNTAIN EXCAVATION<br>Plaintiffs,<br><br>v.<br><br>COUNTY OF CLACKAMAS, OREGON, MT. HOOD CORRIDOR CPO, a Community Planning Organization, STEVE HANSCHKA, individually and as an employee of the Clackamas County Planning Division, MICHAEL McALLISTER, individually and as an employee of the Clackamas County Planning Division, KIM BENTHIN, individually and as an employee of the Clackamas County Department of Transportation and Development, GARY HEWITT, individually and as an employee of the Clackamas County Planning Division, and CARL COX, individually and as Compliance Hearings Officer for Clackamas County, Don Mench, Dave Fulton, Roy Bellows, Donna Bellows and Janine Bertram, all individually as board members or committee members of the Oregon Mt. Hood Corridor CPO.<br><br>Defendants. | CASE No. **CV 11 - 1 297**   SI<br><br>COMPLAINT FOR VIOLATION OF DUE PROCESS, EQUAL PROTECTION, AND FIRST AMENDMENT RIGHTS AND FOR INTENTIONAL INTERFERENCE WITH CONTRACTS AND ECONOMIC RELATIONS<br><br>REQUEST FOR JURY TRIAL |

# 43514

Plaintiffs allege:

## JURISDICTION AND VENUE

1. This court has jurisdiction pursuant to 28 USC §1331 based on 42 USC 1983, 28 USC §1332(a)(1) and 28 USC § 1367. Venue is properly in this court because all plaintiffs and defendants are residents of Oregon and all transaction occurred in Clackamas County, Oregon.

## PARTIES

2. Plaintiff Kip O'Connor ("O'Connor") is a resident of Welches, Oregon. O'Connor is a minority member in Lifestyle Ventures, LLC, ("Lifestyle") an Oregon limited liability company, and is the sole owner of Big Mountain Co. (" Big Mountain") an Oregon Corporation

3. Plaintiff Lisa Konell ("Konell") is a resident of Sandy, Oregon, and at all materials times was O'Connor's fiancee.

4. Plaintiff Big Mountain is properly licensed in the state of Oregon as a construction contractor with its principle place of business in Brightwood, Oregon.

5. Clackamas County, Oregon, (Clackamas County) is an incorporated county in Oregon. As such, Clackamas County is responsible for enforcing land use and construction laws including laws relating to development along the Sandy River. Among other things, Clackamas County does so through the Clackamas County Planning Division ("Planning Division") and the Clackamas County Department of Transportation and Development. .

6. Mt. Hood Corridor Community Planning Organization ("Mt. Hood CPO") is a community planning organization, recognized by Clackamas County. The purpose of the Mt. Hood CPO is to involve citizens in land use planning in unincorporated Clackamas County. The CPO program is the method Clackamas County uses to meet Goal 1, Citizen Involvement, of Statewide Planning Goals. At all material times, Clackamas County has officially recognized the Mt. Hood CPO and verified that the Mt. Hood CPO had and follows it by-laws, regularly meets, and keeps copies of minutes of its meetings.

7. Defendant Michael McAllister ("McAllister") is the Director of the Clackamas County Planning Division. Plaintiffs are informed and believe that McAllister is a resident of Clackamas County, Oregon.

8. Defendant Kimberly Benthin ("Benthin") is a Code Compliance Specialist who works for the Clackamas County Department of Transportation and Planning. Plaintiffs are informed and believe that Benthin is a resident of Clackamas County, Oregon.

9. Defendant Steve Hanschka ("Hanschka") is an employee of the Clackamas County Planning Division. Plaintiffs are informed and believe that Hanschka is a resident of Clackamas County, Oregon.

10. Defendant Gary Hewitt ("Hewitt") is an employee of the Clackamas County Planning Division. Plaintiffs are informed and believe that Hewitt is a resident of Clackamas County, Oregon.

11. Defendant Carl Cox is a hearings officer for Clackamas County. Plaintiffs are informed and believe that Cox is a resident of Bellevue, Washington.

12. Defendants Dave Fulton, Roy Bellows, Donna Bellows and Janine Bertram, were at all material times board members of the Oregon Mt. Hood Corridor CPO.

13. Defendant Don Mench was at all material times the chairman of the Oregon Mt. Hood Corridor CPO Land Use.

## GLOSSARY

14. Oregon Department of State Lands ("ODSL") is an agency of the State of Oregon. ODSL is responsible for enforcing state land use and planning laws including laws relating to development near rivers and streams.

15. Oregon Department of Fish and Wildlife ("ODFW") is an agency of the State of Oregon. ODFW is responsible for protecting fish and wildlife habitat.

16. The Army Corps of Engineers ("ACOE") is a federal agency responsible for

protecting federal interests relating to rivers and streams.

17. Principle River Conservation Area ("PRCA") is land that is generally within a quarter mile of the mean high water line of the various streams and rivers in Clackamas County. Within this zone, special development rules of the Clackamas County Zoning and Development Ordinance apply.

18. Federal Emergency Management Agency ("FEMA") is a federal agency which provides flood insurance and emergency management services.

19. Base Flood Elevation ("BFE") is a measurement of the land elevation that has been determined to be inundated with water during 1% of the major flooding events.  BFE is used to determine whether, where and what type of, development is permitted in the flood plain.

20. Flood plain map.  A map used by state and federal agencies which shows BFE's.

21. An Emergency Authorization Permit is a permit issued to landowners by ODSL during flood events which permits landowners to engage in construction or excavation projects in order to protect river banks from erosion during flood events.  Copies of Emergency Authorizations are sent to Clackamas County, wherein Oregon statutes give the county 21 days to object to the issuance of the permit.

22. A No Permit Required Letter is an authorization issued to landowners by ACOE during flood events which permits landowners to engage in construction or excavation projects in order to protect river banks from erosion during flood events.

STATEMENT OF FACTS

23. In May, 2007, O'Connor purchased lots 4200-4400, Liberty Lodge Subdivision, in the County of Clackamas, located in Rhododendron Oregon.  O'Connor subsequently transferred lots, 4200 and 4300 to Lifestyle Ventures and transferred 4400 to Lisa Konell..  These lots are within the Sandy/Salmon River PRCA.  At all material times, Lifestyle Ventures and Konell owned this property.

24. In or about October, 2007, O'Connor met with defendant Hanschka to determine the BFEs for the lots. O'Connor and Hanschka reviewed FEMA and County maps which indicated that plaintiff could construct houses on the lots, provided he verified the elevations where the homes were to be located on the lots. Plaintiff verified the BFE information, by obtaining elevations certificates from professional land surveyors, which indicated the homes were buildable because they were to be located above the BFE.

25. In 2008, O'Connor, with the authorization and consent of the Clackamas County Road Department, began development of the property by improving Relton Lane, which immediately adjoined lots 4200-4400. O'Connor also dug septic test holes and met with neighbors and county employees about completion of Relton Lane.

26. In January, 2009, the Sandy River suffered the fourth largest flood event ever recorded. The flood caused bank erosion on many of the lots up and down river from 4200-4400. Alluvial materials and large trees that had been washed into the river, alter the flow of the water such that it threatened erosion of lots 4200-4400 and two homes downstream from these lots, which were owned by Lifestyle.

27. On or about February 2, 2009, after meeting on site with ODSL and ODFW, O'Connor received an Emergency Authorization from ODSL to protect the bank from further erosion. A copy of this Emergency Authorization was sent to Clackamas County Planning Department. Clackamas County did not object to this Emergency Authorization, and pursuant to their own land use regulation O'Connor was not required to obtain an FDP prior to performing emergency work..

28. On or about February 14, 2009, O'Connor received a No Permit Required letter from ACOE, and began work under the emergency authorization.

29. On or about February 26, 2009, O'Connor received a signed copy of the road permit for Relton Lane from Clackamas County Engineering .

30. On or about April 30, 2009, except for relandscaping the river bank, O'Connor had substantially completed work on a revetment which he had constructed pursuant to the Emergency Authorization. A revetment is a facing, made of natural stone, which sustains an embankment. The revetment met all development and construction requirements.

31. On July 20, 2009, defendant Benthin notified Lifestyle Ventures that the revetment was a potential violation of the Clackamas County Code. Benthin requested that complete Flood Plain Development Permit ("FDP") and PRCA permits be submitted by Aug 20, 2009.

32. On July 22, 2009, without permission of plaintiffs, Clackamas County employees trespassed upon lots 4200-4400 and took pictures of the property.

33. On July 29, 2009, O'Connor advised Kim Benthin in a telephone conversation that he would begin the complex process of the FDP and PRCA permits by the Aug 20th imposed date

34. On July 30, 2009, Benthin sent letters to Lifestyle and Lisa Konell which stated that O'Connor had violated the County Code by construction of the revetment, demanded that the FDP and PRCA permits be completed by August 20, 2009, and threatened legal action and civil penalties of $3500 per day.

35. On August 11, 2009, O'Connor submitted both the FDP and PRCA permit application. The application process is complex and expensive, and includes engineering reports and surveys. By Oregon statute, applicants are allowed 180 days to complete the applications. The deadline for plaintiffs was February 13, 2010.

36. On August 11, 2009, Hanschka notified plaintiffs that the FDP application  (FDP #Z0519-09-F) was  incomplete. This notice specified the completion date for the application as February 13, 2010. Among other things,  defendant Hanschka advised O'Connor that the elevation certificate signed by Fir Wood Design Group was not acceptable because by Hanschka determination, it indicated that the elevation was below the BFE for the proposed building site.

Page 6 COMPLAINT FOR DAMAGES; REQUEST FOR JURY TRIAL

At that time Hanschka knew the elevation he was using to make this determination was upriver from the site and therefore considerable higher than where the lots were located.

37. On August 20, 2009, O'Connor advised Benthin that he was securing a survey/engineering company to obtain the required information and that he was aware that he had 180 days from August 11 to complete the application processes.

38. On August 26, 2009, the Planning Division notified plaintiffs Konell and O'Connor that the PRCA application (PRCA #Z0520-09-R ) was incomplete and stated that the deadline for completion is February 7, 2010.

39. On August 27, 2009, ODSL and ACOE inspected 3 separate locations where O'Connor had built revetment projects, including the one built on lots 4200-4400 on Relton Lane, and advised O'Connor that all sites were in compliance with their jurisdictional requirements.

40. On or about September 9, 2009, Benthin notified O'Connor and Konell that they were illegally operating a construction business on residential property. O'Connor and Konell had a building permit and were building a personal residence on the property.

41. In October, 2009, O'Connor contracted with Firwood Design Group to complete requirements for permit applications.

42. On October 27, 2009, Benthin mailed two citations to Lifestyle Ventures for properties described as 64285 E Relton Lane (Lot 4200) and 64275 E. Relton Lane(Lot 4300) and one to Konell for property described as 64265 E. Relton Lane (Lot 4400), for failure to complete the application for the FDP. The citation imposed forfeitures of $100 and threatened penalties of $3500 for each property. As noted above, on that date, the statutory deadline to complete the application was February 13, 2010.

43. On November 5, 2009, O'Connor obtained BFE certificates and no fill certifications from Firwood Design Group. Defendant Hanschka determined, based on his use of an improper

BFE, that these certifications were not adequate even though they fully complied with Zoning and Development Ordinance ("ZDO") requirements. Hancshka also contacted Firwood Design Group and suggested that the certifications had been forged by O'Connor, and that Fir Wood was not qualified to be working on projects such as O'Connor's.

44. On Nov 14, 2009, O'Connor testified as an expert witness in a civil action in Circuit Court in Clackamas County . O'Connor testified that Clackamas County is inefficient in taking care of the flooding problems and had allowed an improper revetment structure to be constructed on the Sandy River which caused Jim and Amy Monroe to lose their home. Subsequently, O'Connor began writing news articles documenting and criticizing Clackamas County's poor management, lack of common sense, violation of Flood Plain laws and ordinances, and an inadequate understanding of the flooding problems in the Mt. Hood area and how to properly address them.

45. On November 25, 2009, Benthin contacted Firwood Design Group to discuss topographical and site conditions at lots 4200-4400. Firwood advised Benthin that plaintiffs have met BFE requirements.

46. On December 2, 2009, O'Connor submitted the final application documents to Clackamas County, including the required "no adverse affects" statement from Firwood Design Group. Hewitt immediately presented O'Connor with a Notice of Incomplete Application, dated December 3, 2009, addressed to O'Connor, Konell and Lifestyle Ventures. The Notice states that O'Connor had not presented documents which in fact had been included in final application submittal just given to Hewitt at that time. The Notice also indicates falsely that FEMA was concerned that the revetment which O'Connor had constructed at lots 4200-4400 was illegal and had the potential to increasing flood insurance rates throughout the entire Clackamas County area. On that same day Hanschka circulated the notice through out the community where O'Connor lived by forwarding it to defendant Don Mench.

Page 8 COMPLAINT FOR DAMAGES; REQUEST FOR JURY TRIAL

The deadline for completion of the application had not changed, and was indicated on this notice as February 13, 2010.

Although Hewitt was aware that plaintiffs had completed the application process, he advised O'Connor that plaintiffs could not rely on the BFE certification from Firwood Design Group because it was incorrect. Firwood is a professional engineering and surveying firm with expertise which meets the requirements of the Clackamas County Zoning and Development Ordinance.

Hewitt advised O'Connor that Hanschka had determined that O'Connor could not get approval of his application without obtaining a Letter of Map Amendment ("LOMA") from FEMA, and therefore Hanschka had given Hewitt a LOMA application form to deliver to O'Connor. Because this was a new requirement, Hewitt told O'Connor that plaintiffs must extend the time the County had to make a decision if plaintiffs wanted to get the LOMA survey work completed, otherwise plaintiffs' application would expire and they would have to pay all the fines at $3500 per day per lot since the first day of beginning construction of the revetment. Because of this threat, on December 2, 2009, O'Connor signed an extension and agreed to obtain the LOMA.

Later on the night of December 2, 2009, at 7:18 pm, Hancshka emailed O'Connor advising him that he had gotten the wrong form from Hewitt, and that O'Connor needed a different, and more complex form. Hancshka provided the form to O'Connor and falsely advised O'Connor that the County was under significant pressure from FEMA for the revetment work. Hancshka also stated that the County might find that Firwood Design Group did not have the qualifications to process a LOMA and suggested other companies for O'Connor to use.

47. On December 22, 2009, FEMA received the LOMA paperwork.

48. On January 7, 2010, McAllister attended a meeting of the Mt. Hood CPO, and accused O'Connor of violating flood plain development and construction laws, thereby risking

increased flood insurance rates in the county. He also suggested that O'Connor's construction license should be revoked. This discussion was not an agenda item posted in the public notice for this meeting and O'Connor was not given any notice that the CPO would consider these issues.

The CPO voted to ratify its findings that O'Connor had "demonstrated 'personal, irresponsible evasion of codes';" stated that any countywide insurance flood insurance rate increases should be paid by O'Connor, Konell and Lifestyle Ventures; recommended that the County seek revocation of O'Connor's contractor's license, that plaintiffs be fined more than $10,000, and that their findings would be circulated to numerous state agencies. It also concluded that the BFE certifications, maps and information submitted by the Firwood Design Group were inadequate and incorrect.

CPO did not comply with its by-laws and grievance procedures for this action by giving O'Connor, Lifestyle, or Konell any opportunity to be heard. The CPO then published this information on its web-site, where it has remained in spite of O'Connor's demand that the accusations are not true and should not be circulated worldwide on the internet.

49. On January 12, 2010, Clackamas County approved the PRCA permit but imposed the requirement that plaintiffs complete the FDP.

50. On February 3, 2010, and in spite of O'Connor's signing the extension of time to complete the applications, the payment of the $100 forfeiture fees, which is for the expressed purpose of avoiding additional fines, the statuary 180 day time period to complete the permit and the fact that Clackamas County FDP regulations did not require an FDP prior to performing Emergency Work, Benthin requested a code violation hearing with substantial fines based on the failure of O'Connor to complete the application by October 26, 2011, and for performing emergency work without an FDP.

51. On February 9, 2010, FEMA requested a signed copy of the Community

Page 10 COMPLAINT FOR DAMAGES; REQUEST FOR JURY TRIAL

Acknowledgment form from Clackamas County on the LOMA application, along with elevation requests from the surveyor. The Community Acknowledgment form is required by FEMA to be completed by Clackamas County and submitted with the LOMA materials because the Lots 4200-4400 were within the regulatory floodway for the Sandy River. Signing of the Acknowledgment is a ministerial function.

52. On February 12, 2010, Lifestyle Ventures requested that the hearing on the code violation be set over due to the extension on the application and until the processing of the LOMA application had been completed. Benthin opposed this extension and on February 18, 2010, Cox denied postponement.

53. On February 16, 2010. Hanschka refused O'Connor's request that he sign the LOMA application as requested by FEMA. Because the LOMA could not be processed without the acknowledgment, Hanschka's refusal effectively prevented plaintiffs from complying with the requirements imposed upon plaintiffs by defendants in December, 2009, to submit a LOMA application.

54. On February 23, 2010, the Code Violation hearing was held. The issue, as stated in the Notice, was the failure of plaintiffs to submit land use applications. Evidence at the hearing indicated that the applications had been submitted and were complete. Benthin falsely testified at the hearing that O'Connor had over 13 similar code violations for illegal work on the river. The hearing was recorded by audio equipment pursuant to County Code Ordinances.

After the conclusion of the hearing, Cox engaged in an ex parte conversation with Don Mench of Mt. Hood CPO. Mench advised Cox that a finding that the permit was complete was not acceptable and further sanctions should be imposed on plaintiffs.

55. On March 8, 2010, O'Connor again contacted Hanschka and requested unsuccessfully that Hanschka sign the Community Acknowledgment form.

56. On March 12, 2010, FEMA again requested that O'Connor submit a signed

Page 11 COMPLAINT FOR DAMAGES; REQUEST FOR JURY TRIAL

Community Acknowledgment form. Because of Hanschka's refusal to sign this document, plaintiffs were unable to submit it with the LOMA application. However, O'Connor sent FEMA all the info he had from the public records for properties adjoining Lots 4200-4400, including a survey map of the entire area, all of the elevation certificates and addresses, and a letter explaining the survey, location, and other pertinent information.

57. On March 17, 2010, Cox issued a "Continuing Order." Pursuant to the hearing officer rules and county ordinances, a final order should have been issued because the hearing record was closed.

The Order was based upon evidence not presented at the hearing, but obtained through ex parte communications after the hearing from County staff the was available but did not testify at the hearing. This order addressed issues other than the completion of the applications. It presented false and unsubstantiated information as "fact" and portrayed plaintiffs in a false light.

Assuming that the Continuing Order was proper, if no objections had been made to a continuing order within 10 days of its issuance, the order would have been effective. However, O'Connor and Konell timely filed objections to a continuing order. Cox was obligated pursuant to County Ordinances and hearing rules to respond to the objections prior to the continuing order going into effect. Cox did not respond to the objections, instead allowing the continuing order to be published and circulated in the community as if it contained valid findings and binding legal conclusions.

By not issuing a final order as required, plaintiffs were denied any right to seek a writ of review in Clackamas County Circuit court, which was required by both Oregon Statutes, County Ordinances, and the County's Hearing Officer Rules.

Thereafter, and in violation of County Ordinances, County Hearings Officer Rules and the terms of the standing order, Benthin manipulated the hearings records further to violate and prevent O'Connor to seek redress from the circuit court.

Page 12 COMPLAINT FOR DAMAGES; REQUEST FOR JURY TRIAL

58. On March 18, 2010, ODSL and ODFW investigated a complaint filed by Don Mench about the revetment work which had been done by plaintiffs. ODSL issued a compliance letter for all the revetment work on March 29, 2010, but also stated that revegetation was part of the permit and must be maintained for 3 years. Cox's Continuing Order, however, prohibited such activity. The Continuing Order, thus, created non-compliance with the state-issued permit. On December 16, 2010, the ODSL confirmed that the revetment work was in compliance with the permit which had been issued to plaintiffs.

59. On March 30, 2010, O'Connor again asked Hanschka to sign the FEMA form so that plaintiffs could complete the LOMA application. Hanschka refused.

60. Plaintiffs are informed and believe that defendants' requirement that plaintiffs' complete a LOMA application was a sham, and that defendants did not intend to permit plaintiffs to complete the application or obtain approval from FEMA.

61. On March 30, 2010, Benthin, based on a complaint filed by Don Mench and the CPO, served Lifestyle two separate code violations for the two homes owned by Lifestyle directly down river from Lots 4200-4400. These homes were built by Big Mountain.

62. On April 14, 2010, Benthin, notified the Pepos, one of Big Mountain's clients, that their art studio, which Big Mountain had constructed in 2005, was considered 'habitable space,' and was illegal. This studio had been featured in Oregon Homes magazine and had been fully inspected and approved by Clackamas County Building Officials more than five years prior to this complaint. At the time of this complaint Big Mountain was constructing a sauna for the Pepos. Without any hearing, Benthin shut down this job and subsequently did not respond to the owners' timely request to discuss the shut down order. As a result of this complaint, Big Mountain lost the business relationship with the Pepos. Plaintiffs have a good faith belief that this complaint was falsely originated by Don Mench and the CPO

63. On May 19, 2010, O'Connor received Clackamas County's Denial for a Flood Plain

Development permit. The Denial is based upon fabricated and incorrect information.

64. In or about July, 2010, O'Connor requested information from Benthin which substantiated her testimony at the Code Violation hearing that O'Connor had over 13 code violations.

65. On or about July 12, 2010, O'Connor again requested that Benthin provide a list of O'Connor's code violations about which she had testified at the hearing on February 23, 2010. Benthin responded that "If all goes well today I will have it compiled and emailed to you today. I checked my testimony and it is only 13 violations."

66. On or about July 14, 2010, Benthin sent O'Connor a list of violations. Most of the properties where the violations allegedly occurred were properties O'Connor had never worked on. Contrary to her testimony the list Benthin provided indicated that 4 of the 13 alleged violations that had occurred prior to the hearing were actually the violations being heard at the hearing, and the remaining alleged violations were nothing more than authorized emergency work during floods where the FDP was obtained in compliance with the County Land Use regulations by the owners, after the emergency work had been completed. All of O'Connor jobs included in the alleged 13 violations at the hearing had been properly approved by ODSL, ODFW, ACOE and the County or were in the process of being approved prior to the hearing.

67. Based on the information received, O'Connor requested a copy of the recorded hearing from Benthin, but was advised that notwithstanding her ability to review the record, it was now lost. Plaintiffs are informed and believe that the audio record of the hearing of February 23 has been completely lost or destroyed by defendants.

68. On December 14, 2010, Benthin issued a code violation to O'Connor and Konell that they were using residential property for commercial purposes. Benthin had no meritorious basis to issue the notice of the violation.

69. On December 22, 2010, and March 9, 2011, Benthin issued code violations to Fred Accuardi for his subdivision which Big Mountain had developed. Benthin had no meritorious basis to issue the notice of these violations.

70. On March 22, 2011, O'Connor met with County building officials who agreed there was no violation at Fred Accuardi's subdivision, and they forwarded Benthin written notice of this fact at that time. Notwithstanding this information, Benthin scheduled Mr. Accuardi's complaint for a hearing wherein she is seeking substantial fines from Big Mountain and O'Connor.

71. On March 22, 2011, Benthin issued a code violation to O'Connor and Konell for unlawful business activities at a residential site. There is no basis for this code violation. Plaintiffs are informed and believe that the code violation was issued after, and because of, O'Connor's questioning of Benthin about the above two alleged code violations.

72. In or about May, 2011, the County advised William Wright that the repair work to his property done after a flood is a potential code violation. Mr. Wright is a client of the plaintiffs. This work was for damage to his well, septic system and a storage shed. Big Mountain did the repair work which requires no permits. There is no basis for the violation. O'Connor has a good faith belief the this complaint was made by the CPO.

73. In or about September, 2011, Benthin issued a notice of a possible code violation against Terry and George Skorich for failing to obtain a PRCA permit for landscaping. Big Mountain performed this work. No permit is required for such work. There is no basis for the violation. O'Connor has a good faith belief that the CPO was responsible for this complaint

### FIRST CLAIM FOR RELIEF AGAINST ALL DEFENDANTS

(Fourteenth Amendment---Violation of Substantive and Procedural Due Process)

74. Plaintiffs O'Connor, Konell and Big Mountain bring this claim for violation of substantive and procedural due process under the Fourteenth Amendment.

75. Plaintiffs reallege paragraphs 1-73 and incorporate them be reference herein.

76. At all material times, defendants have acted under color of law.

77. Defendants' actions in denying and delaying permits, issuing citations, conducting hearings, and otherwise refusing to permit plaintiffs to conduct legal activities were arbitrary and capricious and in violation of fundamental concepts of due process. Defendants' actions did not substantially advance any governmental purpose.

78 As a result of their unconstitutional treatment by defendants, plaintiffs Konell and O'Connor have been damaged the following amounts to be determined at trial which plaintiffs believe to exceed $1,000,000.

79. The conduct of defendants involved reckless and callous indifference to plaintiffs federally protected rights and plaintiffs are entitled to punitive damages in an amount to be determined at trial.

80. Plaintiffs are entitled to reasonable attorney fees and costs pursuant to 42 USC 1988.

SECOND CLAIM FOR RELIEF AGAINST ALL DEFENDANTS

(Violation of 42 USC 1983–First Amendment Retaliation)

81. Plaintiffs reallege paragraphs 1-78 and incorporate them by reference.

82. Plaintiffs exercised their first amendment rights as follows:

Plaintiffs O'Connor and Konell: their right to petition the government for redress by insisting that Clackamas County issue permits to them to conduct development activities on their property.

Plaintiff O'Connor:

A. His right to petition the government for redress by insisting that Clackamas County issue permits to him and Big Mountain to conduct the business of development, construction and excavation on behalf of themselves and others;

Page 16 COMPLAINT FOR DAMAGES; REQUEST FOR JURY TRIAL

B. His right to testify that the Clackamas County was inefficient in flood planning and response and had allowed the construction of an improper revetment structure on the Sandy River;

C. His right to petition the government for redress by insisting that Mt. Hood CPO conduct community planning meetings fairly and to cease and desist from publishing false and defamatory statements about him;

D. His right to publicly criticize defendant Mt. Hood CPO for failing to properly conduct community planning meetings;

E. His right to use the newspaper and the internet as a forum for expressing his opinions and criticizing Clackamas County public policies and staff conduct regarding flood issue in the Mt. Hood area.

83. As alleged above, defendants retaliated against plaintiffs for exercising First Amendment Rights.

84. Defendants' actions were in violation of Plaintiffs' First Amendment Rights, in particular freedom of speech and the right to petition the government for redress of grievances, as applied to the states through the Fourteenth Amendment.

85. At all material times, defendants have acted under color of law.

86. As a result of their unconstitutional treatment by defendants, plaintiffs Konell and O'Connor have been damaged in amounts to be determined at trial believed to exceed $1,000,000.

87. The conduct of defendants involved reckless and callous indifference to plaintiffs' federally protected rights and plaintiffs Konell and O'Connor are entitled to punitive damages in an amount to be determined at trial.

88. Plaintiffs are entitled to reasonable attorney fees and costs pursuant to 42 USC 1988.

THIRD CLAIM FOR RELIEF AGAINST ALL DEFENDANTS

(Violation of 42 USC 1983—Fourteenth Amendment---Equal Protection)

89. Plaintiffs reallege paragraphs 1-85 and incorporate them by reference herein.

90. Defendants treated plaintiffs differently from other land owners, developers and contractors in violation of the equal protection guaranteed by the Fourteenth Amendment by taking retaliatory action against them as alleged in the Second Claim, by denying and delaying permits to them or their businesses, by issuing numerous non-meritorious citations against them and their businesses, by conducting sham administrative hearings, and by issuing illegal orders which were not based in fact or law.

90. Defendants actions were irrational and arbitrary and were motivated by animosity, ill will and vindictiveness against plaintiffs for having exercised their First Amendment Rights, as alleged in the Second Claim.

91. At all material times, defendants were acting under color of law.

92. As a result of their unconstitutional treatment by defendants, plaintiffs have been damaged in amounts to be determined at trial believed to exceed $1,000,000.

93. The conduct of defendants involved reckless and callous indifference to plaintiffs' federally protected rights and plaintiffs are entitled to punitive damages in an amount to be determined at trial.

94. Plaintiffs are entitled to reasonable attorney fees and costs pursuant to 42 USC 1988.

FOURTH CLAIM FOR RELIEF AGAINST ALL DEFENDANTS

(Intentional Interference with Contracts and Business Relations)

95. Plaintiffs reallege paragraphs 1-94 and incorporate them by reference herein.

96. Defendants intentionally interfered with the business relations of plaintiffs O'Connor and Big Mountain by improper means or for an improper purpose.

97. As a result of their interference by defendants, plaintiffs have been damaged in amounts to be determined at trial believed to exceed $1,000,000.

98. The conduct of defendants was wilful and malicious and plaintiffs are entitled to punitive damages in an amount to be determined at trial.

WHEREFORE, plaintiffs pray:

A. For damages against defendants in amounts to be determined at trial.

B. For punitive damages against defendants in amounts to be determined at trial.

C. For reasonable attorney fees.

D. For costs.

E. For such other and further relief as this court deems appropriate.

F. Plaintiffs request a jury trial on all issues so triable.

Dated:  October 27, 2011

Mark E. Griffin, OSB No. 76152
GRIFFIN & McCANDLISH
mark@markgriffin.com
Telephone: (503) 224-2348