Daniel J. Rohlf, OSB 99006
rohlf@lclark.edu
Pacific Environmental Advocacy Center
10015 S.W. Terwilliger Blvd.
Portland, OR 97219-7768
Telephone: (503) 768-6707
Fax: (503) 768-6642

*Counsel for Defendants Mt. Hood Corridor CPO, Don Mench,*
*Dave Fulton, Roy Bellows, Donna Bellows, and Janine Bertram*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **KIP O'CONNOR**, et al.<br><br>              Plaintiffs,<br><br>v.<br><br>**COUNTY OF CLACKAMAS**, et al.,<br><br>              Defendants. | Civil No. 3:11-CV-1297-SI<br><br>**MEMORANDUM IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' CAUSES OF ACTION AGAINST MT. HOOD CORRIDOR CPO**<br><br>**ORAL ARGUMENT REQUESTED** |

TABLE OF CONTENTS

Table of Cases ................................................................................................. ii

Table of Authorities ........................................................................................iv

I.        INTRODUCTION ....................................................................1

II.       FACTUAL BACKGROUND ....................................................1

III.      LEGAL BACKGROUND .........................................................7

    A.  Federal Laws...............................................................................7

    B.  Oregon's Anti-SLAPP Law .....................................................10

IV.       STANDARD OF REVIEW .....................................................13

V.        ARGUMENT ..........................................................................14

    A.  This Court should dismiss Plaintiffs' federal causes of action .........................15

    B.  This Court should grant MCH-CPO's special motion to dismiss ...................21

VI.       CONCLUSION ......................................................................26

BRIEF IN SUPPORT OF MHC-CPO's MOTION TO DISMISS

# TABLE OF CASES

*Adams v. Southern Cal. First Nat'l Bank,* 492 F.2d 324, 330-331 (9th Cir.1974) ...................... 16

*American Mfrs. Mut. Ins. Co. v. Sullivan*, 529 U.S. 40 (1999).................................................... 15

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .............................................................................. 14, 21

*Balistreni v. Pacifica Police Dept.*, 901 F.2d 696 (9th Cir. 1988) ......................................... 13, 17

*Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007) ........................................................... 13

*Brentwood Academy v. Tennessee Secondary School Athletic Association*, 531 U.S. 288 (2001)
............................................................................................................................. 8, 9, 20

*Brunette v. Humane Soc'y of Ventura County*, 294 F.3d 1205 (9th Cir. 2002) ....................... 9, 18

*Cervantes v. City of San Diego*, 5 F.3d 1273 (9th Cir. 1993) .................................................. 13

*Christian Gospel Church, Inc. v. San Francisco*, 896 F.2d 1221 (9th Cir. 1990)................... 18, 19

*Daniels v. Williams*, 474 U.S. 327 (U.S. 1986))........................................................................ 7

*Dent v. West Virginia*, 129 U.S. 114 (1889) ............................................................................ 8

*DuBoff v. Playboy Enterprises Inter'l Inc.*, Civil No. 06-358-HA, 2007 WL 1876513 (D. Or.
    June 26, 2007).............................................................................................................. 19, 22

*Englert v. MacDonell*, Civil No. 05-1863-AA, 2006 WL 1310498 (D. Or. May 10, 2006)........ 12

*Fairley v. Luman*, 281 F.3d 913 (9th Cir. 2002).................................................................... 9

*Gardner v. Martino*, Civil No. 05-769-HU, 2005 WL 3465349 (D. Or. Sept. 19, 2005) ........... 12

*Gibson v. United States*, 781 F.2d 1334 (9th Cir. 1986) ........................................................ 9

*Gilligan v. Jamco Development Corp.*, 108 F.3d 246 (9th Cir. 1997) ......................................... 13

*Harvey v. Harvey*, 949 F.2d 1127 (11th Cir. 1992) ................................................................ 16

*Higher Balance, LLC. v. Quantum Future Group, Inc.*, Civil No. 08-233-HA, 2009 WL 1743210
    (D. Or. June 18, 2009) ................................................................................................ 12, 19, 22

*Hishon v. King & Spalding*, 467 U.S. 69 (1984) ....................................................................... 13

*Howerton v. Gabica*, 708 F 2d 380 (1983) ............................................................................ 18

*Jackson v. Metropolitan Edison Co.,* 419 U.S. 345 (1974) ...................................................... 8

*Jones v. Bock*, 549 U.S. 199 (2007) .......................................................................................... 14

*Kirtley v. Rainey*, 326 F.3d 1088, 1094 (9th Cir. 2003) ...........................................................20

*Lee v. Katz*, 276 F.3d 550, 554-555 (9th Cir. 2002) ................................................................17

*Lugar v. Edmonson Oil Co., Inc.,* 457 U.S. 922 (1982) ..............................................................8

BRIEF IN SUPPORT OF MHC-CPO's MOTION TO DISMISS

*Maleki v. L.A. Unified Sch. Dist.*, 160 Fed. Appx. 586 (9th Cir. 2005)..........................................14

*Mathis v. Pac. Gas & Elec. Co.*, 75 F.3d 498 (9th Cir. 1996) ...................................................9, 18

*Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097 (9th Cir. 2008) ..............................14

*Menotti v. City of Seattle*, 409 F.3d 1113 (9th Cir.2005) .................................................................9

*Metabolife Int'l Inc. v. Wornick*, 264 F.3d 832 (9th Cir. 2001) ....................................................11

*Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 ...................................................................................9

*Moore v. Marketplace Restaurant, Inc.*, 754 F.2d 1336 (7th Cir. 1985) .....................................19

*Norton v. Rule*, 637 F. 3d 937, 938 (9th Cir. 2011) .......................................................................13

*Oregon Natural Resources Council v. Mohla*, 944 F.2d 531 (9th Cir. 1991) ..............................19

*Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1380, 1386 (9th Cir. 1995) ...............................18

*Pembaur v. City of Cincinnati*, 475 U.S. 469, (1986) .....................................................................9

*Pinhas v. Summit Health, Ltd.*, 894 F.2d 1024 (9th Cir. 1989) .....................................................8

*Price v. Hawaii*, 939 F.2d 702 (9th Cir. 1991) ...............................................................................16

*Radcliffe v. Rainbow Constr. Co.*, 254 F.3d 772 (9th Cir. 2001) .................................................19

*San Francisco County Democratic Cent. Comm. v. Eu*, 826 F.2d 814 (9th Cir. 1987) ...............16

*Sazon v. New York*, 2011 WL 5910171 at *4 (S.D.N.Y. 2011) ....................................................20

*Simmons v. Sacramento County Superior Court*, 318 F.3d 1156 (9th Cir. 2003) .......................16

*Staten v. Steel*, 191 P. 3d 778 (Or. App. 2008) .......................................................................11, 14

*Sutton v. Providence St. Joseph Medical Center.*, 192 F.3d 826 (9th Cir. 1999).............16, 17, 20

*Thomas v. Fry's Elec., Inc.*, 400 F.3d 1206 (9th Cir. 2005) ..........................................................12

*Tower v. Glover*, 467 U.S. 914 (1984)............................................................................................10

*Tudor-Saliba Corp. v. City of Hailey*, 452 F.3d 1055, 1062 (9th Cir. 2006) ...............................26

*Ulrich v. City and County of San Francisco*, 308 F.3d 968 (9th Cir. 2002) ..................................9

*United States ex rel. Newsham v. Lockheed Missiles & Space Co.*, 190 F.3d 963 (9th Cir. 1999)
    ....................................................................................................................................................12

*United States v. Classic*, 313 U.S. 299 (1941) ................................................................................9

*United Steelworkers of Am. v. Phelps Dodge Corp.*, 865 F.2d 1539 (9th Cir. 1989) ..................18

*West v. Atkins*, 487 U.S. 42, (1988) ................................................................................................9

*Wolf v. McDonnell*, 418 U.S. 539, (1974) .......................................................................................8

BRIEF IN SUPPORT OF MHC-CPO's MOTION TO DISMISS

# TABLE OF AUTHORITIES

## Statutes

42 U.S.C. § 1983 ................................................................................................................ passim

ORS § 31.150(1) ...................................................................................................... 12, 23
ORS § 31.150(2) ................................................................................................ 11, 18 20, 23
ORS § 31.150(2)(b) ........................................................................................ 19, 20, 21, 22, 23
ORS § 31.150(2)(c) .......................................................................................................... 20
ORS § 31.150(3) .............................................................................................................. 11
ORS § 31.150(4) .............................................................................................................. 12
ORS § 31.150(5) .............................................................................................................. 11
ORS § 31.150(5)( a) ......................................................................................................... 12
ORS § 31.150(5)( b) ......................................................................................................... 12
ORS §§ 31.150-31.155 ...................................................................................................... 11
ORS § 31.152(2) .............................................................................................................. 11
ORS § 31.152(3) ........................................................................................................ 12, 23

OAR 660-015-0000(1) ........................................................................................................ 2

BRIEF IN SUPPORT OF MHC-CPO's MOTION TO DISMISS

## I.      INTRODUCTION

Quite simply, this case should never have been filed against the Mt. Hood Community

Planning Organization and the named individuals on the organization's board and committees

(hereinafter collectively referred to as MHC-CPO). MHC-CPO is a community-based, not-for-

profit entity made up entirely of citizen volunteers who dedicate a portion of their free time to

providing public input to agency decision-makers regarding local land use issues. In this case, a

developer who disagreed with the group's comments on some of his actions is using the federal

judicial system as a vehicle for punishing his neighbors merely for expressing their opinions.

This Court should act swiftly to curb such misuse of the federal courts. In addition to

having no substantive merit, the federal causes of action in this case cannot be brought against

MHC-CPO, which is not a governmental entity and did not act under color of state law in taking

the actions cited in the complaint in this case. Moreover, the Oregon legislature enacted special

procedural mechanisms intended to discourage litigants from using state law to punish or

intimidate parties merely for participating in public decision-making processes, which is

precisely what Plaintiffs in this case seek to do to MHC-CPO through their pendant interference

with contract claim. MHC-CPO therefore respectfully requests that this Court dismiss the federal

claims against it, as well as use the special procedure set forth in Oregon law to also strike

Plaintiffs' state law claim.

## II.      FACTUAL BACKGROUND

The State of Oregon's land use system is unique in a variety of ways. It is among the few

state-wide land use planning schemes, and it goes further than most other planning laws to place

a high value in public participation in land use decisions. Goal 1 of Oregon's land use

BRIEF IN SUPPORT OF MHC-CPO's MOTION TO DISMISS

regulations calls for citizen involvement in the land use process. *See* Oregon Administrative Rules (OAR) 660-015-0000(1). Guidelines adopted by the Oregon Department of Land Conservation and Development provide that  jurisdictions in the state that implement land use planning regulations should develop a "program" for citizen involvement, including mechanisms that allow citizens to review land use proposals in advance of any decision, participate in data-gathering and evaluation, and communicate citizens' view to decision-makers. See Rohlf Dec., Exhibit B at 1. Significantly, however, nowhere does Oregon's land use statute or regulations provide that counties or other governmental bodies should turn over any decision-making authority regarding land use issues to citizens or citizen organizations.[1]

Clackamas County encourages the formation of Community Planning Organizations (CPOs) as part of the county's efforts to meet its responsibilities under Goal 1. *See* Clackamas Co. Code 2.10.030 D; Declaration of Gary Schmidt at ¶ 3. If a CPO meets a modest set of criteria, including having at least two meetings per year, keeping meeting minutes, and having officers, Clackamas County officially recognizes the CPO. *See* Declaration of Gary Schmidt at ¶ 3. Each recognized CPO covers a defined geographic area within Clackamas County. County recognition entitles a CPO to receive notices of proposed land use decisions that affect its area, and to make recommendations to the relevant County agency that will ultimately decide whether to approve the proposal. *See id*. at ¶ 4. County-recognized CPOs also may receive very modest financial support from the County for administrative expenses. *See* Fulton Dec. at ¶ 11.

---

[1] The Oregon Department of Land Conservation and Development publishes a detailed 129 page guide to public participation in Oregon land use decisions under the state's land use planning law. It emphasizes that "our system of government gives citizens the right to have a strong voice in all matters of public policy, including planning.... Professional planners and local officials need comments and ideas from those who know the community best: the people who live and work there." *See* Rohlf Dec. at  ¶ 6.

BRIEF IN SUPPORT OF MHC-CPO's MOTION TO DISMISS                                    2

The county code defines a CPO as "a community organization which *acts in an advisory capacity* to the Board of County Commissioners, Planning Commission, and Planning Division on land use matters affecting its area. *Id*. (emphasis added). Clackamas County's CPO Handbook emphasizes CPOs' advisory role in county land use decisions, noting that "[b]ased upon the [land use] application and local knowledge, the CPO can make recommendations - not decisions - using the applicable zoning ordinance criteria to approve or disapprove an application." Declaration of Gary Schmidt, Ex. 1. CPOs therefore have no authority to make decisions on land use issues, to determine conditions that will be applied to land use permits, or to enforce Clackamas County land use requirements or permit conditions. *See* Declaration of Gary Schmidt at ¶ 6-8. In fact, while Clackamas County send CPOs notices of land use proposals within their areas and encourages applicants for land use permits to present information to CPOs, these organizations have no right to make recommendations or comments on land use issues that is different from that of any other person or entity that chooses to take advantage of opportunities for public participation in Clackamas County land use decisions. *Id*. at ¶ 6. Similarly, while Clackamas County officials will consider information from CPOs regarding alleged violations of County land use requirements or non-compliance with permit conditions, CPOs also have no ability to complain about such violations which is different than any other interested citizen or entity in Clackamas County. *Id*. at ¶ 7. All land use enforcement actions taken by the County stem solely from County officials' exercise of their enforcement discretion. *Id*.

MHC-CPO focuses on the land area on both sides of Highway 26 between Brightwood and Rhododendron. *See* Fulton Dec. at ¶ 4. It has been officially recognized by Clackamas County for over 30 years, and holds public meetings to consider land use issues once per month. *See id*. at ¶ 5. Anyone who lives, owns property, or owns a business within MHC-CPO's

boundaries is eligible to attend the CPO's general meetings, as well as vote at those meetings. *See id*. at ¶ 4. Votes of eligible citizens count the same as votes of CPO officers and committee members toward decisions made at general meetings, so it is easily possible for citizens who show up at MHC-CPO meetings to carry a vote against the views of MHC-CPO officers and committee members. *See id*. ¶ 4.

In December, 2009, MHC-CPO received from Clackamas County information regarding proposed development by the Plaintiffs at properties on Relton Lane along the Sandy River, an area within MHC-CPO's area of interest. *See id*. at ¶ 15. The comment deadline for the proposed permits was prior to the next general meeting of the CPO, so in accord with the organization's usual practice, the MHC-CPO Land Use Committee discussed the proposed development and formulated comments to the County. *See id*. Members of the Committee were concerned about the proposals' potential negative impacts on the Sandy River, as well as the possibility that the development would result in an increase in flood insurance rates for property owners along the Sandy River; the MHC-CPO comments to the County reflected these concerns. *See id*., Exhibit C.

Comments submitted to the County on behalf of MHC-CPO by its Land Use Committee are always submitted to those present at the following general meeting of the CPO; those present at the meeting may vote to ratify, amend, or rescind the previously filed comments. *See* Fulton Dec. at ¶ 15. In preparation for discussing the comments on the Relton Lane development, MHC-CPO Treasurer Dave Fulton contacted Plaintiff Kip O'Connor to invite Mr. O'Connor to speak about his proposed development at the CPO's January 7th, 2010 meeting. *See id*. at ¶ 14. Mr. O'Connor declined to attend. *See id*. At the meeting, those present voted to ratify comments on the Relton Lane proposal sent by the Land Use Committee. *See id*. at ¶ 16. However, after

BRIEF IN SUPPORT OF MHC-CPO's MOTION TO DISMISS

significant discussion, the three MHC-CPO CPO officers, Land Use Committee Chair, and 16 citizens present at the meeting voted unanimously to add an addendum to the comments expressing an even stronger sense of concern about the proposal, including the view that the permit applicant was evading land use codes and should be fined, and that Mr. O'Connor should lose his contractor license. *See id.*, Exhibit C. Those present also voted to send a copy of the comments to other regulatory agencies with jurisdiction over land use issues and contractors. *See* Fulton Dec. at  ¶ 16.

Clackamas County subsequently charged Mr. O'Connor and his company with violations of land use regulations at the Relton Lane properties. *See* Complaint at ¶ 54. MHC-CPO Land Use Committee member Don Mench attended a hearing regarding these violations on February 23, 2010. *See* Mench Dec. at ¶ 12. After the hearing, Mr. Mench spoke with Gary Cox, the Clackamas County hearings officer who presided over the hearing. *Id.* Mr. Mench invited to show Mr. Cox around the Mt. Hood Corridor area at some point in the future, but did not discuss with Mr. Cox the substantive matters addressed in the hearing. *Id.*

As Chair of MHC-CPO's Land Use Committee, Mr. Mench discusses land use enforcement issues with public officials, and sometimes provides information to officials with regulatory jurisdiction over land use and environmental protection that indicates a potential violation of land use requirements or conditions of land use permits. *See id.* at ¶ 10. Mr. Mench has had a series of discussions with officials with the Oregon Department of State Lands (DSL) in which he expressed concern about potential conflicts between DSL's emergency permits for preventing property damage from stream erosion and Clackamas County land use requirements. *See id.* at ¶ 13. In March 2010, Mr. Mench communicated with a Clackamas County land use enforcement official regarding code violations for two homes owned by Lifestyle Ventures, a

BRIEF IN SUPPORT OF MHC-CPO's MOTION TO DISMISS

company partly owned by Mr. O'Connor. *See* Complaint at ¶ 61.  Based on its investigation, Clackamas County issued notices of violations to Lifestyle in late March, 2010. *Id*. On the other hand, Mr. Mench has no recollection of filing any complaints or otherwise communicating with Clackamas County officials regarding the art studio referenced in paragraph 62 of the complaint in this case, or regarding the property referenced in paragraph 73 of the complaint. *See* Mench Dec. at ¶ 14.

Mr. O'Connor has continued to attempt to develop the properties on Relton Lane, but apparently has been unable to secure all necessary permits to do so. *See* Fulton Dec. at  ¶ 20. Clackamas County has issued Mr. O'Connor and his companies notices of violation of land use requirements at the Relton Lane properties, as well as notices of violation for actions at other sites in the area. *See* Complaint at ¶ ¶ 31, 34, 40, 42, 43, 46, 50, 61, 62, 66, 68, 69, 71, 72, 73.

In September, 2010, attorney Gary Linkous, acting on behalf of Mr. O'Connor, sent a letter to MHC-CPO and the individual CPO officers named in this complaint threatening to file suit against them for the CPO's actions regarding the Relton Lane properties. The Pacific Environmental Advocacy Center (PEAC), representing the CPO and its officers, responded with letter that included a detailed legal analysis of why such a case had no legal merit. *See* Rohlf Dec. at ¶ 3. Thereafter, Mr. O'Connor took no action against MHC-CPO for nearly a year.

After securing another attorney, Plaintiffs filed the instant case in late October, 2011, naming MHC-CPO and individually named officers as defendants along with Clackamas County and individually named County officials. The complaint asserts three federal causes of action against all defendants, specifically that defendants a) violated Plaintiffs' rights to substantive and procedural due process; b) violated 42 U.S.C. §1983 by depriving Plaintiffs of their rights under

the First Amendment; and c) violated 42 U.S.C. §1983 by depriving Plaintiffs of their right to

equal protection. *See* Complaint at ¶¶ 81-94. For all three federal claims, Plaintiffs allege that

defendants, including MHC-CPO, acted "under color of law." *See id.* at ¶¶ 76, 85, 91. The

complaint also includes a pendant claim under state law, asserting that defendants intentionally

interfered with Plaintiffs' business relations by improper means or for an improper purpose. *See*

*id.* at ¶¶ 95-98.

After analyzing these claims, PEAC also sent a detailed letter to Plaintiffs' new counsel

explaining that the claims against MCH-CPO have no merit. *See* Rohlf Dec. at ¶ 4. This motion

followed after Plaintiffs' attorney expressed intent to continue with the case. *See id.*

### III.    LEGAL BACKGROUND

#### A.  Federal Law

##### 1.  Due Process

The Due Process clause of the Fourteenth Amendment provides: "[Nor] shall any State

deprive any person of life, liberty, or property, without due process of law." U.S. Const., Amdt.

14, § 1. The Constitution prevents government officials from depriving a person of life, liberty,

or property without appropriate procedural safeguards, such as notice and a hearing by a neutral

judge. *See e.g. Daniels v. Williams*, 474 U.S. 327, 331 (U.S. 1986) ("By requiring the

government to follow appropriate procedures when its agents decide to 'deprive any person of

life, liberty, or property,' the Due Process Clause promotes fairness in such decisions."). The

Due Process Clause also guarantees citizens substantive protections by preventing certain state

actions "regardless of the fairness of the procedures used to implement them" in order to

"prevent governmental power from being used for purposes of oppression." *Id* at 332; *See also*

BRIEF IN SUPPORT OF MHC-CPO's MOTION TO DISMISS

*Wolff v. McDonnell*, 418 U.S. 539, 558 (1974) ("The touchstone of due process is protection of the individual against arbitrary action of government," citing *Dent v. West Virginia*, 129 U.S. 114, 123 (1889)).

Because the Due Process Clause is directed at the States, it can only be violated by conduct that "may be fairly characterized as 'state action." *Lugar v. Edmonson Oil Co., Inc.*, 457 U.S. 922, 924 (1982); *see also id.* at 930 ("the Due Process Clause protects individuals only from governmental and not from private action"); *Pinhas v. Summit Health, Ltd.* 894 F.2d 1024, 1033 (9th Cir. 1989) (noting that the "central inquiry" in cases alleging deprivation of due process under the fourteenth amendment "is whether the party's actions may be 'fairly attributable to the State'" (citation omitted)). Private entities and persons can be state actors "if, though only if, there is such a 'close nexus between the State and the challenged action' that seemingly private behavior 'may be fairly treated as that of the State itself.' " *Brentwood Academy v. Tennessee Secondary School Athletic Association*, 531 U.S. 288, 295 (2001) (quoting *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 351 (1974)).

## 2. Section 1983

Congress designed the Civil Rights Act of 1871 to combat post-Civil War racial violence in the South by providing a statutory basis to enforce constitutional rights. The statute provides as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. Asserting a cause of action under § 1983 requires plaintiffs to make a showing of state action identical to that required under the Due Process Clause. *Lugar v. Edmonson Oil*

BRIEF IN SUPPORT OF MHC-CPO's MOTION TO DISMISS

*Co., Inc.*, *supra*, 457 U.S. at 928-929. Specifically, a successful § 1983 claim requires plaintiffs to show that "(1) the defendants acting under color of state law (2) deprived plaintiffs of rights secured by the Constitution or federal statutes." *Gibson v. United States*, 781 F.2d 1334, 1338 (9th Cir. 1986). A defendant acts under color of state law when he or she has "exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *West v. Atkins*, 487 U.S. 42, 49 (1988) (quoting *United States v. Classic*, 313 U.S. 299, 326 (1941)). A local governmental entity is liable under § 1983 "only where the municipality itself causes the constitutional violation through 'execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy.'" *Ulrich v. City and County of San Francisco*, 308 F.3d 968, 984 (9th Cir. 2002) (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694). "A municipal 'policy' exists when 'a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question.'" *Menotti v. City of Seattle*, 409 F.3d 1113, 1147 (9th Cir. 2005), citing *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986) (plurality opinion); *see also Fairley v. Luman*, 281 F.3d 913, 918 (9th Cir. 2002) (per curiam).

Private parties, such as non-governmental entities and their members and officers, act under color of state law only when their actions are "inextricably intertwined" with those of the government. *See Brentwood Academy v. Tennessee Secondary School Athletic Association*, 531 U.S. 288, 298 (2001) (a private statewide voluntary association of public and private schools is subject to potential § 1983 liability because  the "pervasive entwinement of public institutions and public officials."); *Brunette v. Humane Soc'y of Ventura County,* 294 F.3d 1205, 1211 (9th Cir. 2002) (citing *Mathis v. Pac. Gas & Elec. Co.,* 75 F.3d 498, 503 (9th Cir.1996)). Private

BRIEF IN SUPPORT OF MHC-CPO's MOTION TO DISMISS

entities may also face § 1983 liability when their actions go so far as to constitute a conspiracy with government officials to deprive others of constitutional rights. *See Tower v. Glover*, 467 U.S. 914, 920 (1984).

### B.  Oregon's Anti-SLAPP Law

Like many other states, Oregon has taken action to attempt to prevent parties from using the state's judicial system as a means to deter parties from, or punish parties for, exercising their rights of free speech and/or their rights to participate in public decision-making and judicial processes. Such suits are generally termed "Strategic Lawsuits Against Public Participation" (SLAPP); *see* Canan & Pring, *Strategic Lawsuits Against Public Participation*, 35 Soc. Probs 506 (1988).  The substantive claims in SLAPPs are seldom meritorious. However, merely by filing a SLAPP, a plaintiff forces defendants – many of whom are unfamiliar with the judicial process – to experience a great deal of stress, spend significant amounts of time to defend themselves, and potentially spend substantial sums of money in attorney fees. These effects can chill speech or public participation even if SLAPP defendants ultimately prevail on the merits. Therefore, states have adopted various procedural mechanisms to provide for expedited dismissal of lawsuits when defendants provide specific information indicating that the suit may be a SLAPP. [2]

---

[2] The House Judiciary Committee statement of the Oregon anti-SLAPP legislation's key sponsor eloquently expressed the  need for legislation making it easier for defendants to dismiss claims against them:

> "This bill is about nothing less than guaranteeing our basic first amendment rights for our citizens without their being afraid of intimidation by powerful interests that sometimes seem to hold sway here in the state of Oregon and in this country at this point in time. * * * It is important that we encourage citizens—that is what this is about—this is encouraging citizens to engage in their state government. * * * These Strategic Lawsuits Against Public Participation poison the mind of the average citizen and make

The Oregon legislature passed anti-SLAPP legislation in 2001, borrowed largely from California law. *See* Oregon Revised Statutes §§ 31.150-31.155. The Ninth Circuit characterized California's anti-SLAPP law as designed "to protect individuals from meritless, harassing lawsuits whose purpose is to chill protected expression." *Metabolife Int'l Inc. v. Wornick*, 264 F.3d 832, 837 n.7 (9th Cir. 2001). Under Oregon law, a defendant may make a special motion to strike a claim in a civil action that arises out of the following actions:

> (a) Any oral statement made, or written statement or other document submitted, in a legislative, executive, or judicial proceeding or other proceeding authorized by law;
> (b) Any oral statement made, or written statement or other document submitted, in connection with an issue under consideration or review by a legislative, executive or judicial body or other proceeding authorized by law;
> (c) Any oral statement made, or written statement or other document presented, in a place open to the public or a public forum in connection with an issue of public interest; or
> (d) Any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue of an issue of public interest.

ORS § 31.150(2). A defendant must make a *prima facie* showing that the claims to which the motion to strike is directed arise out of one of the categories above. *See id.* at § 31.150(3). The burden then shifts to plaintiffs to show a probability that the plaintiffs will prevail on their claims by presenting substantial evidence to support a *prima facie* case. *Id.*

---

them afraid of their own government. * * * What this bill does do is give the judge judicial discretion to decide whether or not a plaintiff's claim has merit or not. It provides for what we want, which is the speedy disposition of these frivolous threatening lawsuits that attempt to disenfranchise citizens so that we can get on with the public process. * * * The goal is to find a good solid way to protect the citizens' rights, preserve the integrity of the process, and allow our citizens to feel comfortable participating in our government."

*Staten v. Steel*, 191 P. 3d 778, 787-88 (Or. App. 2008) (statement of Rep. Kurt Schrader).

BRIEF IN SUPPORT OF MHC-CPO's MOTION TO DISMISS

Oregon's anti-SLAPP statute sets forth several additional elements of this special motion to strike procedure. All discovery is stayed during this process. *See id.* at § 31.152(2). In deciding a special motion to strike, a court considers the pleadings, as well as affidavits from the parties "stating the facts upon which the liability or defense is based." *Id.* at § 31.150(4). If a court finds that the plaintiff has established a probability that it will prevail in the case, this determination may not be admitted in evidence in a later stage of the case, nor does it alter the burden of proof. *See id.* at § 31.150(5) (a) and (b). Upon granting a special motion to strike, a court must enter a judgment of dismissal without prejudice and award reasonable costs and attorney fees to the defendant. *See id.* at § 31.150(1); § 31.152(3).

Defendants in federal court may use state anti-SLAPP statutes to seek to dismiss state law claims.[3] *United States ex rel. Newsham v. Lockheed Missiles & Space Co*., 190 F.3d 963, 973 (9th Cir. 1999); *Thomas v. Fry's Elec., Inc*., 400 F.3d 1206, 1206-07 (9th Cir. 2005); *Higher Balance, LLC. v. Quantum Future Group, Inc.*, Civil No. 08-233-HA, 2009 WL 1743210 (D. Or. June 18, 2009);  *Englert v. MacDonell*, Civil No. 05-1863-AA, 2006 WL 1310498, at *7 (D. Or. May 10, 2006); *Gardner v. Martino*, Civil No. 05-769-HU, 2005 WL 3465349, at *3 (D. Or. Sept. 19, 2005). Oregon's anti-SLAPP law's provision for awarding attorney fees to prevailing

---

[3] Whether MHC-CPO could employ Oregon's anti-SLAPP statute to dismiss the federal claims remains an unresolved. The Ninth Circuit has acknowledged a California district court's decision not to apply a state anti-SLAPP law to federal claims; however, it has not squarely addressed the issue. *Hilton v. Hallmark Cards*, 599 F.3d 894 , 901 (9th Cir 2010) (citing *Bulletin Displays, LLC v. Regency Outdoor Adver., Inc.*, 448 F. Supp. 2d 1172, 1180-82 (C.D. Cal. 2006)). A district court in the Eighth Circuit took a different approach by allowing Minnesota's anti-SLAPP law to apply to a § 1983 claim, but also without analyzing the issue in depth. *Hoyt v. Goodman*, 2011 WL 6151511, at *6 (D. Minn. Dec. 12, 2011). While MHC-CPO believes that there are arguments in favor of applying Oregon's anti-SLAPP law to the three federal claims in this case, because application of state law to these claims is not definitively resolved, MHC-CPO moves to dismiss the federal claims under FRCP 12(b)(6).

BRIEF IN SUPPORT OF MHC-CPO's MOTION TO DISMISS

defendants also governs awarding such fees when the state law is applied in federal court. *Norton v. Rule*, 637 F. 3d 937, 938 (9th Cir. 2011).

## IV.    STANDARD OF REVIEW

Courts should grant a motion to dismiss pursuant to FRCP 12(b)(6) "if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Cervantes v. City of San Diego*, 5 F.3d 1273, 1274 (9th Cir. 1993), citing *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984). The court's review is limited to the complaint, and all allegations of material fact are taken as true and viewed in the light most favorable to the non-moving party. *Gilligan v. Jamco Development Corp*., 108 F.3d 246, 248 (9th Cir. 1997).

While courts must follow the guidelines above, a viable complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). As the Supreme Court explained, a plaintiff's complaint must plead more than conclusions and formulaic statements: "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*. at 555 (internal citations, quotation marks, and alterations omitted). Specifically, "[f]actual allegations must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id*. (citations omitted). If the plaintiff fails to meet this standard, then dismissal is appropriate. *See also Balistreni v. Pacifica Police Dept*., 901 F.2d 696, 699 (9th Cir. 1988) (dismissal under 12(b)(6) "can be based on the lack of a cognizable legal theory or absence of sufficient facts alleged under a cognizable legal

BRIEF IN SUPPORT OF MHC-CPO's MOTION TO DISMISS

13

theory."); *Mendiondo v. Centinela Hosp. Med. Ctr.,* 521 F.3d 1097, 1105 (9th Cir. 2008)

(applying the *Twombly* plausibility standard but reversing the district court's order to dismiss

because plaintiff did allege specific examples of wrongful conduct). The court's determination of

whether a complaint states a "plausible claim for relief" is a "context-specific task" that requires

application of "judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

When the plaintiff's factual allegations affirmatively demonstrate that the plaintiff cannot

recover, dismissal under Rule 12(b)(6) is appropriate. *Maleki v. L.A. Unified Sch. Dist.*, 160 Fed.

Appx. 586, 589 (9th Cir. 2005). A dismissal under Rule 12(b)(6) may be based on an affirmative

defense when the defense is clear from the face of the pleadings. *Jones v. Bock*, 549 U.S. 199,

214-15 (2007).

A court's review of a special motion to dismiss under Oregon's anti-SLAPP legislation is

like that of a motion for summary judgment, albeit with two significant differences. First, the

moving party need not present any evidence of its own. *Staten v. Steel*, 191 P. 3d 778, 788 (Or.

App. 2008). Additionally, when a SLAPP defendant establishes a *prima facie* case that its

actions fall into one of the categories specified in the anti-SLAPP statute, a plaintiff's burden to

show a probability it will prevail "is potentially much heavier than merely establishing the

existence of a disputed issue of fact. In deciding whether the plaintiff has met its burden, the trial

court may need to weigh the evidence, something that it cannot do on a motion for summary

judgment." *Id*. (citation omitted).


V.   **ARGUMENT**

The claims against MHC-CPO have the hallmarks of a classic SLAPP. While there is no

doubt that Plaintiffs and MHC-CPO disagree regarding the extent to which Plaintiffs'

BRIEF IN SUPPORT OF MHC-CPO's MOTION TO DISMISS

14

development activities comply with County land use laws, a federal court is not the place to resolve these differences. On the contrary, Plaintiffs' resort to federal litigation against citizens' participation in land use sends a chilling message throughout the state of Oregon – people who simply use avenues for public participation express their opinions regarding compliance with local land use requirements could find themselves facing the daunting challenge of defending against a complaint in federal court. This message strikes at the heart of the first goal of Oregon's land use system – to encourage public participation in land use decisions that affect the state's neighborhoods and its environment.

Fortunately, this Court can – and should – quickly dispose of the claims against MHC-CPO and its officers. Plaintiffs cannot assert valid federal claims against MHC-CPO because the organization is not a governmental entity, nor did it act under color of state law. Further, even Plaintiffs' complaint demonstrates that MHC-CPO's actions relevant to this case fall squarely into those specified as protected under Oregon's anti-SLAPP law. All claims against MHC-CPO should thus be dismissed.

### A.    This Court should dismiss Plaintiffs' federal causes of action.

Given that courts apply an identical analysis in determining whether state action has taken place for purposes of determining an actor's potential liability under the Fourteenth Amendment and under  § 1983, MHC-CPO demonstrates in this section that Plaintiffs' complaint fails to allege facts sufficient to assert viable claims under the Constitution's Due Process Clause or under § 1983.

In general, private parties will not be found to be state actors. *American Mfrs. Mut. Ins. Co. v. Sullivan,* 529 U.S. 40, 50 (1999).  "When addressing whether a private party acted under color of law, we therefore start with the presumption that private conduct does not constitute

BRIEF IN SUPPORT OF MHC-CPO's MOTION TO DISMISS

governmental action." *Sutton v. Providence St, Joseph Medical Center,* 192 F.3d 826, 835 (9th Cir. 1999), *citing Harvey v. Harvey*, 949 F.2d 1127, 1130 (11th Cir. 1992) ("Only in rare circumstances can a private party be viewed as a 'state actor' for section 1983 purposes."); *Price v. Hawaii*, 939 F.2d 702, 707-08 (9th Cir. 1991) (generally, private parties are not acting under color of state law); *Simmons v. Sacramento County Superior Court*, 318 F.3d 1156, 1161 (9th Cir. 2003).

Plaintiffs' complaint does not allege that MHC-CPO is a governmental entity. Instead, the complaint asserts that the CPO is "recognized by Clackamas County" for the purpose of involving citizens in land use planning decisions, and that the County has "verified that the Mt. Hood CPO had and follows it [sic] bylaws, regularly meets, and keeps copies of minutes of its meetings." Complaint at ¶ 6. However, the mere fact that Clackamas County exerts some regulatory control over MHC-CPO as a condition of County recognition does not mean that the CPO is somehow a governmental entity for purposes of liability under the Fourteenth Amendment and §1983. Similar arguments have been squarely rejected by the Ninth Circuit. In *Sutton v. Providence St, Joseph Medical Center,* supra, 192 F.3d at 838, the court rejected an argument that a private employer's compliance with federal law subjected it to liability under the Fourteenth Amendment, refusing to "convert every employer...into a governmental actor every time it complies with a presumptively valid, generally applicable law." The court concluded that "Supreme Court precedent does not suggest that governmental compulsion in the form of a generally applicable law, without more, is sufficient to deem a private entity a governmental actor." *Id* at 841; *see also San Francisco County Democratic Cent. Comm. v. Eu*, 826 F.2d 814 (9th Cir. 1987) (holding that county central committees of political parties are private actors, not public agencies, even though they are regulated by the state); *Adams v. Southern Cal. First Nat'l*

BRIEF IN SUPPORT OF MHC-CPO's MOTION TO DISMISS

*Bank,* 492 F.2d 324, 330-331 (9th Cir.1974) ("Statutes and laws regulate many forms of purely private activity... and subjecting all behavior that conforms to state law to the Fourteenth Amendment would emasculate the [government] action concept.").

Absent an allegation that MHC-CPO is itself a government entity in a manner other than as a consequence of merely conforming to rules for recognition by Clackamas County, this Court may base a dismissal under 12(b)(6), at least in part, on lack of any alleged action by a governmental entity. *See Balistreni v. Pacifica Police Dept*., 901 F.2d at 699 ( dismissal "can be based on...absence of sufficient facts alleged."). Therefore, MHC-CPO will focus the remainder of its analysis on whether the complaint can be construed to allege a valid claim that MHC-CPO acted under color of law.

The Ninth Circuit has emphasized the Supreme Court's holding that "[a]ction by a private party... without something more, was not sufficient to justify a characterization of that party as a 'state actor.'" *Sutton v. Providence St, Joseph Medical Center,* supra, 192 F.3d at 836. The Court of Appeals went on to list "four different factors or tests to identify what constitutes 'something more': (1) public function, (2) joint action, (3) governmental compulsion or coercion, and (4) governmental nexus". *Id*. at 835-836. The complaint in this case does not allege facts sufficient to satisfy these tests and thus provide "more than conclusions and formulaic statements" that MHC-CPO was acting under "color of law." *Twombly*, *supra*, 550 U.S. at 550.

The complaint does not allege facts sufficient to state a claim that MHC-CPO was acting under color of law under the "public function" test. Private entities "become agencies or instrumentalities of the State and subject to its constitutional limitations" only "when private individuals or groups are endowed by the State with powers or functions governmental in nature...." *Lee v. Katz*, 276 F.3d 550, 554-555 (9th Cir. 2002). Plaintiffs' complaint does not

BRIEF IN SUPPORT OF MHC-CPO's MOTION TO DISMISS

allege that MHC-CPO is itself endowed with any powers or functions of government. Rather, the complaint acknowledges that the purpose of MHC-CPO is to "involve citizens in land use planning" (*see* Complaint at ¶ 6) and alleges only that MHC-CPO and its officers a) communicated County land use notices to the public (*see* Complaint at ¶ 46); b) submitted comments to or otherwise communicated with County decision-makers (*see* Complaint at ¶¶ 48, 54), or complained to County officials or other governmental about alleged lack of compliance with County land use requirements or permit conditions (*see* Complaint at ¶¶ 46, 54, 58, 61, 62, 72, 73). By alleging at most that MHC-CPO acted to violate Plaintiffs' constitutional rights only in concert with County officials or other decision-makers, the complaint fails to allege facts sufficient to show that MHC-CPO is authorized to, and in fact allegedly carried out, any sort of public function.

Next, the complaint fails to allege cognizable claims under the "joint action" test. Joint action between a governmental and private entity sufficient for liability on the part of the private entity exists only when "the state has so far insinuated itself into a position of interference with the private entity that it must be recognized as a joint participant in the challenged activity." *Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1380, 1386 (9th Cir. 1995). A private party is liable only if its actions are "inextricably intertwined" with those of the government. *Brunette v. Humane Soc'y of Ventura County, 294* F.3d 1205, 1211 (9th Cir. 2002) (citing *Mathis v. Pac. Gas & Elec. Co.,* 75 F.3d 498, 503 (9th Cir.1996)). Other courts characterize this test as met when a conspiracy exists between the governmental and private entities. *See Howerton v. Gabica*, 708 F.2d 380, 383 (9th Cir. 1983) ("To prove a conspiracy between the state and private parties under [§] 1983, the [plaintiff] must show an agreement or meeting of the minds to violate constitutional rights.); *United Steelworkers of Am. v. Phelps Dodge Corp.*, 865 F.2d 1539, 1540-

BRIEF IN SUPPORT OF MHC-CPO's MOTION TO DISMISS

41 (9th Cir. 1989) ("To be liable, each participant in the conspiracy need not know the exact details of the plan, but each must at least share the common objective of the conspiracy."). Conclusory allegations are insufficient to state a claim of conspiracy. *Radcliffe v. Rainbow Constr. Co.*, 254 F.3d 772, 783-84 (9th Cir. 2001).

As noted above, the complaint alleges submitted comments to or otherwise communicated with County decision-makers (*see* Complaint at  ¶¶ 48, 54), or complained to County officials or other governmental about alleged lack of compliance with County land use requirements or permit conditions (*see* Complaint at ¶¶ 46, 54, 58, 61, 62, 72, 73). However, the Ninth Circuit has found such actions to be insufficient to establish any sort of joint actor or conspiracy-based liability under the fourteenth amendment or §1983 on the part of the private entity submitting comments or communications. In *Christian Gospel Church, Inc. v. San Francisco*, 896 F.2d 1221 (9th Cir. 1990), a neighborhood association petitioned a local planning commission to deny a use permit to the plaintiff church. In denying the church's Civil Rights claim, the Ninth Circuit noted that the neighborhood association was not conspiring with the planning commission, but was "doing what citizens should be encouraged to do, taking an active role in the decisions of government." *Id*. at 1226. The importance of protecting and encouraging public participation is further evident in the fact that Courts have refused to allow "color of state law" liability even when the furnished information turns out to be false. *See Oregon Natural Resources Council v. Mohla*, 944 F.2d 531 (9th Cir. 1991) (wrongfully opposing commercial logging before regulatory body immune from suit); *Moore v. Marketplace Restaurant, Inc.*, 754 F.2d 1336, 1352, (7th Cir. 1985) (diner owner provided unreliable information leading to arrest of plaintiff immune from suit). Given the high value courts place on the ability of citizen groups like MHC-CPO to voice their opinions regarding decision-making by government entities, the

BRIEF IN SUPPORT OF MHC-CPO's MOTION TO DISMISS

allegations in the complaint are not sufficient to state a claims that MHC-CPO acted under color of law through carrying out its purpose of participating in land use decision-making and enforcement actions.

The compulsion test "considers whether the coercive influence or 'significant encouragement' of the state effectively converts a private action into a government action." *Kirtley v. Rainey*, 326 F.3d 1088, 1094 (9th Cir. 2003); *see also Sutton v. Providence St. Joseph Medical Center,* supra, 192 F.3d at 836-837. The complaint also does not allege that Clackamas County compelled or coerced MHC-CPO to take some action or deny a right to Plaintiffs. To the extent that government regulation of the CPO to achieve and maintain recognition by Clackamas County can be construed as making MHC-CPO a governmental actor, that issue is addressed above.

Finally, the governmental nexus test – which is "[a]rguably the most vague of the four approaches," *Kirtley v. Rainey*, *supra*, 326 F.3d at 1094 – turns on whether there is "such a close nexus between the State and the challenged action that the seemingly private behavior may be fairly treated as that of the State itself." *Brentwood Academy v. Tennessee Secondary School Athletic Association, supra,* 531 U.S. at 295. Similar to the discussion above of the "joint action" test, nothing in the complaint alleges more than communications and information exchange between MHC-CPO and Clackamas County and other governmental officials, far from the "close nexus" between the two required to trigger the governmental nexus test. For example, in *Sazon v. New York*, 2011 WL 5910171 at *4 (S.D.N.Y. 2011), the court rejected assertions that unpaid "community board members" that advised the City of New York on liquor licenses was acting under of color law as "unpaid agents" of the City. Noting that the community board were authorized only to "provide advisory opinions" and were "not authorized to grant, deny, or

20

condition liquor licenses," the court found no state action. *Id*. Here, the complaint contains no allegations that MHC-CPO's authority goes beyond that of the community board in *Sazon*.

In sum, when this Court views the complaint in light of its "judicial experience and common sense," *Ashcroft v. Iqbal, supra*, 556 U.S. 662, it should dismiss Plaintiffs' federal claims against MHC-CPO.  The CPO is clearly not itself a governmental entity, nor do Plaintiffs assert allegations sufficient to indicate otherwise. Moreover, the complaint fails to allege facts sufficient to meet any of the four tests applied within the Ninth Circuit for assessing whether a private entity can be liable for alleged deprivations of Plaintiffs' constitutional rights under the Fourteenth Amendment or §1983. Accordingly, this Court should dismiss all of Plaintiffs' federal causes of action and award MHC-CPO reasonable costs and attorney fees.

## B.    This Court should grant MHC-CPO's special motion to dismiss.

Plaintiffs' fourth claim for relief is based on state law and thus subject to a special motion to dismiss under Oregon's anti-SLAPP statute. The circumstances of this case enable MHC-CPO to carry its burden to make a *prima facie* showing that the claims against it arise from actions that fall squarely into the categories set forth in ORS § 31.150(2).

Written or oral comments to a county agency or official regarding a proposed land use decision obviously constitute "[a]ny oral statement made, or written statement or other document submitted" in connection with "an issue under consideration or review by a legislative, executive or judicial body." ORS § 31.150(2)(b) and (c).  Moreover, in addition to making decisions on proposed land uses, Clackamas County officials are charged with administering and enforcing land use requirements.  Therefore, statements made to County agencies or officials regarding administration of County land use requirements, or a party's compliance these requirements, also constitute communications concerning an issue under review by executive branch officials.

21

BRIEF IN SUPPORT OF MHC-CPO's MOTION TO DISMISS

Courts broadly construe the meaning of "an issue of public interest" when interpreting Oregon's anti-SLAPP law. In *Higher Balance, LLC. v. Quantum Future Group, Inc.*, Civil No. 08-233-HA, 2009 WL 1743210 (D. Or. June 18, 2009) at *7, the Oregon federal court cited judicial decisions finding a matter of public interest to include allegations of political action and bias in the classroom, a single consumer's dealings with an Oregon retailer, a party's resignation from a business employer, an article describing an internet dispute, and statements made by an employer regarding termination of an employee. Overall, the *Higher Balance* court noted that the term "public interest" "has been applied broadly… in Oregon State and federal cases." *Id.* (citing *DuBoff v. Playboy Enterprises Inter'l Inc.*, Civil No. 06-358-HA, 2007 WL 1876513, at *8 (D. Or. June 26, 2007)). County land use decisions, as well as County administration and enforcement of its land use requirements and permit decisions, can have significant effects on neighborhoods and rural areas within the County, as well as on the protection of the environment and natural resources within the county. Given courts' broad construction of what constitutes "an issue of public interest," Clackamas County land use decisions and administration and enforcement of land use requirements fall well within the purview of this term.

All of the factual allegations in plaintiffs' complaint against MHC-CPO and its officers involve communications with government decision-makers or the public concerning land use decisions and enforcement. Therefore, as specifically demonstrated by the following discussion, all of the actions of MHC-CPO fall into the categories of activities protected under ORS § 31.150(2).

Complaint paragraph 46: Plaintiffs allege that MHC-CPO Land Use Chair Don Mench disseminated a Clackamas County land use notice to the public. This claim is factually inaccurate. *See* Mench Dec. at ¶ 8. However, even if this allegation was true, dissemination of a

BRIEF IN SUPPORT OF MHC-CPO's MOTION TO DISMISS

County land use notice to the public constitutes a "written statement or other document presented, in a place open to the public or a public forum in connection with an issue of public interest." ORS § 31.150(2)(c).

Complaint paragraph 48: Plaintiffs' allegations concern comments to Clackamas County regarding Plaintiffs' Relton Lane properties ratified and augmented by a general public meeting of MHC-CPO; these comments were also passed along to other federal and state government agencies with jurisdiction over land use issues or construction contractors. *See* Fulton Dec. at ¶ 16. Such comments constitute "[a]ny oral statement made, or written statement or other document submitted" in connection with "an issue under consideration or review by a legislative, executive or judicial body." ORS § 31.150(2)(b). Plaintiffs also allege that MHC-CPO published these comments on its website, which is factually inaccurate. *See* Fulton Dec. at ¶ 5. (noting that MHC-CPO does not have a website, though other websites post MHC-CPO agendas and minutes as a community service). Nonetheless, posting a CPO's comments on a proposed land use decision on a website constitutes "written statement or other document presented, in a place open to the public or a public forum in connection with an issue of public interest." ORS § 31.150(2)(c).

Complaint paragraph 54: Plaintiffs allege that CPO Land Use Chair Don Mench communicated on an ex-parte basis with a Clackamas County hearings officer regarding the substance of an enforcement hearing involving Plaintiffs. This assertion is factually inaccurate; Mench did not discuss issues connected with the hearing, but merely offered to show the hearings officer around the Mt. Hood Corridor area in order to make him more familiar with the area and its environment and thus assist him in administering Clackamas County land use requirements. *See* Mench Dec. at ¶ 12.  In addition to having nothing whatsoever to do with

BRIEF IN SUPPORT OF MHC-CPO's MOTION TO DISMISS

interference with Plaintiffs' contractual relationships, this communication concerns administration of Oregon land use laws and thus "an issue under consideration or review by a legislative, executive or judicial body." ORS § 31.150(2)(b).

Complaint paragraph 58: Plaintiffs allege that Mr. Mench complained to the Oregon Department of State Lands (DSL) and Oregon Department of Fish and Wildlife (ODFW) regarding revetment work by Plaintiffs. This claim is factually inaccurate; Mr. Mench did not communicate with ODFW. *See* Mench Dec. at ¶ 13. Additionally, rather than making any sort of formal complaint to DSL officials, Mr. Mench engaged in an ongoing dialog with DSL officials concerning the interaction between state and county land use permits. *See id*. However, both an oral dialog with state agency officials charged with making land use decisions and a specific complaint to such officials (assuming only *arguendo* that Mr. Mench actually asserted such a complaint) constitute "[a]ny oral statement made, or written statement or other document submitted" in connection with "an issue under consideration or review by a legislative, executive or judicial body." ORS § 31.150(2)(b).

Complaint paragraph 61: Plaintiffs allege that Mr. Mench complained about violation of land use codes at two homes built and owned by Plaintiffs. Such a complaint to a County official charged with enforcement of Clackamas County land use requirements constitutes "[a]ny oral statement made, or written statement or other document submitted" in connection with "an issue under consideration or review by a legislative, executive or judicial body." ORS § 31.150(2)(b).

Complaint paragraph 63 alleges that Mr. Mench and the CPO "falsely originated" a complaint to Clackamas County officials regarding compliance with County land use requirements by a homeowner whose art studio was built by Plaintiff Big Mountain. Mr. Mench has no recollection of filing such a complaint, and it is unlikely that anyone else connected with

the CPO would have filed a land use complaint with County officials. *See* Mench Dec. at ¶ 14.

However, even assuming that Mr. Mench or another officer of MHC-CPO filed a complaint

alleging that this art studio violated County land use requirements, such a complaint would fall

within the category of "[a]ny oral statement made, or written statement or other document

submitted" in connection with "an issue under consideration or review by a legislative, executive

or judicial body." ORS § 31.150(2)(b).

Complaint paragraph 73: Plaintiffs allege that MHC-CPO filed a complaint involving

work at a residence performed by Plaintiff Big Mountain. Mr. Mench has no recollection of

filing such a complaint, and it is unlikely that anyone else connected with the CPO would have

filed a land use complaint with County officials. *See* Mench Dec. at ¶ 14.   However, even

assuming that Mr. Mench or another officer of MHC-CPO filed a complaint alleging that the

landscaping work at this residence violated County land use requirements, such a complaint

would fall within the category of "[a]ny oral statement made, or written statement or other

document submitted" in connection with "an issue under consideration or review by a legislative,

executive or judicial body." ORS § 31.150(2)(b).

Plaintiffs' complaint makes no other allegations against MHC-CPO and its officers other

than those listed above.

The discussion of Plaintiffs' allegations set forth above demonstrates that every one of

the actions of MHC-CPO and its officers which form the basis of the claims in this case fall

within the categories specified in  ORS § 31.150(2). Therefore, pursuant to Oregon's anti-

SLAPP law, MHC-CPO has made the *prima facie* showing necessary to shift the burden to

Plaintiffs to show a probability that they will prevail on their fourth cause of action by presenting

substantial evidence to support a *prima facie* case. It is extremely unlikely that Plaintiffs will be

BRIEF IN SUPPORT OF MHC-CPO's MOTION TO DISMISS

able to carry their heavy burden to make such a showing given that the CPO and its officers at no time attempted to interfere with Plaintiffs' business activities. *See* Mench Dec. at ¶ 4; Fulton Dec. at ¶ 16. While Plaintiffs may not agree with MHC-CPO's views regarding land use issues, such disagreement does not provide a basis for tort liability. MHC-CPO has consistently acted in good faith in providing public input to Clackamas County officials regarding land use decision-making, and administration and enforcement of County land use requirements. Therefore, this Court should dismiss Plaintiffs' fourth cause of action against MHC-CPO pursuant to ORS § 31.150(1) and enter an award of reasonable costs and attorneys fees in favor of MHC-CPO under ORS § 31.152(3).

## VI.    CONCLUSION

For the reasons set forth above, MHC-CPO respectfully requests that this Court dismiss the three federal causes of action against it pursuant to FRCP 12(b)(6), and dismiss the pendant state cause of action pursuant to  ORS § 31.150. Plaintiffs also request an award of reasonable attorney fees pursuant to ORS § 31.152(3) and 42 U.S.C. § 1988. *See Tudor-Saliba Corp. v. City of Hailey*, 452 F.3d 1055, 1062 (9th Cir. 2006) (district court did not abuse its discretion in awarding defendants in § 1983 case attorney fees for claims plaintiff should have known were frivolous from the outset of the litigation).

DATED January 24, 2012

Respectfully Submitted,


/S/  Daniel J. Rohlf

Daniel J. Rohlf


*Counsel for Defendants Mt. Hood Corridor CPO, Don Mench,*

*Dave Fulton, Roy Bellows, Donna Bellows, and Janine Bertram*

BRIEF IN SUPPORT OF MHC-CPO's MOTION TO DISMISS