Mark E. Griffin
GRIFFIN & MCCANDLISH
1631 NE Broadway, No. 721
Portland, Oregon  97232
mark@markgriffin.com
Telephone: 503-224-2348

Attorneys for Plaintiffs


IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

Portland Division


| | | |
|---|---|---|
| KIP O'CONNOR, LISA KONELL, and BIG MOUNTAIN CO., an Oregon Business Corporation/dba BIG | ) ) ) ) | Case No. CV 11-1297-SI |
| MOUNTAIN EXCAVATION | ) ) | PLAINTIFFS' OPPOSITION  TO CLACKAMAS COUNTY'S MOTION TO DISMISS |
| Plaintiffs | ) ) ) | |
| v. | ) ) | |
| COUNTY OF CLACKAMAS, OREGON, MT. HOOD CORRIDOR CPO, A community Planning Organization, STEVE HANSCHKA, individually and as an employee of the Clackamas County Planning Division, MICHAEL McALLISTER, individually and as an employee of the Clackamas County Planning Division, KIM BENTHIN, individually and as an employee of the Clackamas County Department of Transportation and Development, GARY HEWITT, individually and as an employee of the Clackamas County Planning Division, and CARL COX, individually and as Compliance Hearing Officer for Clackamas County,  Don Mench, Dave Fulton, Roy Bellows, Donna Bellows, and Janine Bertram, all individually as | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |

board members or committee members        )
of the Oregon Mt.  Hood Corridor CPO       )
                    Defendants              )


**INTRODUCTION**

      Clackamas County's Motion to Dismiss presents these issues:  (1) whether plaintiffs have stated a claim against Clackamas County for civil rights violations under a *Monell* theory;  (2) whether plaintiffs have alleged facts to support a claim that MHC- CPO engaged in state action;  (3) whether the Oregon Tort Claims Act bars the common law claims against the County and its employees; (4) whether plaintiffs have stated claims against the individual county employees for civil rights violations; (5) whether plaintiffs have stated  due process, First Amendment, or equal protection claims against the County.

      Clackamas County invests heavily in its argument that plaintiffs have not complied with FRCP 8 and that the plaintiffs can prove no set of facts in support of their claim.     Notice pleading requires only that a plaintiffs  set forth "(a)(2) a short and plain statement of the claim showing that the pleader is entitled to relief."  "No technical form is required."  FRCP 8(d)((1).  No magic words are necessary. All that is necessary is that plaintiffs  set forth facts which show that they are entitled to relief. Plaintiffs have set forth in detail the conduct which supports each of the four claims.  These facts are contained in 73 paragraphs all stated within the context of  the legal elements of  the four claims. Complaint, par. 74-98.

In summary, the complaint states the following:

      <u>First Claim:  Violation of Substantive and Procedural Due Process.</u>  The County and the MHC-CPO, through their  employees and officers respectively, have denied and delayed building permits, issued unfounded citations for code violations, improperly conducted hearings, and have interfered with plaintiffs' ability to engage in lawful conduct.  Par. 48; 49-73.    This conduct has been arbitrary

Page 2  PLAINTIFFS' OPPOSITION TO CLACKAMAS COUNTY'S MOTION TO DISMISS

and capricious, done in violation of governing regulations of the county and the MHC-CPO.  Par.77.

While it was unnecessary for plaintiffs to do so, they have cited specific instances of this conduct.  For

example, plaintiffs allege in paragraphs 48-73.

Second Claim:  Violation First Amendment Retaliation.  The County and the MHC-CPO,

through their employees and officers respectively, retaliated against plaintiffs Konell and O'Connor

because these plaintiffs have exercised constitutional rights to petition the government and to criticize

that government for its conduct relating to land use planning.   Plaintiffs have alleged specific facts that

defendants have denied and delayed permits, issued bogus code citations, improperly conducted

hearings, and interfered with plaintiffs' ability to engage in lawful conduct.  From these circumstances,

a jury could conclude that the defendants' actions were in retaliation for his criticism of Clackamas

County's land use planning decisions.

Third Claim:  Equal Protection.  Plaintiffs have alleged that the treatment accorded them by

Clackamas County and the MHC-CPO, through their employees and officers, was different than that

accorded other land owners, developers, and contractors.  The County is mistaken in its argument that

plaintiffs must state specific examples of how other homeowners, developers, and contractors.  The

argument creates a paradox for the County and the MHC-CPO.   Are defendants suggesting that all

homeowners, developers, and contractors are denied due process when they apply for building permits;

that defendants retaliate if such persons criticize land use decisions; or that unfounded code citations

are issued as a matter of course?

Fourth Claim.  Intentional Interference with Business Relations.  Plaintiffs have alleged the

elements of this common law tort[1]:  that plaintiffs had business relationships and contracts Complaint,

par. 2, defendants intentionally interfered with those relationships through improper means. Id, par . 48-

---

1  Plaintiffs admit that the County employees may not be individually liable.  However, the County has
   been named as a defendant, and is liable for the conduct of those employees.

Page 3  PLAINTIFFS' OPPOSITION TO CLACKAMAS COUNTY'S MOTION TO DISMISS

73.   Plaintiffs have alleged conduct that is continuing in nature.  There is no basis for dismissal of this claim on statute of limitations grounds: the continuing conduct has occurred well within the statute of limitations period.

Actions should rarely be dismissed on Rule 12 motions.  Such dismissal is appropriate only when " it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Bell Atlantic Corp., v. Twombley*, 550 US 544, 563, 127 Sct 1955 (2007), As is shown below, plaintiffs have easily surpassed that threshold.

**(1) Plaintiffs have stated a claim against Clackamas County for civil rights violations under a Monell theory.  Plaintiffs have alleged facts which show that the violations either were part of a policy of the County or that Clackamas County has ratified the misconduct of its employees.**

There are three theories under which a governing body may be held leable for civil rights violations:  (1)  the offensive conduct is a custom or policy; (2) the offensive conduct includes a final decision by the policy maker; and (3)  the offensive conduct of the governing body's employees has been ratified by the governing body.  The elements of each of these *Monell* liability types are set forth in the 9th Circuit Manual of Model Jury Instructions-Civil (2007)("Model Instructions"), Nos. 9.4, 9.5 and 9.6.  Whether a governing body is liable for constitutional violations under any of these theories is question of fact for the jury.

*A.  The constitutional violations were part of a custom or policy of Clackamas County*

Model Instruction No. 9.4 describes the elements of this type of governing body liability:

"In order to prevail on their § 1983 claim against defendant Clackamas County alleging liability based on an official policy, practice, or custom, the plaintiffs must prove each of the following elements by a preponderance of the evidence:

1. The Clackamas County employees---McAllister, Hanschka, Hewitt and Benthin acted under color of law;

2.  The acts of  the Clackamas County employees deprived the plaintiffs of their particular rights under the United States Constitution as explained in later instructions; and

      3.   These Clackamas County employees acted pursuant to an expressly adopted official policy or a longstanding practice or custom of the defendant.

Plaintiffs have pleaded, and Clackamas County cannot deny, that these employees were acting under color of law. Complaint, par. 5, 7-10, 76, 81, 89.  Plaintiffs also have pleaded that the conduct of these employees deprived them of constitutional rights to due process, freedom of expression and equal protection. Id., par. 74-94.  While plaintiffs have not specifically used the terms  "official policy"[2] or "longstanding practice or custom," plaintiffs have alleged facts from which a jury could conclude that the constitutional violations were a practice or custom, i.e.,  they were part of a "permanent, widespread, well-settled practice or custom that constitutes a standard operating procedure" of Clackamas County and its Planning Department.   Model Instruction, No. 9.4.  The violations are permanent:  they have been in place since at least 2009 and continue to the present.  They are widespread, ranging from interference with the permit process through arbitrary delay and denial of permit decisions, to conducting bogus hearings, to destroying evidence.  They are well-settled.  While one instance of misconduct may be an accident and two a coincidence, three become evidence of a custom or practice.  Plaintiffs have alleged numerous instances of related misconduct by McAllister, Hewitt, Hanschka, and Benthin.

*B.  The offensive conduct includes a decision by a final decision maker*

Model Instruction No. 9.5 governs this type of liability.

      In order to prevail on their § 1983 claims  against Clackamas County alleging liability based on the act of a final policymaker, the plaintiffs must prove each of the following elements by a preponderance of the evidence:

      1. Michael McAllister and the Clackamas County Planning Division acted under color of law;

---

2   Plaintiffs do not contend that Clackamas County has adopted an official policy, as that term is defined in Model Instruction No. 9.4.  Plaintiffs contend that the offensive conduct was part of a longstanding, and continuing, policy of the Clackamas County Planning Department, and the County itself.

2. The acts of Michael McAllister and the Clackamas County Planning Division deprived the plaintiff of their particular rights under the United States Constitution as explained in later instructions;

3. Michael McAllister and the Clackamas County Planning Division had final policymaking authority from defendant Clackamas County concerning these acts; and

4. When Michael McAllister and the Clackamas County Planning Division engaged in these acts, they were acting as a final policymaker for defendant Clackamas County.

There can be no question that defendant McAllister and the Planning Division acted under color of law.  Plaintiffs have alleged that both McAllister and the Planning Division deprived plaintiffs of constitutional rights:  McAllister denied, and continues to deny, the flood plain permit to plaintiffs for the Relton Lane properties.  The denial was based upon fabricated and incorrect information.  Plaintiffs have alleged that the Planning Division conducted hearings, using false testimony of its employees, participating in improper ex parte communications, and issuing orders in violation of in violation of official rules and county ordinances.  Par. 54-57.  Plaintiffs have alleged the McAllister was the Director of the Planning Division.  Par. 7. As Clackamas County admits, McAllister has final authority to make decisions relating to floodplain permit applications.   County Memorandum, p. 39-41.  The hearing before the Planning Division is another step in the administrative process.

*C. The offensive conduct of the defendant employees has been ratified by Clackamas County.*

Plaintiffs have pleaded sufficient facts to show that  Clackamas County liability for ratification of  the offensive conduct of the employee defendants.  Model Instruction No. 9.6 defines ratification liability.

1.  The defendant employees---McAllister, Hewitt, Hanschka and Benthin---acted under color of law.

2.  The acts of these employee defendants deprived the plaintiffs of  their

particular rights under the United States Constitution as explained in later instructions;

3    McAllister and the Planning Division acted under color of law;

4.    McAllister and the Planning Division had final policymaking authority from defendant Clackamas County concerning the acts of the defendant employees; and

5.    McAllister and the Planning Divisions ratified the employee defendants' acts and the basis for them, that is, McAllister and the Planning Division knew of and specifically approved of the defendant employees' acts.

As discussed above, plaintiffs have alleged that the defendant employees acted under color of law, the acts of these defendant employees deprived plaintiffs of constitutional rights, McAllister and the Planning Division acted under color of law, and McAllister and the Planning Division had final policymaking authority from Clackamas County.  While plaintiffs have not specifically used the term "ratify," a jury could conclude from the circumstances as currently alleged that McAllister and the Planning Division knew of and specifically approved these actions.  See section 4A , infra, discussing McAllister's liability as a supervisor.

## (2)  Plaintiffs have alleged facts to which support a claim that MHC- CPO engaged in state action

"Clackamas County notes in passing that plaintiffs also have failed to offer any facts sufficient to state a claim that Mount Hood Corridor CPO, a Community Planning Organization, is a 'state actor.'" County Memorandum, p. 7.  The hypocrisy of this argument should not be lost on the court.  This argument contradicts the County's public position that "A CPO is a public body with authority to make decisions and recommendations, and therefore subject to the public meetings law."  Section 4, CPO Handbook.  The County's admission that a CPO---including the MHC-CPO---is a public body should lay this dispute to rest.    Regardless, plaintiffs have alleged facts which support this claim.  Plaintiffs have briefed this issue at pages 1-7 to Plaintiffs  Opposition to MHC-CPO's motion to dismiss, and

incorporate that Opposition here.

**(3)  The Oregon Tort Claims Act does not bar the common law claims against the County and its employees.  Notice was given by the filing of the complaint; the tort is continuing in nature; and wrongful conduct has occurred within the limitations period.**

*A. The employee defendants are not individually liable.*

Plaintiffs agree that the County employees are not individually liable for the common law claim of Intentional Interference with Economic Relations.[3]  The OTCA substitutes the County as the liable party for the tortious conduct of its employees.   Because the County is named as a defendant in this claim no substitution is necessary.

*B. OTCA notice and time limitations do not bar the claim against Clackamas County.*

Clackamas County argues that  plaintiffs have failed to give notice of claim within 180 days after the  alleged loss or injury.  Under the OTCA, notice is satisfied by the commencement of an action or by actual notice.  ORS 30.275(3)(b) and (c).   This action was commenced October 27, 2011.  Under subsection (b), any conduct which occurred no earlier than 180 days from the filing of the complaint is not barred by the OTCA.  Plaintiffs have alleged that County employees committed numerous tortious acts within the limitations period.  E.g. par. 72-73.

Under subsection c), any conduct which occurred no earlier than 180 days from the County's actual notice of the claim is not time barred.  Section (6) describes "actual notice."

> "(6) Actual notice of claim is any communication by which any individual to whom notice may be given as provided in subsection (5) of this section or any person responsible for administering tort claims on behalf of the public body acquires actual knowledge of the time, place and circumstances giving rise to the claim, where the communication is such that a reasonable person would conclude that a particular person intends to assert a claim against the public body or an officer, employee or agent of the public body. A person responsible for administering tort claims on behalf of a public body is a person who, acting within the scope of the person's responsibility, as an officer, employee or agent of a

---

3  While the parties did confer generally prior to Clackamas County filing the motion, this issue was not specifically discussed.

public body or as an employee or agent of an insurance carrier insuring the public body for risks within the scope of ORS 30.260 to 30.300, engages in investigation, negotiation, adjustment or defense of claims within the scope of ORS 30.260 to 30.300, or in furnishing or accepting forms for claimants to provide claim information, or in supervising any of those activities."

On August 31, 2010, Gary Linkous, who has represented plaintiffs in numerous of the code violation  proceedings which underlie this complaint, wrote a Notice of Claim to the MHC-CPO.  A copy of  that Notice is attached to the Linkous Declaration as Ex. 1.   Plaintiffs are informed and believe that this notice was given to Clackamas County counsel shortly after it was received by the MHC-CPO. See Linkous Declaration.   Clackamas County had "actual knowledge of the time, place and circumstances giving rise to the claim."  Thus, any conduct which occurred no earlier than 180 days from the County's actual notice of the claim in late August or early September, 2009, is not time barred.  Discovery will set that date but it is apparent from that Clackamas County had actual notice of the claims in the fall of 2010.

Further, as the Complaint makes clear, plaintiffs have alleged a continuing tort.  The misconduct of defendants continued over a period of time and continues to the present.  The continuing nature of the tort defeats Clackamas County's argument that the claims are time barred  under the OTCA.  It is the cumulative effect of defendants' actions---delay and denial of permits and continuing harassment through charging unfounded code violations---which has harmed the plaintiffs.

 Oregon cases have used a continuing tort analysis to allow claims that would otherwise be time-barred. See Shives v. Chamberlain, 168 Or. 676, 126 P.2d 28 (1942). The cases arose in a variety of fact patterns and do not readily produce a single rule. See Adams v. Oregon State Police, 289 Or. 233, 611 P.2d 1153 (1980); Holdner v. Columbia County, 51 Or.App. 605, 627 P.2d 4 (1981). However, in Davis v. Bostick, 282 Or. 667, 580 P.2d 544 (1978), the court stated concisely the concept of continuing tort: "[A]t the heart of the continuing tort idea is the concept that recovery is for the cumulative effect of wrongful behavior, not for discrete elements of that conduct." 282 Or. at 671, 580 P.2d 544. Griffin v. Tri-Met, 112 Or App 575,581, 831 P2d 42 (1992)

**(4)  Plaintiffs have stated claims against the individual county employees for civil rights violations.**

The elements of individual  liability for civil rights violations are:  (1) the defendants acted under color of law; and (2) the acts of the defendants  deprived the plaintiffs of their rights under the United States Constitution.  Model Jury Instructions, No. 9.2.  Clackamas County cannot dispute that these employee defendants were acting under color of law.  Plaintiffs have pleaded that these defendants violated plaintiffs constitutional rights.

Clackamas County argues that plaintiffs have failed to allege a nexus between the conduct of its employees and the constitutional violations.  Clackamas County has missed the point by focusing only on the actions of defendants rather than the context in which those actions were taken.  *Gilbrook v. City of Westminster*, 177 F.3d 839, 857-59 (9th Cir. 1999)("Acts which seem otherwise innocent, when viewed in the context of surrounding circumstances may justify an inference of complicity"), cert den. 528 U.S. 1061, quoting *United States v. Batimana*, 623 F.2d 1366, 1386 (9th Cir.), cert. den. 449 U.S. 1038 (1980).

The substance of plaintiffs' constitutional claims is that defendants  arbitrarily interfered with plaintiffs' process of obtaining development permits by denying and delaying permits and conducting proceedings in violation of law (Claim 1); retaliated against plaintiffs for petitioning or criticizing Clackamas County planning decisions (Claim 2); and treated plaintiffs differently than other landowners, developers, and contractors (Claim 3).

*A.  Michael McAllister*

Plaintiffs have alleged that McAllister is the Director of the Clackamas County Planning Division.  Par. 7.  As such, he supervised defendants Hanschka and Hewitt.  Because of his position, a jury could conclude that he was aware of and either approved or did not prevent the actions of these employees.

Page 10  PLAINTIFFS' OPPOSITION TO CLACKAMAS COUNTY'S MOTION TO DISMISS

A director may be liable for the civil rights violations committed by his subordinates if his subordinates deprived plaintiffs of their constitutional rights and the supervisor either directed his subordinates to  in their actions that deprived plaintiffs of their rights, set in motion a series of acts by his subordinates tha he knew or reasonably should have known would deprive plaintiffs of their constitutional rights, or he knew or reasonably knew that his subordinates were engaging is such acts and failed to prevent the constitutional violations from occurring.  Model Jury Instructions, No. 9.3.  Plaintiffs have alleged sufficient facts to prove supervisor  liability.

Regardless, there are allegations that the Planning Department and McAllister have committed actionable conduct, other than his actions as a supervisor.   Under regulations cited by Clackamas County, it is Director of the Planning Department who makes the decision as to a Floodplain Development plan. ZDO 1302.02.   The Director must prepare written findings justifying the decision Id.   Plaintiffs have alleged that the floodplain development permit was denied, but the denial was based upon fabricated and incorrect information.  Par. 63.  Details relating to this false information are contained in other paragraphs. E.g., par. 50-60.

McAllister also participated in the January, 2010, MCH-CPO meeting. Par. 48.  As the Director of Planning, he was aware of, and bound to abide by, the procedures that govern CPOs.  The complaint is clear that he did not do so.  At that meeting, at which a permit for development of the Relton Lane properties was the sole issue relating to plaintiffs which was on the agenda, McAllister raised additional issues:  accusing O'Connor of violating floodplain development and construction laws, risking flood insurance rates in the county and suggesting that O'Connor's construction license should be revoked.  He fullly participated in the ill-advised meeting.  The context of McAllister's animosity towards plaintiffs and his misconduct in denying plaintiffs due process was O'Connor's criticism of Clackamas County planning.  There is a clear nexus between McAllister's conduct and the constititutional claims.

Page 11  PLAINTIFFS' OPPOSITION TO CLACKAMAS COUNTY'S MOTION TO DISMISS

### B.  Gary Hewitt

Hewitt is an employee of the Planning Division. Par. 10. Plaintiffs have alleged that Hewitt gave plaintiff O'Connor a false notice of incomplete application, advised O'Connor falsely that O'Connor could not rely on the BFE certification of Firwood Design, and that O'Connor needed a Letter of Map Amendment from FEMA, all conduct designed to cause delay and denial of the flood plain development permit.  Par. 46, 53, 55-56, 59-60.   This conduct was taken in the context of plaintiffs' criticism of Clackamas County planning decisions.  There is a clear nexus between Hewitt's conduct and the constitutional claims.

### C.  Steve Hanschka

Hanschka is an employee of the Planning Division.  Plaintiffs have alleged that Hanschka  gave plaintiff O'Connor a false notice of incomplete application, advised O'Connor falsely that O'Connor could not rely on the BFE certification of Firwood Design, and that O'Connor needed a Letter of Map Amendment from FEMA, all conduct designed to cause delay and denial of development permits.  Par. Par. 46, 53, 55-56, 59-60 .  Plaintiffs also have alleged that on numerous occasions Hanschka refused to sign the LOMA so that it could be submitted to FEMA, as Hanschka had required, and that Hanschka used incorrect BFE's as a basis for the denial of the floodplain development permit. Id.  All of these actions were intended to delay and deny, and in fact did result in the delay and denial of the flood plaint development permits.   This conduct was taken in the context of plaintiffs' criticism of Clackamas County planning decisions.  There is a clear nexus between Hanscha's  conduct and the constitutional claims.

### D.  Kim Benthin

Benthin is an employee of the Clackamas County Department of Transportation and Planning. To describe her as out of control would be an understatement.  Plaintiffs have alleged Benthin has filed numerous unfounded notices of code violations against plaintiffs par 61, 62, 66, 70, 71, 73, has falsely

Page 12  PLAINTIFFS' OPPOSITION TO CLACKAMAS COUNTY'S MOTION TO DISMISS

testified at a code violation hearing, and has been implicated in the possible destruction of evidence from that hearing.  All of Benthin's actions were intended to delay and deny, and in fact did result in the delay and denial, of development permits, and to harass plaintiffs.   This conduct was taken in the context of plaintiffs' criticism of Clackamas County planning decisions.  There is a clear nexus between Hanscha's  conduct and the constitutional claims.

**5.  Plaintiffs have stated  due process, First Amendment, and equal protection claims against the County.**

*A.  Plaintiffs have stated a claim for violation of due process*

> The Fourteenth Amendment protects individuals against the deprivation of liberty or  property by the government without due process. A Section 1983 claim based upon procedural due process thus has three elements: (1) a liberty or property interest protected by the Constitution; (2) a deprivation of the interest by the government; (3) lack of process. The Due Process Clause does not create substantive rights in property; the property rights are defined by reference to state law.  *Portman v. County of Santa Clara*, 995 F.2d 898, 904 (9th Cir. 1993).

Plaintiffs have alleged a property interest:  they are owners of the Relton Lane properties.  Par 23.  Plaintiffs  have alleged a deprivation of that interest by defendants:  in spite of the fact that plaintiffs have met all development requirements, they have been denied the right to develop that property.  Plaintiffs have alleged violations of process:  from the continual and continuing unfounded notices of code violations to improperly conducted hearings.

Clackamas County's  argument that plaintiffs had no property interest because the Planning Director has discretion to approve or deny a permit application should be rejected.  The County Ordinance itself contradicts Clackamas County's position that this discretion is absolute.  Under ZDO 1305.02E, the Planning Director must justify his  decision, which is subject to review by a Hearings Officer.  The Director must review the application in the context of Oregon's and the County's land use

laws and building codes.  Under the ZDO, plaintiffs were required to comply with "specific, mandatory" and "carefully circumscribed" standards in order to obtain a permit.   Such requirements show that the Planning Director's discretion was not unfettered. See, *Foss v. Nat'l Marine Fisheries Serv.*, 161 F.3d 584,588 (9th Cir. 1998)(holding that "specific, mandatory" and "carefully circumscribed" requirements constrained discretion enough to give rise to a give rise to a property interest.); See also, *Parks v. Watson*, 716 F.2d 646, 657 (9th Cir. 1983) (finding that criteria for vacating plotted streets created a property interest notwithstanding the fact that one of the criteria broadly directed the decision-maker to consider the "public interest," and noting that "a determination as to whether the public interest will  be prejudiced, while obviously giving a certain amount of play in the decisional process, defines an articulable standard")

### B.  Plaintiffs have stated a claim for retaliation for exercising First Amendment rights

Government action which is "designed to retaliate against and chill political expression strikes at the heart of the First Amendment."  *Care Partners, LLC v. Lashway,* 545 F.3d 867, 877 (9th Circuit, 2008)*, quoting Soranno's Gasco v. Morgan,* 874 F.2d 1310, 1314 (9th Cir. 1989). The right "to petition for redress of grievances [is] among the most precious of liberties safeguarded by the Bill of Rights." *Gagliardi v. Vilage of Pawling,* 18 F.3d 188, 194-95 (2nd Cir. 1994)*, citing United Mine Workers v. Ilinois Bar Association,* 389 U.S. 217,222,88 S. Ct. 353, 19 L. Ed. 426 (1967).

These rights applied to plaintiffs as permit applicants. Id.  Plaintiffs are entitled to recover under 42 USC 1983 because Clackamas County retaliated against them for exercising their First Amendment rights in the regulatory process, where plaintiffs demanded that  County employees follow regulations and county ordinances, and for plaintiffs' public criticism of the County's land use planning decisions.

Plaintiffs have alleged both the numerous instances in which a jury could infer that retaliation

had occurred and the fact of that "defendants retaliated against plaintiffs for exercising their constitutional rights." Par 83  Cir. 1999)( circumstantial evidence of intent is sufficient to surive a motion for summary judgment). *Mendocino Environmental Center v. Mendocino County*, 192 F.3d 1283, 1300-01 (9th Cir. 1999)( circumstantial evidence of intent is sufficient to survive a motion for summary judgment).

### C. Plaintiffs have stated a claim for denial of equal protection

The Ninth Circuit has noted the "class-of-one" theory of equal protection is unusual because the plaintiff in a "class of one" case does not allege that the defendants discriminate against a group with whom she shares characteristics, but rather that the defendants simply harbor animus against her in particular and therefore treated her arbitrarily. *See N. Pacifica LLC v. City of Pacifica,* 526 F.3d 478, 486 (9th Cir. 2008) ("When an equal protection claim is premised on unique treatment rather than on a classification, the Supreme Court has described it as a 'class of one' claim."[)] (citing *Olech,* 528 U.S. at 564, 120 S. Ct. 1073)). Such circumstances state an Equal Protection claim because, if a state actor classifies irrationally, the size of the group affected is constitutionally irrelevant. *Olech,* 528 U.S. at 564, . 120 S. Ct. 1073*Lazy Y Ranch Ltd. v. Behrens,* 546 F.3d 580, 592 (9th Cir. 2008).

To succeed on [a] "class of one" claim, [the plaintiff] must demonstrate that [the defendants]: (1) intentionally (2) treated [the plaintiff] differently than other similarly situated property owners, (3) without a rational basis. *Willowbrook,* 528 U.S. at 564,  *North Pacifica LLC v. City of Pacifica,* 526 F.3d 478, 486; (9th Cir. 2008). Although [the plaintiff] must show that [the defendants'] decision was intentional, he need not show that [the defendants] were motivated by subjective ill will. *Willowbrook,* 528 U.S. at 565, 120 S. Ct. 1073 (rejecting the interpretation that a plaintiff must allege that the governmental action was the result of subjective ill will in a "class of one" claim).*Gerhart v. Lake County, Mont.* , No. 10-35183, 2011 WL 923381, at *7 (9th Cir. Mar. 18, 2011). "A class of one plaintiff must show that the discriminatory treatment 'was intentionally directed just at him, as opposed . . . to being an accident or a random act.'" *North Pacifica LLC v. City of Pacifica,* 526 F.3d 478, 486 (9th Cir. 2008)(quoting *Jackson v. Burke,* 256 F.3d 93, 96 (2d Cir. 2001)).

Plaintiffs have alleged facts from which a jury could conclude that the defendant employees and the Clackamas County Planning Division itself  intentionally treated plaintiff differently than other similarly situated landowners, without a rational basis.  The misconduct directed against plaintiffs was no accident.  The actions were continuous and unrelenting.  Regardless of what plaintiffs did to comply with the instructions of these employees, and regardless whether plaintiffs had met all written permit requirements, plaintiffs were denied the flood plain development permit for the Relton Lane properties.

Perhaps the County will take the position at trial that all permit applicants are required to submit unnecessary documentation,  charged with unfounded code violations, subjected to hearings marred the County's participation in improper ex parte communications, and polluted by false testimony and the destruction of evidence.    However, as the pleadings now stand, plaintiffs have sufficiently alleged unequal treatment in the permitting process.

CONCLUSION

For the above reasons, Clackamas County's Motion to Dismiss should be denied.

Dated:  March 6, 2012                                  /Mark E. Griffin/

                                                                Mark E. Griffin, OSB 761528

                                                                GRIFFIN & MCCANDLISH