IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON
Portland Division

| | |
|---|---|
| KIP O'CONNOR, *et al.*, | Case No.: 3:11-cv-1297-SI |
| Plaintiffs, | |
| v. | OPINION AND ORDER |
| COUNTY OF CLACKAMAS, *et al.*, | |
| Defendants. | |

Mark E. Griffin
GRIFFIN & MCCANDLISH
1631 N.E. Broadway, No. 721
Portland, OR  97232

       Attorneys for Plaintiffs


Stephen L. Madkour, County Counsel
Scott C. Ciecko, Assistant County Counsel
Alexander Gordon, Assistant County Counsel
Clackamas County, Oregon
2051 Kaen Road
Oregon City, OR  97045-1819

       Attorneys for Defendants Clackamas County, Michael McCallister, Gary Hewitt,
       Steve Hanschka, and Kim Benthin


Daniel J. Rohlf
Pacific Environmental Advocacy Center
10015 S.W. Terwilliger Blvd.
Portland, OR  97219-7768

       Attorneys for Defendants Mt. Hood Corridor CPO, Don Mench, Dave Fulton,
       Roy Bellows, Donna Bellows, and Janine Bertram

Courtney B. Johnson
Crag Law Center
917 S.W. Oak Street, Suite 417
Portland, OR  97205

> Attorney for *Amici Curiae* Clackamas Community Planning Organization, Birdshill
> Community Planning Organization/Neighborhood Association, Eagle Creek-Barton
> Community Planning Organization, Firwood Community Planning Organization,
> Jennings Lodge Community Planning Organization, Oak Grove Community Council,
> Rosewood Community Planning Association, Southgate Planning Association, and
> League of Women Voters Clackamas County

**SIMON, District Judge**.

## I.    INTRODUCTION

This is an action brought under 42 U.S.C. § 1983, alleging violations of Plaintiffs' rights

under the First and Fourteenth Amendments to the United States Constitution.  Plaintiffs also

assert a common law claim of intentional interference with contractual and other business

relations.  Plaintiffs are property owners and real estate developers.  Defendants are Clackamas

County, several of its employees, a community planning organization, and its chairman and

board members.  Defendants have moved to dismiss the Complaint pursuant to Rule 12(b)(6) of

the Federal Rules of Civil Procedure for failure to state a claim and have also moved to strike

Plaintiffs' common law claim under Oregon's Anti-SLAPP law, Or. Rev. Stat. § 31.150(1).

(Docs. 13 and 17.)  For the reasons stated below, Defendants' motions are granted in part and

denied in part.

## II.    PLAINTIFFS' COMPLAINT

The Plaintiffs in this lawsuit are Kip O'Connor ("O'Connor"), Lisa Konell ("Konell"),

and Big Mountain Co., an Oregon corporation doing business as Big Mountain Excavation ("Big

Mountain").  O'Connor is the sole owner of Big Mountain and a minority member in Lifestyle

Ventures, LLC ("Lifestyle"), an Oregon limited liability company.  Complaint ¶¶ 2-4.  Lifestyle

is not a party in this lawsuit.  In May 2007, O'Connor purchased three lots in Rhododendron, Oregon (collectively, "the Property"), located in Clackamas County.  He then transferred two of these lots to Lifestyle and one lot to Konell.  *Id.* at ¶ 23.  At all times material to this lawsuit, Lifestyle or Konell owned the three lots that comprise the Property.  *Id.*

As originally named in the Complaint, the Defendants in this lawsuit include Clackamas County, Oregon (the "County") and the following individual County employees:  Michael McAllister ("McAllister"), Director of the County Planning Division; Steve Hanschka ("Hanschka"), who works for the County Planning Division; Gary Hewitt ("Hewitt"), who works for the County Planning Division; Kimberly Benthin ("Benthin"), a Code Compliance Specialist who works for the County Department of Transportation and Planning; and Carl Cox ("Cox"), a County Hearings Officer.  *Id.* at ¶¶ 5 and 7-11.  After filing the Complaint, Plaintiffs voluntarily dismissed their claims against County employees McAllister and Hewitt.  (Doc. 62.)

The Complaint also names as Defendants the Mount Hood Corridor Community Planning Organization ("MHC-CPO" or "CPO"), CPO chairman Don Mench ("Mench"), and the following individual members of the CPO board of directors:  Dave Fulton ("Fulton"), Roy Bellows, Donna Bellows, and Janine Bertram ("Bertram") (collectively, the "CPO Defendants"). *Id.* at ¶¶ 6 and 12-13.  According to the CPO Defendants, "MHC-CPO is a community-based, not-for-profit entity made up entirely of citizen volunteers who dedicate a portion of their free time to providing public input to agency decision-makers regarding local land use issues." MHC-CPO's Mem. p. 1.  Although Plaintiffs contend that the MHC-CPO "performs a uniquely governmental function: land use planning," Pl. CPO Mem. p. 2, an issue discussed more fully below, Plaintiffs do not dispute the CPO Defendants' characterization of MHC-CPO stated above.

The Property is located within the Sandy/Salmon River Principal River Conservation Area ("PRCA"), a zone with special development rules. Complaint ¶¶ 17, 23. In October 2007, O'Connor met with County employee Hanschka to review both County maps and maps from the Federal Emergency Management Agency ("FEMA") and determine the Base Flood Elevations ("BFEs") for the Property. *Id.* at ¶ 26. A BFE is a measurement of the land elevation determined to be inundated with water during one percent of major flooding events. *Id.* at ¶ 19. Plaintiffs claim that these maps indicated that Plaintiffs could construct houses on the Property, provided that the BFE information was verified by obtaining elevation certificates from professional land surveyors showing that the proposed houses would be located above the BFE. *Id.* at ¶ 24. In 2008, Plaintiffs began their development of the Property by improving the immediately adjacent road, Relton Lane, with the authorization and consent of the County Road Department. *Id.* at ¶ 25.

In January 2009, the Sandy River flooded. *Id.* at ¶ 26. In February 2009, O'Connor received an Emergency Authorization from the Oregon Department of State Lands ("ODSL") and a "No Permit Required" letter from the Army Corps of Engineers ("ACOE"), allowing Plaintiffs to protect the Property from further erosion by constructing a revetment, *id.* at ¶¶ 27, 28, 30, which is a sloping structure built on a river bank to absorb the energy of incoming water.

On July 20, 2009, after the revetment was essentially completed, County employee Benthin told Lifestyle that the revetment was a potential violation of the County Code and requested that Plaintiffs submit to the County both Flood Plain Development ("FPD") and PRCA permits by August 20, 2009. *Id.* at ¶¶ 30, 31. On July 29, 2009, O'Connor advised Benthin that "he would begin the complex process of the FDP and PRCA permits" by August 20. *Id.* at ¶ 33. On July 30, 2009, Benthin sent a letter to Lifestyle and Konell explaining that the construction of

the revetment violated the County Code and stating that if the FDP and PRCA permits were not completed by August 20, the County would take legal action and impose monetary penalties of $3,500 per day.  *Id.* at ¶ 34.

O'Connor submitted applications for both permits on August 11, 2009.  *Id.* at ¶ 35. Plaintiffs assert that, under Oregon law, applicants are allowed 180 days to complete such applications, which would set a deadline of February 13, 2010.  *Id.*  Also on August 11, County employee Hanschka notified Plaintiffs that the FPD application that Plaintiffs had just submitted was incomplete, and Hanschka specified a completion deadline of February 13, 2010.  *Id.* at ¶ 36.  Hanschka also advised Plaintiffs that the elevation certificate signed by Fir Wood Design Group ("Fir Wood") was unacceptable to the County because it showed the proposed building site to be below the BFE.  *Id.* at ¶ 36.  Plaintiffs allege that Hanschka knew that he was incorrectly using sites upriver from the Property to make this determination.  *Id.*  Plaintiffs allege that Hanschka continued through the fall improperly to insist that the elevation certificates obtained by Plaintiffs were inadequate, despite their alleged compliance with County requirements.  *Id.* at ¶ 43.  Hanschka also contacted Fir Wood to suggest that O'Connor had forged the certificates and that Fir Wood was not qualified to be working on this project.  *Id.*

On August 26, 2009, the County notified Plaintiffs that their PRCA permit application was incomplete, and the County set a completion deadline of February 7, 2010.  *Id.* at ¶ 38.  On August 27, 2009, ODSL and ACOE inspected the revetment project and advised O'Connor that all sites were in compliance with their jurisdictional requirements.  *Id.* at ¶ 39.

On September 9, 2009, Benthin notified Plaintiffs that they were illegally operating a construction business on residential property.  *Id.* at ¶ 40.  Plaintiffs maintain, however, that they had a permit to build a personal residence on the Property.  *Id.*

On October 27, 2009, Benthin mailed citations to Plaintiffs for failure to complete the application for the FPD permit, even though the statutory deadline of February 13, 2010, to complete the application was still almost four months away. The citation imposed a "forfeiture" of $100 and "threatened penalties" of $3,500 for each property. *Id.* at ¶ 42.

On December 2, 2009, O'Connor submitted to the County Plaintiffs' final application documents for the FPD and PRCA permits. *Id.* at ¶ 46. County employee Hewitt "immediately presented" Plaintiffs with a Notice of Incomplete Application ("the Notice") that was dated the next day, December 3, 2009. *Id.* The Notice faulted Plaintiffs for failure to include documents that Plaintiffs allege had been included in the December 2nd submission. *Id.* The Notice also "indicated falsely that FEMA was concerned that the revetment . . . was illegal." *Id.* In addition, Hewitt told O'Connor that Hanschka had determined that Plaintiffs could not get approval of the FPD and PRCA applications without obtaining a Letter of Map Amendment ("LOMA") from FEMA. *Id.* Hanschka also forwarded the Notice to CPO's chairman Mench. *Id.*

A meeting of the CPO was held on January 7, 2010. At that meeting, McAllister, as Director of the County Planning Division, accused O'Connor of violating development and construction laws and suggested that O'Connor's construction license be revoked. *Id.* at ¶ 48. Plaintiffs allege that McAllister's remarks were not described in any agenda item posted in the public notice for the CPO meeting and that O'Connor was not given any advance notice that the CPO would consider that issue at this meeting. *Id.* During this meeting, the CPO "voted to ratify its findings that O'Connor had 'demonstrated personal, irresponsible evasion of codes,' [and] stated that any countywide flood insurance rate increases should be paid by" Plaintiffs; the CPO also recommended at this meeting that "the County seek revocation of O'Connor's contractor's license, that Plaintiffs be fined more than $10,000, and that [the CPO's] findings be

Page 6 – OPINION AND ORDER

circulated to numerous state agencies." *Id.* The CPO also concluded that the BFE certifications, maps, and information submitted by Fir Wood were inadequate and incorrect. *Id.* After the meeting, the CPO published this information on its website. *Id.* Plaintiffs allege that not only are these accusations false, but also that the CPO "did not comply with its by-laws and grievance procedures for this action" when it failed to give Plaintiffs "any opportunity to be heard." *Id.*

On January 12, 2010, the County approved Plaintiff's PRCA permit but notified Plaintiffs that their FPD permit was not complete. *Id.* at ¶ 49. On February 3, 2010, Benthin "requested a code violation hearing" based on O'Connor's failure to complete the FPD application by October 26, 2011, and for performing the emergency revetment construction "without an FPD" permit. *Id.* at ¶ 50. Plaintiffs asked that the code violation hearing be postponed due to the "extension on the [FPD] application" and until the processing of the LOMA application had been completed. Benthin opposed the requested extension and Hearings Officer Cox denied postponement. *Id.* at ¶ 52.

The code violation hearing took place on February 23, 2010. Plaintiffs allege that Benthin falsely testified at that hearing that O'Connor "had over 13 similar code violations for illegal work on the river." *Id.* at ¶ 54. According to Plaintiffs, after the conclusion of the proceedings on February 23rd, Hearings Officer "Cox engaged in an *ex parte* conversation with Don Mench [the Chairman] of Mt. Hood CPO," during which "Mench advised Cox that a finding that the permit was complete was not acceptable and further sanctions should be imposed on Plaintiffs." *Id.* at ¶ 54.

Plaintiffs contend that although, under county ordinances and hearing rules, a "final order" should have been issued after the February 23rd hearing because the record was closed, on March 17, 2010, Cox issued only a "Continuing Order." *Id.* at ¶ 57. Plaintiffs assert that the

Continuing Order was not based solely upon evidence submitted at the hearing, but was also based on improper *ex parte* communications that occurred after the hearing with County staff who did not testify during the hearing. *Id.* According to Plaintiffs, the Continuing Order addressed issues outside the hearing and presented "false and unsubstantiated information as 'fact.'" *Id.* Plaintiffs timely objected to the Continuing Order, but the Continuing Order was nonetheless "published and circulated in the community as if it contained valid findings and binding legal conclusions." *Id.*

"By not issuing a final order as required," Plaintiffs allege that they were denied any right to seek judicial review in Clackamas County Circuit Court. *Id.* Plaintiffs further allege that Benthin engaged in conduct intended to prevent Plaintiffs from obtaining judicial review or other redress from the Clackamas Circuit Court, including the loss or destruction of the audio recording of the February 23rd hearing. *Id.* at ¶¶ 57 and 67.

In addition, on February 9, 2010, FEMA requested that the County sign off on a form required by FEMA when property to be developed is located within the regulatory floodway for the Sandy River. *Id.* at ¶ 51. Hanschka refused to sign the form on three occasions in February and March 2010, preventing Plaintiffs from obtaining the LOMA. *Id.* at ¶¶ 53, 55, 59. Plaintiffs allege, on information and belief, that Defendants' "requirement that Plaintiffs complete a LOMA application was a sham, and that Defendants did not intend to permit Plaintiffs to complete the application or obtain approval from FEMA." *Id.* at ¶ 60.

On March 18, 2010, ODSL and the Oregon Department of Fish and Wildlife ("ODFW") investigated a complaint filed by CPO Chairman Mench about the revetment work that had been performed by Plaintiffs. *Id.* at ¶ 58. ODSL issued a compliance letter for the revetment work on March 29, 2010, but stated that re-vegetation was part of the permit and must be maintained for

three years.  The Continuing Order, however, prohibited such activity, thereby creating "non-compliance with the state-issued permit."  On December 16, 2010, the ODSL confirmed that the revetment work was in compliance with the permit that had been issued to Plaintiffs.  *Id.*

On March 30, 2010, on the basis of a complaint filed by Mench and the CPO, Benthin served code violations on two homes owned by Lifestyle and built by Big Mountain.  *Id.* at ¶ 61. On April 14, 2010, Benthin notified a Big Mountain client that an art studio that Big Mountain had constructed for that client in 2005, and which had been inspected and approved by County building officials at the time, was illegal.  *Id.* at ¶ 62.  At the time of Benthin's action, Big Mountain was engaged in other work for this client.  Benthin nevertheless "shut down this job and subsequently did not respond to the owners' timely request to discuss the shutdown order." *Id.*  Plaintiffs allege that because of that complaint, Big Mountain lost this business relationship, and Plaintiffs believe "this complaint was falsely originated by Don Mench and the CPO."  *Id.*

On May 19, 2010, the County denied Plaintiffs' application for the FPD permit. *Id.* at ¶ 63.  Plaintiffs allege that this denial was based upon "fabricated and incorrect information." *Id.*  On December 14, 2010, and on March 22, 2011, Benthin again issued allegedly meritless code violations to Plaintiffs.  *Id.* at ¶¶ 68, 71.  Plaintiffs allege that Benthin has also issued meritless notices of code violations to several clients of Big Mountain, at the instigation of the CPO.  *Id.* at ¶¶ 69, 70, 72, 73.

Based on these factual allegations, Plaintiffs assert four claims.  For their First Claim, Plaintiffs assert a violation of 42 U.S.C. § 1983 and allege a denial of their Fourteenth Amendment rights of substantive and procedural due process.  For their Second Claim, Plaintiffs assert a violation of 42 U.S.C. § 1983 and allege a denial of their First Amendment rights of freedom of speech and freedom to petition the government for redress of grievances; specifically,

Plaintiffs contend that Defendants retaliated against Plaintiffs based on Plaintiffs' exercise of their First Amendment rights.  For their Third Claim, Plaintiffs assert a violation of 42 U.S.C. § 1983 and allege a denial of their Fourteenth Amendment right of equal protection; specifically, Plaintiffs contend that they are a class-of-one and were treated differently from other land owners, developers and contractors.  For their Fourth Claim, Plaintiffs allege that Defendants intentionally interfered with Plaintiffs' contractual and other business relations in violation of Oregon common law.  Plaintiffs request economic damages in excess of $1 million plus punitive damages and attorney fees.

### III.    STANDARD FOR MOTION TO DISMISS

A motion to dismiss for failure to state a claim may be granted only when there is no cognizable legal theory to support the claim or when the complaint lacks sufficient factual allegations to state a facially plausible claim for relief.  *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010).  In evaluating the sufficiency of a complaint's factual allegations, the court must accept all material facts alleged in the complaint as true and construe them in the light most favorable to the plaintiff.  *Wilson v. Hewlett-Packard Co.,* 668 F.3d 1136, 1140 (9th Cir. 2012); *Coalition for ICANN Transparency, Inc. v. VeriSign, Inc.,* 611 F.3d 495, 501 (9th Cir. 2010).  All reasonable inferences from the factual allegations must be drawn in favor of the plaintiff.  *Nw. Envtl. Def. Ctr. v. Brown*, 640 F.3d 1063, 1070 (9th Cir. 2011).  A complaint need not state "detailed factual allegations," but it must contain sufficient factual matter to "state a claim to relief that is plausible on its face."  *Wilson,* 668 F.3d at 1140, quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555, 570 (2007).  "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal,* 556 U.S. 662, 663 (2009), citing

*Twombly,* 550 U.S. at 556.  The court, however, need not credit the plaintiff's legal conclusions that are couched as factual allegations.  *Iqbal*, 556 U.S. at 678-679.

## IV.    DISCUSSION

### A.    County's Motion to Dismiss the Complaint in Its Entirety

The County asks the Court to dismiss Plaintiffs' Complaint in its entirety "as a consequence of the Plaintiffs' failure to comply with the essential and most basic pleading requirements," urging the Court to dismiss the Complaint prejudice and to award the County its attorney's fees on the ground that the Complaint "is, in all aspects, unreasonable, frivolous, meritless or vexatious."  County Mem. 5-6.  For the reasons stated below, the Court does not agree that the Complaint as a whole is frivolous, meritless, or vexatious.  Accordingly, the County's motion to dismiss the entirety of the Complaint and to award the County its attorney's fees is denied.

### B.    County's Motion to Dismiss Plaintiffs' § 1983 Claims under *Monell*

The County moves to dismiss Claims One, Two, and Three on the basis of *Monell v. Dep't of Soc. Servs. of New York,* 436 U.S. 658 (1978).  In that case, the Supreme Court held that a local governmental entity such as a county or municipality is subject to liability under 42 U.S.C. § 1983 only when the governmental entity itself inflicts the alleged constitutional injury, and not under a theory of *respondeat superior* for alleged civil rights violations by its employees. *Monell,* 436 U.S. at 694 (municipality subject to liability under § 1983 only when violation can be attributed to enforcement of a municipal policy, practice, or decision of a final policy maker); *Gibson v. Cnty. of Washoe, Nev.,* 290 F.3d 1175, 1185 (9th Cir. 2002) ("A municipality may be held liable under a claim brought under § 1983 only when the municipality inflicts an injury, and it may not be held liable under a *respondeat superior* theory.").

To demonstrate that the governmental entity has inflicted a constitutional injury, a plaintiff may show that a county itself violated the plaintiff's rights or directed its employees to do so. *Id., citing Bd. of Cnty. Comm'rs v. Brown,* 520 U.S. 397, 404 (1994). Alternatively, the plaintiff may show that, although a county did not direct its employees to violate the plaintiff's rights, the county is nevertheless responsible, either affirmatively through official policy or custom, or by omission. *Id.* Official policy within the meaning of *Monell* encompasses "situations where a municipality impliedly or tacitly authorized, approved, or encouraged illegal conduct by its . . . officers." *Gibson v. United States,* 781 F.2d 1334, 1337 (9th Cir. 1986).

A policy of inaction may subject a local governmental body to liability if "such inaction amounts to a failure to protect constitutional rights." *Oviatt v. Pearce,* 954 F.2d 1470, 1474 (9th Cir. 1992). A policy of inaction, however, must be a conscious or deliberate choice among various alternatives. *Berry v. Baca,* 379 F.3d 764, 767 (9th Cir. 2004). Liability based on a policy of deliberate inaction depends on the plaintiff's ability to show that: (1) the plaintiff possessed constitutional rights of which the plaintiff was deprived; (2) the county had a policy; (3) this policy amounted to deliberate indifference to the plaintiff's constitutional rights; and (4) the policy was the moving force behind the constitutional violation. *Id.* (citations omitted). Whether a local governmental entity has displayed a policy of deliberate indifference is generally a question for the jury. *Oviatt,* 954 F.2d at 1478.

The County argues that the Complaint is "void of any reference to a policy, practice or custom of Clackamas County which might, in any way, have been the moving force behind" the conduct that Plaintiffs claim constituted the deprivation of their rights. County Mem. p. 6. This argument is not persuasive. Plaintiffs have alleged facts that, if true and if viewed in the light most favorable to the Plaintiffs (as the court must do at this stage), are sufficient to state a claim

that several County employees, including Benthin and Hanschka, wrongfully obstructed or delayed Plaintiffs' permit applications, denied them permits for specious reasons, issued code citations for nonexistent violations, and abused the hearings process with false testimony or *ex parte* communications. Plaintiffs have alleged that some of this conduct constituted retaliation for Plaintiffs' exercise of their First Amendment rights. This conduct, which is alleged to have been committed by several County employees over the course of approximately a year, is sufficient to state a claim that the County "impliedly authorized, approved, or encouraged" the alleged acts. In addition, Plaintiffs' allegations are sufficient to indicate McAllister's knowledge of his subordinates' conduct and either his ratification of that conduct or his deliberate indifference to its constitutional implications.

**C.    County's Motion to Dismiss Plaintiffs' § 1983 Claims against the County Employees**

To state a claim for individual liability under 42 U.S.C. § 1983, a Complaint must allege that: (1) the conduct complained of was committed by a person acting under color of state law; and (2) the conduct deprived a person of a right, privilege, or immunity secured by the Constitution or laws of the United States. *Parratt v. Taylor,* 451 U.S. 527, 535 (1981), *overruled on other grounds, Daniels v. Williams,* 474 U.S. 327 (1986); *Haygood v. Younger,* 769 F.2d 1350, 1354 (9th Cir. 1985). Section 1983 is the appropriate avenue to remedy an alleged wrong only if both of these elements are present. *Haygood,* 769 F.2d at 1354.

The requirement under § 1983 that the challenged conduct be taken "under color of state law" is the same as the "state action" required under the Fourteenth Amendment. *Lugar v. Edmondson Oil Co., Inc.,* 457 U.S. 922, 928-29 (1982). State and local officials who abuse their official power act under color of state law. *Monroe v. Pape,* 365 U.S. 167, 184 (1961) ("Misuse

of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law, is action taken 'under color of' state law.").

In addition, supervisors may be held liable under § 1983 for:  (1) their own culpable action or inaction in the training, supervision, or control of their subordinates; (2) their acquiescence in the constitutional deprivation about which a complaint is made; or (3) conduct that shows a reckless or callous indifference to the rights of others. *Cunningham v. Gates,* 229 F.3d 1271, 1292 (9th Cir. 2000).  Although individual Defendant Michael McAllister is a County supervisor, as stated above Plaintiffs have dismissed their claims against both McAllister and County employee Gary Hewitt as individual Defendants.  (Doc. 62.)

The County argues that Plaintiffs have not pled facts sufficient to establish the liability of the remaining County employees who are individual Defendants, Steve Hanschka and Kim Benthin.  With regard to Defendant Hanschka, Plaintiffs allege that he knowingly used incorrect sites upriver from the Property to reject Plaintiffs' BFE certificates (Complaint ¶ 36), that he continued improperly to insist that Plaintiffs' BFE certificates were inadequate "despite their alleged compliance with County requirements" (Complaint ¶ 43), that he contacted Fir Wood to suggest that O'Connor had forged the certificates and that Fir Wood was not qualified to be working on this project (Complaint ¶ 43), and that he wrongfully refused to sign a form required by FEMA in February and March 2010, preventing Plaintiffs from obtaining the LOMA (Complaint ¶¶ 53, 55, 59, and 60).

With regard to Defendant Benthin, Plaintiffs allege that she wrongfully obstructed or delayed Plaintiffs' permit applications with false deadlines (Complaint ¶ 34), notified Plaintiffs that they were illegally operating a construction business (Complaint ¶ 40), sent citations to Plaintiffs for failure to complete applications even though the deadlines has not yet expired

(Complaint ¶¶ 42, 50, 52), falsely testified at the February 23, 2010 Code Violation Hearing that O'Connor had more than 13 similar code violations for illegal work on the river (Complaint ¶ 54), manipulated hearings record to prevent O'Connor from seeking redress from the circuit court, including losing or destroying the audio recording of the February 23rd hearing (Complaint ¶¶ 57 and 67), and issued to Plaintiffs and to Big Mountain's clients numerous meritless code violations and shut down a job site without a hearing (Complaint ¶¶ 61-62, and 68-73).

At the pleading stage, these allegations, which are set forth in Plaintiffs' Complaint, are sufficient to state a claim for liability of individual County Defendants Hanschka and Benthin.

**D.    County's Motion to Dismiss Plaintiffs' § 1983 Claims on Separate Grounds**

**1.    Plaintiffs' Substantive and Procedural Due Process Claim**

Plaintiffs allege that the County Defendants' actions "in denying and delaying permits, issuing citations, conducting hearings, and otherwise refusing to permit plaintiffs to conduct legal activities were arbitrary and capricious and in violation of fundamental concepts of due process" and that such actions "did not substantially advance any government purpose." Complaint ¶ 77.  Plaintiffs allege a violation of both substantive and procedural due process. Complaint ¶ 74.

To succeed on either claim, Plaintiffs must first demonstrate that they were deprived of a constitutionally protected property interest.  *Gerhart v. Lake Cnty., Mont.,* 637 F.3d 1013, 1019 (9th Cir. 2011).  As explained by the Ninth Circuit:

> In some instances, a person can have a constitutionally protected property interest in a government benefit, such as a license or permit.  *Bd. of Regents of State Colls. v. Roth,* 408 U.S. 564, 577 (1972); *see also Groten v. California,* 251 F.3d 844, 850 (9th Cir. 2001) (holding that plaintiff had a protected property right to a temporary appraiser's license). To have a property interest in a government benefit, "a person clearly

must have more than an abstract need or desire for [the benefit].  He must have more than a unilateral expectation of it.  He must, instead, have a legitimate claim of *entitlement* to it."  *Roth,* 408 U.S. at 577 (emphasis added).  Furthermore, a property interest must "stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits."  *Id.*

Along the same lines, we have held that state law creates a "legitimate claim of entitlement" when it "imposes significant limitations on the discretion of the decision maker."  *Braswell,* 622 F.3d at 1102 (internal quotation marks and alterations omitted).  For example, we have held that such an entitlement to a government permit exists when a state law or regulation requires that the permit be issued once certain requirements are satisfied.  *See, e.g., Groten,* 251 F.3d at 850 (holding that a protected property right to a license existed where both federal and state law entitled the applicant to a license whenever certain statutory requirements were met); *Bateson v. Geisse,* 857 F.2d 1300, 1303 (9th Cir. 1988) (holding that a builder had a property interest in a building permit where city regulations provided that once an applicant met certain requirements, a permit must be issued).

\*    \*    \*

\*    \*    \* The Supreme Court has long recognized the existence of constitutionally protected property interests where a governmental body employs policies and practices that create a legitimate claim of entitlement to a government benefit.  *See Perry v. Sindermann,* 408 U.S. 593, 601 (1972) (holding that a protected property interest exists where there are "rules or mutually explicit understandings that support [a plaintiff's] claim of entitlement to the benefit").

*Gerhart,* 637 F.3d at 1019-20 (bracketed material and emphasis in original).  Although the

Complaint is not a model of clarity, Plaintiffs have adequately alleged sufficient property rights

within this framework.

After alleging a protected property interest, a plaintiff claiming a violation of procedural

due process must then allege that the governmental body used procedures that were

constitutionally inadequate.  *See Ky. Dep't of Corr. v. Thompson,* 490 U.S. 454, 460 (1989).

Plaintiffs allege, among other things, that Defendants issued meritless citations, intentionally

employed erroneous factual information, knowingly provided false testimony, failed to maintain

record evidence including an audio recording of a key hearing, and provided and received improper *ex parte* communications at an administrative hearing. These allegations are sufficient to state a violation of Plaintiffs' rights to procedural due process.

The protections afforded by the substantive component of the due process clause generally have been limited to "matters relating to marriage, family, procreation, and the right to bodily integrity." *Albright v. Oliver,* 510 U.S. 266, 272 (1994) (plurality opinion). The Ninth Circuit, however, has stated that

> the ''irreducible minimum'' of a substantive due process claim
> challenging land use action is failure to advance any legitimate
> governmental purpose. *North Pacifica LLC,* 526 F.3d at 484; *see Dodd v.
> Hood River County,* 59 F.3d 852, 864 (9th Cir.1995).

*Shanks v. Dressel,* 540 F.3d 1082, 1088 (9th Cir. 2008). Plaintiffs have alleged that Defendants' actions "were arbitrary and capricious" and "did not substantially advance any government purpose." Complaint ¶ 77. Under the framework set forth in *Albright,* Plaintiffs have adequately alleged a violation of substantive due process sufficient to withstand a motion to dismiss.

## 2. Plaintiffs' First Amendment Retaliation Claim

Plaintiffs allege that they have been exercising their First Amendment right to petition the government for redress of grievances by "insisting that Clackamas County issue permits" to which Plaintiffs believe they are entitled and by insisting that MHC-CPO conduct meetings "fairly" and "cease and desist from publishing false and defamatory statements." Complaint ¶ 82. Plaintiffs also allege that they have been exercising their First Amendment right to freedom of speech by testifying that Clackamas County was "inefficient in flood planning and response," by publicly criticizing MHC-CPO "for failing to properly conduct community planning meetings," and by using the newspaper and the internet as a forum to criticize "Clackamas County public policies and staff conduct." *Id.* Plaintiffs further allege that

Defendants "retaliated against plaintiffs for exercising First Amendment Rights."

Complaint ¶ 83.

Government officials may be found to have violated an individual's constitutional rights if the officials retaliate against the individual for his exercise of free speech. *See Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 283-84 (1977). To establish such a violation, the plaintiff "must show a causal connection between a defendant's retaliatory animus and subsequent injury in any sort of retaliation action." *Hartman v. Moore*, 547 U.S. 250, 259 (2006). Specifically, the plaintiff bears the initial burden to show that his conduct was a "substantial" or "motivating" factor in the adverse government action. *Mt. Healthy*, 429 U.S. at 287. The defendant may nonetheless defeat plaintiff's claim by showing, by a preponderance of the evidence, that "it would have reached the same decision . . . even in the absence of the protected conduct." *Id.* In other words, there is no unconstitutional retaliation if the government official's conduct was otherwise legal and legitimate. *See Wilkie*, 551 U.S. at 556. Even if the government official acts with malice, his conduct is not retaliatory if it is objectively justified. *See id.* at 558 & n.10.

At the pleading stage, the allegations set forth in Plaintiffs' Complaint are sufficient to state a claim under § 1983 for First Amendment Retaliation.

### 3.    Plaintiffs' Class-of-One Equal Protection Claim

Plaintiffs allege that "Defendants treated plaintiffs differently from other land owners, developers and contractors in violation of the equal protection guaranteed by the Fourteenth Amendment. . . ." Complaint ¶ 90. Plaintiffs further allege that this discriminatory treatment was "irrational," "arbitrary," and "motivated by animosity, ill will, and vindictiveness." Complaint ¶ 91.

Even when a plaintiff is not a member of a protected class, he may still bring an equal protection claim if he has been denied the equal protection of the law.  In such a "class-of-one" claim, the plaintiff must demonstrate that he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment."  *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (per curiam); *see also Gerhart v. Lake Cnty.*, 637 F.3d 1013, 1022 (9th Cir. 2011) (identifying elements of a class-of-one claim).

Both *Olech* and *Gerhart* involved property owners who received objectively different treatment by the local municipality when compared to their similarly situated neighbors.  *See Olech*, 528 U.S. at 563, 565; *Gerhart*, 637 F.3d at 1022-23.  As the Supreme Court later noted, "[w]hat seems to have been significant in *Olech* and the cases on which it relied was the existence of a clear standard against which departures, even for a single plaintiff, could be readily assessed."  *Enquist v. Or. Dep't of Agric.*, 553 U.S. 591, 602 (2008).  When the government action in question involves discretionary decision making, on the other hand, class-of-one claims may not be available.  *See id.* at 603; *see also id.* at 608-09 (rejecting application of class-of-one claims in public employment context).

Plaintiffs have not specifically identified any similarly-situated land owners, developers, or contractors who were treated differently.  Instead, Plaintiffs merely and broadly reiterate that they have been treated inappropriately.  Because Plaintiffs have not specifically identified any similarly-situated persons who were treated differently and because Plaintiffs' class-of-one equal protection claim adds nothing that is not already contained in Plaintiffs' other claims under § 1983, it is dismissed with leave to amend.

**E.     County's Motion to Dismiss Plaintiffs' Tort Claim Against the County**

The County moves to dismiss Plaintiffs' tort claim of intentional interference on the ground that Plaintiffs have failed to provide timely notice of that claim. The Oregon Tort Claims Act ("OTCA") requires that notice of a claim against a public body or an officer, employee, or agent of a public body in Oregon may not be maintained unless notice of that claim is given within 180 days after the alleged loss or injury. Or. Rev. Stat. § 30.275(2)(b). "Failure to give timely notice of claim is fatal to a plaintiff's tort claim against a public body." *Denucci v. Henningsen,* 248 Or. App. 59, 66, 273 P.3d 148 (2012). *See also Urban Renewal Agency v. Lackey,* 275 Or. 35, 40, 549 P.2d 657 (1976) (pleading and proof of notice sufficient to satisfy the requirements of ORS 30.275 is mandatory and a condition precedent to recovery).

The "discovery rule" applies to an OTCA notice of claim. *Denucci,* 248 Or. App. at 68, *citing Adams v. Or. State Police,* 289 Or. 233, 238 611 P.2d 1153, 1156 (Or. 1980). Under the discovery rule, both the notice period and the two-year statute of limitations applicable to an OTCA claim do not begin to run until a plaintiff knows or reasonably should have known of the facts giving rise to his claim. *Id.*, *citing Doe v. Lake Oswego Sch. Dist.,* 242 Or. App. 605, 613, 259 P.3d 27 (2011). The phrase "facts giving rise to his claim" means those facts that would make an objectively reasonable person aware of a substantial possibility that all three of the following elements exist:  (1) an injury occurred; (2) the injury harmed one or more of the plaintiff's legally protected interests; and (3) the defendant is the responsible party. *Denucci,* 248 Or. App. at 68 (citation omitted). The question of what a plaintiff should have known and when the plaintiff should have known that is ordinarily a question for the jury. *Id.*, *citing Johnson v. Multnomah Cnty. Dep't. of Community Justice,* 344 Or. 111, 118-23, 178 P.3d 210 (2008).

The County contends that there is no allegation in the Complaint that Plaintiffs have complied with the notice requirements of the OTCA and no allegation about when the County's purported interference with Plaintiffs' contractual and other business relations occurred; it therefore cannot be determined whether the County had notice of the claim within 180 days of the accrual of a cause of action.

Plaintiffs respond that under the OTCA, the notice requirement may be satisfied by the commencement of an action, Or. Rev. Stat. § 30.275(3)(b) and (c), so that any conduct that occurred no earlier than 180 days from the filing of the Complaint is actionable. The Complaint in this case was filed on October 27, 2011. Plaintiffs also assert, on information and belief, that the County received a copy of an OTCA Notice of Claim submitted to the CPO by Plaintiffs' counsel, Gary Linkous, on August 31, 2010, and therefore had "actual knowledge of the time, place and circumstances giving rise to the claim" by August 31, 2010. Pl. Mem. p. 9; Corrected Decl. of Gary Linkous, Ex. 1.

The County replies that the letter written by Linkous to the CPO relates to actions taken by the CPO in January and April 2010 and that conduct occurring in January 2010 is beyond the reach even of a notice sent on August 31, 2010. In addition, the County argues, sending a letter to one public body does not give another public body the requisite notice, and there is nothing in Linkous's letter that provides notice that Plaintiffs' tort claim was being asserted against the County. The County also challenges the statement in the Linkous Declaration that he had conversations with various members of the County Counsel's office about "the conduct which is the basis of Plaintiffs' claims in this case," because it does not establish actual notice of this particular claim.

Page 21 – OPINION AND ORDER

The burden is on Plaintiffs to prove that notice of their claim was timely.  Or. Rev. Stat. § 30.275(7).  Plaintiffs have not adequately pleaded the notice requirement of the OTCA with respect to the tort claim asserted against the County; nor have they pleaded facts sufficient to come within the discovery rule.[1]  Plaintiffs' tort claim of intentional interference against the County is dismissed with leave to amend the Complaint by pleading facts, if they exist, that satisfy the notice of claim requirements of the OTCA.

**F.      County's Motion to Dismiss Plaintiffs' Tort Claim against the County Employees**

The County argues that Plaintiffs' tort claim must also be dismissed against the individual County defendants.  The OTCA provides, in relevant part:

> The sole cause of action for any tort of officers, employees or agents of a public body acting within the scope of their employment or duties . . . shall be an action against the public body only.  The remedy provided by ORS 30.260 to 30.300 is exclusive of any other action or suit against any such officer, employee, or agent of a public body whose act or omission within the scope of the officer's, employee's, or agent's employment or duties gives rise to the action or suit.  No other form of civil action or suit shall be permitted.  If an action or suit is filed against an officer, employee or agent of a public body, on appropriate motion the public body shall be substituted as the only defendant.

Or. Rev. Stat. § 30.260(1).

---

[1]  Plaintiffs also argue that they have alleged a continuing tort sufficient to defeat the County's argument that the interference claim is time-barred under the OTCA. The argument is unpersuasive because nothing in the Complaint suggests that Plaintiffs were unable to litigate individual causes of action as they accrued.  The continuing tort doctrine rests on "the concept that recovery is for the cumulative effect of wrongful behavior, not for discrete elements of that conduct." *Davis v. Bostick,* 282 Or. 667, 671-72, 580 P.2d 544, 547 (1978).  A continuing tort argument cannot avoid the statute of limitations if, during the whole series of acts complained of, the defendant was within reach of process, so that a separate cause of action could have been asserted. *Davis,* 282 Or. at 673, 580 P.2d at 674 ( "Designating a series of discrete acts, even if connected in design or intent, a 'continuing tort' ought not to be a rationale by which the statute of limitations policy can be avoided, for surely the cause of action "accrued" at some time.").

On the basis of this provision, the County argues that Plaintiffs' tort claim may be asserted only against the County and that the individual employees must be dismissed as Defendants on this claim. Plaintiffs agree. Pl. Mem. 8. Accordingly, the County's motion to dismiss Plaintiffs' tort claim of intentional interference against the individual County employees is granted with prejudice.

### G.    County's Motion to Dismiss O'Connor as a Named Plaintiff

The County argues that Plaintiff O'Connor should be removed from the Complaint as a party plaintiff because he is not the real party in interest as to any of the properties that are asserted to have suffered injury. County Mem. 51-52.

Rule 17(a)(1) of the Federal Rules of Civil Procedure provides in relevant part: "An action must be prosecuted in the name of the real party in interest." The rule itself does not define "real party in interest;" instead, "it allows a federal court to entertain a suit at the instance of any party to whom the relevant substantive law grants a cause of action." *U-Haul Int'l, Inc. v. Jartran, Inc.,* 793 F2d 1034, 1038 (9th Cir. 1986). In addition, "the modern function of the rule . . . is simply to protect the defendant against a subsequent action by the party actually entitled to recover, and to insure generally that the judgment will have its proper effect as res judicata." *Id.* at 1039, quoting Note of Advisory Committee on 1966 Amendment to Fed.R.Civ.P. 17. In addition, to demonstrate that a plaintiff is the real party in interest, the plaintiff "must allege facts sufficient to reveal that he suffered an injury, that the injury was caused by the defendant's illegal conduct, and that his injury could be redressed by a favorable outcome to the lawsuit." *Seckler v. Star Enter.,* 124 F.3d 1399, 1406 (11th Cir. 1997).

Nothing in Plaintiffs' Opposition to Clackamas County's Motion to Dismiss shows how Plaintiff Kip O'Connor personally suffered an injury, is the party actually entitled to recover, or

is the party to whom the relevant substantive law grants a cause of action.  The Complaint

alleges that Plaintiff O'Connor is the sole owner of Plaintiff Big Mountain and a minority

member in Lifestyle, an Oregon limited liability company that is not a party to this lawsuit.

Complaint ¶¶ 2-4.  The Complaint also alleges that O'Connor purchased the three parcels of the

Property that is at issue in this lawsuit in May 2007, that he "subsequently transferred" two of

those lots to Lifestyle and one to Konell, and that "[a]t all material times, Lifestyle Ventures and

Konell owned this property."  *Id.* at 23.  Based on these allegations, it appears that Plaintiff

O'Connor's interest in this action is at most indirect, as a minority owner of non-party Lifestyle

and as the sole owner of Plaintiff Big Mountain.  Because Plaintiff O'Connor has not alleged

facts showing that he personally suffered any injury, is the party actually entitled to recover, or is

the party to whom the relevant substantive law grants a cause of action, Mr. O'Connor

personally is dismissed as a party plaintiff in this lawsuit pursuant to the County's motion.

**H.    CPO's Motion to Dismiss Plaintiffs' § 1983 Claims**

The CPO and the individual CPO defendants move to dismiss Plaintiffs' § 1983 claims

on the ground that the Complaint does not allege that these Defendants acted under color of state

law or were engaged in state action for purposes of the Fourteenth Amendment. They argue that

the Complaint does not allege that the CPO is a governmental entity, but only that the CPO is

"recognized by Clackamas County" for the purpose of involving citizens in land use planning

decisions, and that the County verifies that the CPO follows its bylaws and meets regularly.

They add that "the mere fact that Clackamas County exerts some regulatory control" over the

CPO "as a condition of County recognition" does not make the CPO a governmental entity.

The CPO Defendants rely on *Sutton v. Providence St. Joseph Medical Center,* 192 F.3d

826, 838 (9th Cir. 1999) (private employer's compliance with federal law does not convert

employer into a governmental actor); *San Francisco Co. Democratic Cent. Comm. v. Eu,* 826

F.2d 814 (9th Cir. 1987) (county central committees of political parties not public agencies,

despite state regulation); and *Adams v. Southern California First National Bank,* 492 F.2d 324,

330-31 (9th Cir. 1974) (behavior that conforms to state law not sufficient to show state action).

Plaintiffs respond, in large part, by stating that community planning organizations are

governmental bodies because they play a role in land use planning, they are subject to Oregon's

Public Meetings Law, and their decisions are made through a public voting process.  The CPO

Defendants reply that they make only non-binding recommendations to Clackamas County

decision-makers and that Oregon's Public Meetings Law includes "advisory groups," *see* Or.

Rev. Stat. § 192.610, to provide transparency in the public comment processes.  The CPO

Defendants add that other state law definitions of "public body" exclude advisory groups and

refer only to governmental entities.  *See* Or. Rev. Stat. § 174.109 (defining public bodies to

include "state government bodies, local government bodies and special government bodies"); *see*

*also* Or. Rev. Stat. § 192.410(3).  The court is satisfied that community planning organizations

such as MHC-CPO are not "public bodies" as that term is understood under Oregon law.  *See*

*generally Marks v. McKenzie High School Fact-Finding Team,* 319 Or. 451, 878 P.2d 417

(1994).

The question of whether the CPO Defendants' alleged conduct can be attributed to the

County, however, is one that cannot be answered on the basis of a simple distinction between a

public body and a private organization.  As the Supreme Court observed in *Brentwood Academy*

*v. Tennessee Secondary School Athletic Association,* 531 U.S. 288, 295 (2001)*,* "[w]hat is fairly

attributable is a matter of normative judgment, and the criteria lack rigid simplicity.  From the

range of circumstances that could point toward the State behind an individual face, no one fact

can function as a necessary condition across the board" for finding the presence or absence of state action. *Brentwood Acad.,* 531 U.S. at 295-96. Cases from the United States Supreme Court are "unequivocal in showing that the character of a legal entity is determined neither by its expressly private characterization in statutory law, nor by the failure of the law to acknowledge the entity's inseparability from recognized government officials or agencies." *Id.* at 296.

The state action doctrine is designed to preserve an area of individual freedom free of constitutional restraints and to avoid the imposition of responsibility on a state for conduct it cannot control, but it is also intended to ensure that constitutional standards are invoked when it can be said that the "State is *responsible* for the specific conduct of which the plaintiff complains." *Brentwood Acad.,* 531 U.S. at 295 (internal quotation marks and citations omitted; emphasis in original).

> If the Fourteenth Amendment is not to be displaced, therefore, its ambit cannot be a simple line between States and people operating outside formally governmental organizations, and the deed of an ostensibly private organization or individual is to be treated sometimes as if a State had caused it to be performed. Thus, we say that state action may be found if, though only if, there is such a "close nexus between the State and the challenged action" that seemingly private behavior "may be fairly treated as that of the State itself."

*Id.* (internal quotation marks and citations omitted). As noted, if a defendant's conduct satisfies the state action requirement of the Fourteenth Amendment, the conduct also constitutes action "under color of state law" for § 1983 purposes. *Id.* at 295 & n. 2, *citing Lugar,* 457 U.S. at 935.

State action exists when: (1) a private party carries out a function that has been historically and traditionally the prerogative of the state, *see, e.g., Flagg Bros. v. Brooks,* 436 U.S. 149, 157-58 (1978), *West v. Atkins,* 487 U.S. 42 (1988); (2) the state has ordered the private conduct or "exercised coercive power over" the conduct or provided significant encouragement, overt or covert, so that the "choice must in law be deemed to be that of the State," *see, e.g., Blum*

*v. Yaretsky,* 457 U.S. 991, 1004 (1982); (3) a private party jointly participates in alleged constitutional wrongdoing with a state or local official engaged in state action, *see, e.g., Lugar,* 457 U.S. at 941, *Dennis v. Sparks,* 449 U.S. 24, 27-28 (1980); or (4) the state is pervasively entwined with a private association, *see, e.g., Evans v. Newton,* 382 U.S. 296, 299, 301 (1966); *Brentwood Acad.,* 531 U.S. at 302.

The first two tests do not apply here.  With regard to the third test, the CPO Defendants contend that their alleged conduct in submitting comments or otherwise communicating with County decision-makers, or complaining to County officials about Plaintiffs' alleged lack of compliance with land use requirements or permit conditions, is insufficient to establish joint actor or conspiracy-based liability. The CPO Defendants cite  *Christian Gospel Church, Inc. v. San Francisco,* 896 F.2d 1221 (9th Cir. 1990), *superseded on other grounds by* 42 U.S.C. § 2000e (private homeowners did not conspire with city and county to violate church's civil rights by circulating petition against grant of conditional use permit to church), and *Oregon Natural Resources Council v. Mohla,* 944 F.2d 531 (9th Cir. 1991) (contractor's counterclaim against environmental group did not sufficiently allege that environmental group's lawsuit was a sham not entitled to *Noerr-Pennington* protection of right to petition governmental bodies).  With regard to the fourth test, the CPO Defendants argue that even the "intertwined" test, "arguably the most vague of the four approaches," *Kirtley v. Rainey,* 326 F.3d 1088, 1094 (9th Cir. 2003), is not applicable here because "nothing in the Complaint alleges more than communications and information exchange between [the CPO] and [the] County." CPO Mem. p. 20.

The Complaint, however, alleges significantly more against MHC-CPO and its Chairman than the circulation of a petition, making the *Christian Gospel Church* case inapplicable.  Nor

does the Complaint in this case implicate the *Noerr-Pennington* doctrine,[1] as in the *Oregon Natural Resources* case.  Nor does the Complaint allege "nothing more" than communications and information exchange between the CPO and the County.  Rather, the Complaint alleges that CPO Chairman Mench had improper *ex parte* communications with County Hearings Officer Cox, advising "that a finding that the permit was complete was not acceptable and further sanctions should be imposed" on Plaintiffs.  Complaint ¶¶ 54 and 57.  The Complaint also alleges that the CPO made "findings" published on a website, including a finding that the BFE certifications, maps, and information submitted by Fir Wood on Plaintiffs' behalf were inadequate and incorrect.  *Id.* at ¶ 48.

The Complaint further alleges that CPO Chairman Mench instigated the code violation charges brought by Benthin against the clients of Big Mountain.  *Id.* at ¶ 62.  The CPO Defendants challenge the accuracy of these allegations, but for purposes of the present motion, the Court must accept these factual allegations as true, and they present at least a facially plausible claim that MHC-CPO and its Chairman, Defendant Mench, acted under color of state law either by jointly participating in the alleged constitutional wrongdoing with a local official engaged in state action or by being intertwined with county decision-makers.  Plaintiffs have not, however, sufficiently alleged any such joint or intertwined action involving any other board

---

[1] The *Noerr-Pennington* doctrine comes from *Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127 (1961), and *United Mine Workers v. Pennington*, 381 U.S. 657 (1965).  The doctrine states that the federal antitrust laws do not regulate the conduct of private individuals in seeking anti-competitive action from the government.  The doctrine "rests ultimately upon a recognition that the antitrust laws, tailored as they are for the business world, are not at all appropriate for application in the political arena."  *City of Columbia v. Omni Adver.*, 499 U.S. 365, 380 (1991), *quoting Noerr*, 365 U.S. at 141.  *Noerr* "shields from the Sherman Act a concerted effort to influence public officials regardless of intent or purpose." *Pennington,* 381 U.S. at 670.

member of MHC-CPO.  Accordingly, the CPO Defendants' motion to dismiss Plaintiffs' claims

under § 1983 is denied with regard to MHC-CPO and its Chairman, Defendant Mench, but is

granted with regard to all other individual CPO Defendants.

**I.    CPO's Motion to Strike Plaintiffs' Tort Claim under Oregon's Anti-SLAPP Law**

The elements of a claim for "intentional interference with economic relations and

prospective economic advantage" are:  (1) the existence of a professional or business

relationship; (2) intentional interference with that relationship or advantage; (3) by a third party;

(4) accomplished through improper means or for an improper purpose; (5) a causal effect

between the interference and the harm to the relationship or prospective advantage; and

(6) damages.  *Allen v. Hall,* 328 Or. 276, 974 P.2d 199, 202 (1999).  When such an interference

claim is brought as a result of constitutionally-protected speech, the claim is subject to the same

First Amendment requirements that govern actions for defamation.  *Gardner v. Martino,* 563

F.3d 981, 992 (9th Cir. 2009).

The CPO and the individual CPO defendants move to dismiss Plaintiffs' tort claim of

interference claim on the ground that it falls under the rubric of "Strategic Lawsuits Against

Public Participation" ("SLAPP"), for which Oregon law provides an expedited dismissal

process.[1]  "Anti-SLAPP statutes are designed to allow the early dismissal of meritless lawsuits

aimed at chilling expression through costly, time-consuming litigation." *Northon v. Rule,* 637

F.3d 937, 938 (9th Cir. 2011), *quoting Gardner,* 563 F.3d at 986.

---

[1] The CPO Defendants concede that whether Oregon's Anti-SLAPP law could be used to dismiss
Plaintiffs' federal claims is an issue that has not yet been resolved in the Ninth Circuit, noting
that the Ninth Circuit has acknowledged a district court's decision not to apply California's
Anti-SLAPP law to federal claims.  *See Hilton v. Hallmark Cards,* 599 F.3d 894, 901 (9th Cir.
2010).  The CPO Defendants have not moved to dismiss Plaintiffs' federal claims under
Oregon's Anti-SLAPP law.

Under Or. Rev. Stat. § 31.150(1), a defendant may make a special motion to strike, which is treated as a motion to dismiss without prejudice.  The defendant has the initial burden of showing that the challenged statement is within one of these categories:

> (a)    Any oral statement made, or written statement or other document submitted, in a legislative, executive, or judicial proceeding or other proceeding authorized by law;
>
> (b)    Any oral statement made, or written statement or other document submitted, in connection with an issue under consideration or review by a legislative, executive or judicial body or other proceeding authorized by law;
>
> (c)    Any oral statement made, or written statement or other document presented, in a place open to the public or a public forum in connection with an issue of public interest; or
>
> (d)    Any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue of an issue of public interest.

If the defendant meets this initial burden, the burden shifts to the plaintiff to establish that there is a probability that the plaintiff will prevail on the claim by presenting substantial evidence to support a prima facie case.  If the plaintiff meets this burden, the court must deny the motion. Or. Rev. Stat. § 31.150(3).  *See also Northon,* 637 F.3d at 938 & n. 1.

Although Plaintiffs have alleged that CPO Chairman Mench filed a complaint about the revetment and had improper *ex parte* communications with County Hearings Officer Cox, that members of the CPO made statements at a meeting about O'Connor's code violations and about the revocation of his contractor's license, that the CPO questioned the accuracy of Fir Wood's maps; and that the CPO published findings about O'Connor on a website, allegations are not the same as evidence.  Plaintiffs may not rely on their pleading allegations in response to a motion to strike under Oregon's Anti-SLAPP law.  Plaintiffs have not established that there is a probability that Plaintiffs will prevail on their state law claim against the CPO Defendants by presenting

substantial evidence to support a *prima facie* case.  *See* Or. Rev. Stat. § 31.150(3).  Accordingly, the CPO Defendants' special motion to strike is granted.

## V.    CONCLUSION

Defendants' motions to dismiss (Docs. 13 and 17) are granted in part and denied in part as follows:  (a) Plaintiffs' tort claim for intentional interference against individual County Defendants Hanschka and Benthin is dismissed with prejudice; (b) Plaintiffs' tort claim for intentional interference against the County is dismissed without prejudice; (c) Plaintiffs' tort claim for intentional interference against the CPO Defendants is dismissed without prejudice; (d) Plaintiff O'Connor's claims are dismissed without prejudice; (e) Plaintiffs' class-of-one claim under § 1983 is dismissed without prejudice; (f) Plaintiffs' claims under § 1983 against the individual board members of MHC-CPO are dismissed without prejudice (but Plaintiffs' claims under § 1983 against MHC-CPO itself and its Chairman, Defendant Mench, are not dismissed); and (g) all other pleading motions and arguments not expressly ruled upon in this paragraph are denied.  Plaintiffs may file an amended complaint within 30 days from the date of this Opinion and Order.

**IT IS SO ORDERED.**

Dated this 28th day of August, 2012.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge