Daniel J. Rohlf (OSB #99006)
Rohlf@lclark.edu
Earthrise Law Center
10015 S.W. Terwilliger Blvd
Portland, OR 97219-7768
Tel: (503) 768-6707
Fax: (503) 768-6642

*Counsel for Defendant Don Mench*

# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| **KIP O'CONNOR, LISA KONELL, and BIG MOUNTAIN EXCAVATION CO., and Oregon Business Corporation** | **Civil No.:** 3:11-CV-1297-SI |
| **PLAINTIFFS**, | |
| v. | **DEFENDANT DONALD MENCH'S ANSWER TO PLAINTIFF'S THIRD AMENDED COMPLAINT** |
| **COUNTY OF CLACKAMAS, STEVE HANSCHKA, individually and in his capacity as an employee of the Clackamas County Planning Division, KIM BENTHIN, individually and in her capacity as an employee of the Clackamas County Department of Transportation and Planning, and DONALD MENCH, individually** | |
| **DEFENDANTS.** | |

Defendant Donald Mench ("Mr. Mench") hereby responds to the allegations in Plaintiffs'

Third Amended Complaint as follows:


*1. This court has jurisdiction pursuant to 28 USC 1331 and 1343(a) based on 42 USC 1983. Venue is properly in this court because all plaintiffs and defendants are residents of Oregon and all transaction* [sic] *occurred in Clackamas County, Oregon.*

Mr. Mench admits the averments in Paragraph 1.

*2. Plaintiff Kip O'Connor ("O'Connor") is a resident of Welches, Oregon. O'Connor is the owner of Lifestyle Ventures, LLC, ("Lifestyle") and Big Mountain Co. ("Big Mountain").*

Mr. Mench admits that Mr. O'Connor is an owner of Lifestyle Ventures, LLC, but denies

that he is the sole owner of that business. Mr. Mench lacks information or knowledge sufficient

to evaluate the truth or falsity of the remainder of Paragraph 2 and on that basis denies it.


*3. Plaintiff Lisa Konell ("Konell") is a resident of Sandy, Oregon, and at all material times was plaintiff O'Connor's fiance.*

Mr. Mench admits the averments in Paragraph 3.

*4. Plaintiff Big Mountain Co. ("Big Mountain") is an Oregon corporation with its principle* [sic] *place of business in Brightwood, Oregon.  Big Mountain is properly licensed in Oregon as a construction contractor and uses the dba Big Mountain Excavating.*

Mr. Mench admits the averments in Paragraph 4.

*5. Defendant Clackamas County, Oregon, (Clackamas County) is an incorporated County in Oregon. As such, Clackamas County is responsible for enforcing county land use laws, known as the Zoning and Development Ordinance ("ZDO"). Clackamas County does so through the Clackamas County Planning Division ("Planning Division") and the Clackamas County Department of Transportation and Development.*

Mr. Mench admits the averments in Paragraph 5.

*6. Defendant Kimberly Benthin ("Benthin") is a Code Compliance Specialist who works for the Clackamas County Department of Transportation and Planning. Plaintiffs are informed and believe that Benthin is a resident of Clackamas County, Oregon.*

Mr. Mench admits the first sentence of Paragraph 6, but lacks information or knowledge

sufficient to form an opinion about the truth or falsity of the second sentence and as such denies it.

*7. Defendant Steve Hanschka ("Hanschka") is an employee of the Clackamas County Planning Division. Plaintiffs are informed and believe that Hanschka is a resident of Clackamas County, Oregon.*

Mr. Mench admits the first sentence of Paragraph 7, but lacks information or knowledge sufficient to evaluate the truth or falsity of the second sentence and as such denies it.

*8. Defendant Don Mench was at all material times the Chair of the Mt. Hood CPO Land Use Committee. Mench is a resident of Clackamas County, Oregon.*

Mr. Mench admits the averments in Paragraph 8.

*9. In May 2007, O'Connor purchased real property located on Relton Lane, and described as Lots 4200-4400, Liberty Lodge Subdivision, in the County of Clackamas, Rhododendron, Oregon. (hereinafter referred to by Lot numbers). O'Connor subsequently transferred Lots 4200-4300 to Lifestyle Ventures, LLC, ("Lifestyle") and Lot 4400 to Konell. These lots are suitable for development as residential property under federal, state and local laws. At all material times, Lifestyle and Konell owned these properties.*

Mr. Mench denies that Lots 4200–4400 are suitable for development under all relevant laws, but admits the remainder of Paragraph 9.

*10. At all material times, Konell and O'Connor owned property located at 27909 Salmon River Rd, Welches, Oregon. (hereinafter "Salmon River Rd property").*

Mr. Mench lacks information and knowledge sufficient to form an opinion about the truth or falsity of Paragraph 10 and as such denies it.

*11. Lots 4200-4400 are within the Sandy/Salmon River Principal River Conservation Area ("PRCA"). A PRCA permit is required for development on such property. PRCA permits are issued by the Planning Division pursuant to the Clackamas County ZDOs.*

Mr. Mench admits the averments in Paragraph 11.

*12. Lots 4200-4400 are within a regulated floodplain. Clackamas County regulates development*

*in regulated floodplains through its ZDOs, particularly Section 703. A Floodplain Development Permit ("FDP") is required for most development within a regulated floodplain. FDP permits are issued by the Planning Division pursuant to the Clackamas County ZDO's.*

Mr. Mench admits the averments in Paragraph 12.

*13. The eastern boundary of Lots 4200-4400 is a bank of the Sandy River. Development that affects the riverbank is regulated by State of Oregon or federal law. These state and federal laws and regulations are administered by the Oregon Division of Fish and Wildlife ("ODFW"), Oregon Department of State Lands ("ODSL"), and/or the U.S. Army Corps of Engineers ("ACOE"). Landowners may obtain emergency permits from these agencies for development of stream bank protection. Such development may include the construction of revetments on the bank and protruding into the river.*

Mr. Mench admits that emergency permits are available but denies the implication that such emergency permits are themselves sufficient to authorize development; other permits from other relevant regulatory bodies, such as the National Marine Fisheries Service, may be necessary as well. Mr. Mench admits that development affecting the bank of the Sandy River is regulated by both federal law and Oregon law, including local regulation. Mr. Mench admits the remainder of the averments in Paragraph 13.

*14. On or about January 20, 2009, O'Connor, on behalf of Lifestyle and Konell, applied for an Emergency Authorization jointly from ODSL and ACOE to protect the Lots and to prevent further erosion of the bank as a result of a major flood event on the Sandy River caused by a January, 2009 storm. Considerable loss of property through erosion of the bank already had occurred and was continuing at that time as a result of the major flood event. After O'Connor met on site with ODSL and ODFW, ODSL issued an Emergency Authorization. Lifestyle and O'Connor were authorized to repair and protect the bank of Sandy River contiguous with the boundary of Lots 4200-4400 through the construction of a revetment. The revetment is a wall built of rip-rap composed of rock, earth, and logs measuring 200ft (long) x 10ft (wide) x 7 ft (high).*

Mr. Mench lacks information or knowledge sufficient to form an opinion about the truth or falsity of the first four sentences of Paragraph 14 and as such denies them. Mr. Mench denies the purported dimensions of the revetment.

*15. ODSL sent a copy of this Emergency Authorization to Clackamas County Planning*

*Department on February 2, 2009. Pursuant to ORS 196.835, if Clackamas County objected to the granting of the Emergency Authorization by ODSL, Clackamas County was required to file a written request for a hearing with the Director of ODSL within 21 days after the date the authorization was granted. Clackamas County did not object to the Emergency Authorization.*

Mr. Mench admits that ODSL sent Clackamas County a copy of an Emergency Authorization on February 2, 2009. Mr. Mench lacks information or knowledge sufficient to form an opinion about the truth or falsity of the remainder of Paragraph 15, and as such denies it.

*16. Neither Clackamas County ZDOs nor state law required plaintiffs to obtain an FDP or PRCA permit prior to performing the emergency work. The ZDOs define no time deadline on which an applicant or landowner must begin or complete FDP or PRCA application processes after the issuance of an Emergency Authorization. ZDO 703.09 (regulating FDP permits) states: "Work that is necessary to protect.. stream banks...in response to emergencies may be undertaken prior to obtaining an FDP provided that an FDP is obtained after the emergency has passed."*

Mr. Mench lacks information or knowledge sufficient to form an opinion about the truth or falsity of Paragraph 16, and as such denies it.

*17. On or about February 14, 2009, O'Connor and Big Mountain received a notice from ACOE that no permit from ACOE was required for the stream bank protection. Thereafter, O'Connor as applicant and Big Mountain as contractor began work under the Emergency Authorization on behalf of Lifestyle and Konell.*

Mr. Mench admits the first sentence of Paragraph 17, but denies that the averred notice discussed stream bank protection expressly. Mr. Mench lacks information or knowledge sufficient to form an opinion about the truth or falsity of the remainder of Paragraph 17 and as such denies it.

*18. On or about April 30, 2009, O'Connor and Big Mountain had substantially completed work that had been authorized by ODSL under the Emergency Authorization. The work met all requirements imposed by ODSL and all development requirements under the ZDOs.*

Mr. Mench lacks information or knowledge sufficient to form an opinion about the truth or falsity of Paragraph 18 and as such denies it.

*19. On July 20, 2009, defendant Benthin notified Lifestyle that the revetment was a potential violation of the Clackamas County ZDO 704 and asked that Lifestyle contact the Department of Transportation and Development no later than July 30, 2009.*

Mr. Mench lacks information or knowledge sufficient to form an opinion about the truth or falsity of Paragraph 19 and as such denies it.

*20. On July 29, 2009, O'Connor, as applicant and on behalf of Lifestyle and Konell, advised Benthin in a telephone conversation that he would begin FDP and PRCA application processes by the Aug 20, 2009, deadline that had been imposed by Benthin during the telephone conversation.*

Mr. Mench lacks information or knowledge sufficient to form an opinion about the truth or falsity of Paragraph 20 and as such denies it.

*21. On July 30, 2009, Benthin sent a letter to Lifestyle and Konell that stated that work on the Lots 4200-4400 had occurred in the principal river area and was a violation of ZDOs 703 and 704. Benthin demanded that FDP and PRCA permits be completed by August 20, 2009, and threatened legal action and civil penalties of $3500 per day per lot.*

Mr. Mench lacks information or knowledge sufficient to form an opinion about the truth or falsity of Paragraph 21.

*22. On August 11, 2009, O'Connor submitted initial PRCA and FDP permit application forms. On Konell's behalf, O'Connor applied for both a PRCA and a FDP permit. The application processes for each of these permits are complex and expensive and include engineering reports and surveys. Under ORS 215.427(3) applicants are allowed 180 days from the initiation of a PRCA or FDP application to complete the applications. If an application is not completed within that time period, the application is considered void. The deadline for plaintiffs to complete the application process was no earlier than February 9, 2010.*

Mr. Mench lacks information or knowledge sufficient to form an opinion about the truth or falsity of Paragraph 22.

*23. On August 17, 2009, defendant Hanschka notified plaintiffs Konell and O'Connor that the FDP application (FDP #Z0519-09-F) was incomplete. This Notice specified the completion date for the application as February 13, 2010. Hanschka stated that the FDP application would*

*remain incomplete until such time as all of the required materials for an application for bank stabilization, rip-rap and fill within the floodplain and Regulatory Floodway as outlined in an attachment to the Notice were received by Clackamas County.  Hanschka did not advise plaintiffs Konell and O'Connor that a Letter of Map Amendment ("LOMA") or LOMC ("Letter of Map Change") was a requirement for the FDP .*

Mr. Mench lacks information or knowledge sufficient to form an opinion about the truth

or falsity of Paragraph 23.


*24. On August 20, 2009, O'Connor advised Benthin that he was securing a survey/engineering company to obtain the geo-technical information that was required for the permits. He also advised Benthin that he was aware that under Clackamas County regulations he and Konell were allowed 180 days from August 11 to complete the PRCA and FDP application processes.*

Mr. Mench lacks information or knowledge sufficient to form an opinion about the truth

or falsity of Paragraph 24.


*25. On August 26, 2009, the Planning Division notified plaintiffs Konell and O'Connor that the PRCA application (PRCA #Z0520-09-R) was incomplete. The Notice stated that the deadline for completion of the PRCA application was February 7, 2010.*

Mr. Mench lacks information or knowledge sufficient to form an opinion about the truth

or falsity of Paragraph 25.


*26. On or about September 9, 2009, Benthin notified O'Connor and Konell that O'Connor was illegally operating a construction business at the Salmon River Rd. property. O'Connor and Konell had a building permit and were building a personal residence on the Salmon River property consistent with that permit.*

Mr. Mench lacks information or knowledge sufficient to form an opinion about the truth

or falsity of Paragraph 26.


*27. On October 26, 2009, Benthin issued two citations to Lifestyle for Lots 4200 and 4300 and one citation to Konell for Lot 4400. The citations allege that Lifestyle and Konell had violated Title 12 and 13 of the ZDOs by "fail[ing] to submit complete land use applications to abate violation with river." The citations imposed forfeitures of $100 and threatened penalties of $3500 per day for each Lot.*

Mr. Mench admits the averments in Paragraph 27.

*28. On Nov 14, 2009, O'Connor testified as an expert witness in a civil action in Circuit Court in Clackamas County. O'Connor testified that Clackamas County is inefficient in taking care of the flooding problems and had allowed an improper revetment structure to be constructed in the Sandy River which caused Jim and Amy Monroe to lose their home. Subsequently, O'Connor began writing news articles documenting and criticizing Clackamas County's poor management, lack of common sense, violation of flood plain development laws and ordinances, and an inadequate understanding of the flooding problems in the Mt. Hood area and how to properly address them. Defendants were well aware of O'Connor's criticism.*

Mr. Mench admits that he was aware of articles in the local newspaper written by Mr.

O'Connor in which Mr. O'Connor generally criticized Clackamas County officials. However,

Mr. Mench denies that he was aware of Mr. O'Connor's specific testimony regarding the

Monroe property and Clackamas County's dealings with flooding issues.

*29. On December 2, 2009, O'Connor personally delivered PRCA and FDP application documents to the Clackamas County Planning Division. Gary Hewitt, who was responsible for processing the PRCA application, received the documents. These documents included the "no adverse affects" statement from Firwood Design Group relating to the revetment. Hanschka had claimed that a "no adverse affect" certification was a requirement for completion of the FDP permit application. Immediately after plaintiff O'Connor gave these documents to Hewitt, Hewitt personally gave O'Connor a Notice of Incomplete Application for the Floodplain Development Permit (#Z0519-09-F). The Notice was dated December 3, 2009, and was addressed to O'Connor, Konell and Lifestyle. The Notice stated that the FDP application was incomplete. It stated that application documents that O'Connor had delivered to Hewitt less than 10 minutes earlier had not been submitted. The Notice also indicated falsely that FEMA was concerned that the revetment that O'Connor had constructed at lots 4200-4400 was illegal and had the potential to increase flood insurance rates throughout the entire Clackamas County area. The Notice indicated that the deadline for completion of the FDP application was February 13, 2010.*

Mr. Mench lacks knowledge or information sufficient to evaluate the truth or falsity of

the first four sentences of Paragraph 29. Similarly, Mr. Mench lacks information about the

immediacy of Clackamas County's response, but admits that Mr. O'Connor received a Notice of

Incomplete Application dated December 3, 2009. Mr. Mench admits that the Notice stated that

the application was incomplete and that it lacked required application documents, but lacks

information about the timing of Mr. O'Connor's averred delivery of those documents. Mr.

Mench admits that the Notice indicated a concern about FEMA insurance rates, but lacks

information or knowledge sufficient to evaluate the truth or falsity of the averment that the

Notice's concern was itself false. Mr. Mench admits that the Notice's stated deadline was

February 13, 2010.

*30. Hewitt advised O'Connor that Hanschka also had determined that plaintiffs could not rely on the Base Flood Elevation ("BFE") certification from Firwood Design Group because the certification was incorrect and therefor* [sic] *would be insufficient for the FDP application. Firwood Design Group is a professional engineering and surveying firm with expertise that meets the requirements of the Clackamas County ZDOs for certifying BFEs.*

Mr. Mench lacks information or knowledge sufficient to evaluate the truth or falsity of

Paragraph 30.

*31. The ZDO's* [sic] *did not permit Hanschka or Clackamas County to reject the findings of Firwood Design Group unless the County had information from a professional engineer or surveyor that contradicted Firwood's certification. Hanschka and the County did not have such information.*

Mr. Mench lacks information or knowledge sufficient to evaluate the truth or falsity of

Paragraph 31 and as such denies it.

*32. On December 2, 2009, Hewitt also advised O'Connor that the FDP application was incomplete because plaintiffs had not obtained a Letter of Map Amendment ("LOMA") from FEMA. There is no requirement in the ZDOs that an applicant who otherwise is entitled to an FDP permit must apply for or obtain a LOMA.*

Mr. Mench lacks information or knowledge sufficient to evaluate the truth or falsity of

Paragraph 32 and as such denies it.

*33. On December 2, 2009, Hewitt then gave O'Connor a LOMA application form. Obtaining a LOMA was a newly imposed requirement for completion of the FDP application. Hewitt told O'Connor that the LOMA process might require additional time for completion of the FDP application process. Hewitt urged O'Connor to sign a waiver in order to extend the time the County had to make a decision on the FDP application. Without an extension, the application would be void and the plaintiffs would be subjected to all the fines at $3500 per day per lot since*

*the first day of the beginning the construction of the revetment, as well as reapplication of the permit and fees. Because of this threat and over objection, O'Connor signed an extension on December 2, 2009, and agreed to submit a LOMA.*

Mr. Mench lacks information or knowledge sufficient to evaluate the truth or falsity of

Paragraph 33 and as such denies it.

*34. It is a violation of state law to coerce an applicant to sign an extension. ORS 215.427(9).*

Paragraph 34 is a conclusory statement of law that oversimplifies the law it cites. As

such, Mr. Mench denies Paragraph 34.

*35. Later, after hours at 7:30pm, December 2, 2009, Hancshka emailed O'Connor and advised him that O'Connor had gotten the wrong LOMA form from Hewitt at the office and that O'Connor had to complete a different form, a LOMC. Hancshka provided the form to O'Connor and falsely advised O'Connor that Clackamas County was under significant pressure from FEMA for the revetment work. Hancshka also stated that he and Clackamas County might find that Firwood Design Group did not have the qualifications to process a LOMC and suggested other companies for O'Connor to use.*

Mr. Mench admits that Mr. Hanschka sent Mr. O'Connor an email regarding a possible

LOMA on December 2, 2009 at 7:18pm. However, Mr. Mench denies the remaining

characterization of the contents of that email.

*36. On December 22, 2009, O'Connor submitted the LOMC paperwork to FEMA.*

Mr. Mench lacks information or knowledge sufficient to evaluate the truth or falsity of

Paragraph 36 and as such denies it.

*37. On January 12, 2010, Clackamas County conditionally approved the PRCA application "for a proposed dwelling and rip-rap river stabilization within the Principal River Conservation Area." The conditions included obtaining construction permits and approvals and "any other necessary federal and/or state permits/approvals.*

Mr. Mench lacks information or knowledge sufficient to evaluate the truth or falsity of

Paragraph 37 and as such denies it.

*38. There was no requirement under federal or state law that plaintiffs apply for or obtain a LOMA or LOMC for the revetment or the development of a single family residence on Lot 4400 as proposed by O'Connor and Konell.*

Mr. Mench lacks information or knowledge sufficient to evaluate the truth or falsity of

Paragraph 38 and as such denies it.

*39. On February 3, 2010, Benthin requested a code violation hearing with substantial fines based upon the alleged failure to complete the FDP application by October 26, 2011 and for the construction of the rip rap wall without land use approval.*

Mr. Mench admits that Ms. Benthin requested a code violation hearing on February 3,

2010, but denies the remaining characterization of that request.

*40. On February 9, 2010, FEMA requested a signed copy of a Community Acknowledgment. The Community Acknowledgement was a part of the LOMC application that had to be signed by Clackamas County and submitted prior to FEMA making a decision on the LOMC. Signing of the Acknowledgment by the County was an administrative function. Regardless, there was no good cause not to sign the Community Acknowledgement.*

Mr. Mench lacks information or knowledge sufficient to evaluate the truth or falsity of

Paragraph 40 and as such denies it.

*41. On February 12, 2010, Lifestyle requested that the hearing on the code violation be set over until the processing of the LOMC application had been completed. Benthin opposed this extension and on February 18, 2010, Clackamas County denied a postponement.*

Mr. Mench lacks information or knowledge sufficient to evaluate the truth or falsity of

Paragraph 41 and as such denies it.

*42. On February 16, 2010. Hanschka refused O'Connor's demand that Hanschka sign the LOMC application. Hanschka created a Catch-22: because FEMA could not finalize the LOMC process without the Community Acknowledgment, Hanschka's refusal to sign the Community Acknowledgement effectively prevented plaintiffs O'Connor and Konell from complying with the requirements imposed upon them by Clackamas County and Hanschka in December, 2009, to obtain a LOMC.*

Mr. Mench lacks information or knowledge sufficient to evaluate the truth or falsity of

Paragraph 42 and as such denies it.

*43. On February 23, 2010, the Code Violation hearing was held. The issue as stated in the Notice was that plaintiffs Lifestyle and Konell removed vegetation and constructed the rip rap wall without land use approval.*

Mr. Mench admits the averments in Paragraph 43.

*44. The hearings officer found that in December 2009, plaintiff O'Connor had in fact submitted the materials defendant Hanschka required to complete the application for the FDP.*

Mr. Mench admits the averments in Paragraph 44.

*45. Clackamas County recorded the hearing by audio equipment as was required by the ZDO 1303.05.*

Mr. Mench admits that Clackamas Country recorded the hearing by audio equipment, but

denies that Clackamas County ZDO § 1303.05 requires the use of audio equipment.

*46. Immediately after the conclusion of the hearing, defendant Mench engaged in an ex parte conversation with the County hearings officer. Mench advised the hearings officer that a finding that the permit was complete was not acceptable and that sanctions should be imposed upon plaintiffs.*

Mr. Mench admits that he had a conversation with the County Hearings Officer Carl Cox,

but denies the remainder of Paragraph 46. Specifically, Mr. Mench denies that his conversation

with Hearings Officer Cox was in any way an improper *ex parte* communication. Further, Mr.

Mench denies Paragraph 46's characterization of the contents of the conversation between Mr.

Mench and Mr. Cox.

*47. On March 8, 2010, O'Connor again contacted Hanschka and requested that Hanschka sign the Community Acknowledgement. Hanschka arbitrarily and without cause refused to sign the Community Acknowledgement. Because of Hanschka's refusal to sign the Community Acknowledgement, the LOMC process could not be completed.*

Mr. Mench lacks information or knowledge sufficient to evaluate the truth or falsity of

Paragraph 47 and as such denies it.

*48. On March 17, 2010, the hearings officer issued a "Continuing Order." The Continuing Order was based upon evidence not presented at the hearing and addressed issues other than the completion of the applications. Among other things, the Continuing Order commanded that plaintiff Konell obtain "required permits from the County for this development activity within the FMD." The Continuing Order also prohibited plaintiff O'Connor and Konell from planting vegetation on and behind the revetment, as required by the ODSL and the Emergency Authorization.*

Mr. Mench admits that Hearings Officer Cox issued a "Continuing Order" on March 17, 2010 and admits that the Order contained the specific provisions alleged in Paragraph 48's final two sentences. However, Mr. Mench lacks information or knowledge sufficient to evaluate the truth or falsity of the Paragraph 48's second sentence and as such denies it.

*49. Assuming that the Continuing Order was valid, if no objections had been made to the Order within 10 days of its issuance, the Continuing Order would have become effective. However, because Lifestyle, O'Connor and Konell timely filed objections to the Order, the hearings officer was obligated pursuant to under the Clackamas County Administrative Code, sec. 2.07.100(E) to respond to the objections prior to the Continuing Order going into effect.*

Mr. Mench lacks information or knowledge sufficient to evaluate the truth or falsity of Paragraph 49 and as such denies it. The final sentence of Paragraph 49 is a conclusory statement of law that oversimplifies the law it cites, and as such Mr. Mench denies it.

*50. The hearings officer did not respond to the objections.*

Mr. Mench lacks information or knowledge sufficient to evaluate the truth or falsity of Paragraph 50 and as such denies it.

*51. Pursuant to Clackamas County Administrative Code 2.07.100, a Final Order should have been issued no later than March 9, 2010, i.e. 14 days after the hearing record was closed.*

Mr. Mench lacks information or knowledge necessary to evaluate Paragraph 51's truth or falsity and as such denies it.

*52. Pursuant to Clackamas County Administrative Code 2.07.130, plaintiffs O'Connor and Konell had a right to review of a Final Order. Because a Final Order had not been issued as required, plaintiffs were denied the right to seek a Writ of Review in Circuit Court as provided in ORS 34.010-34.100.*

Mr. Mench lacks information or knowledge sufficient to evaluate Paragraph 52's truth or falsity and as such denies it.

*53. Defendants Clackamas County and Benthin manipulated, altered, destroyed and/or lost the hearing records.*

Mr. Mench lacks information or knowledge sufficient to evaluate the truth or falsity of Paragraph 53 and as such denies it.

*54. The destruction of the recorded February 23, 2010, proceedings also prevented effective judicial review of the alleged violation.*

Mr. Mench lacks information or knowledge sufficient to evaluate Paragraph 54's truth or falsity and as such denies it.

*55. On March 30, 2010, O'Connor again asked Hanchska to sign the Community Acknowledgement so that the LOMC process could be completed and plaintiff Konell could comply with the mandate of the Continuing Order to obtain the required permits from the County. Hanschka arbitrarily and without just cause refused to do so.*

Mr. Mench admits that Mr. O'Connor asked Mr. Hanschka to sign a Community Acknowledgement form on March 30, 2020, but lacks information or knowledge sufficient to evaluate the truth or falsity of the remainder of Paragraph 55, and as such denies it.

*56. Defendants Clackamas County and Hanschka's requirement that plaintiffs complete a LOMA/LOMC application in order to comply with the ZDOs and complete the FDP application was a sham.*

Mr. Mench lacks information or knowledge sufficient to evaluate Paragraph 56's truth or falsity and as such denies it.

*58. Even if a LOMA/LOMC was a legitimate requirement for obtaining the FDP, defendants Hanschka, Benthin and Clackamas County did not intend to allow plaintiffs to complete the FDP application by submission of a LOMA/LOMC to FEMA.*

Mr. Mench lacks information or knowledge sufficient to evaluate the truth or falsity of

Paragraph 58 and as such denies it.

*59. On or about March 30, 2010, Mench trespassed upon property owned by Lifestyle and/or Konell and took photos of the property. Mench then generated a complaint that plaintiffs had violated ZDOs. Based upon the complaint from Mench, on March 30, 2010, Benthin served Lifestyle two separate code violations for two homes owned by Lifestyle directly down-river from Lots 4200-4400. The homes were built by Big Mountain as the contractor. Big Mountain and plaintiff O'Connor had applied for the development and construction permits relating to property that was the subject of the citations. Benthin had no meritorious basis for these actions but did so to "target" plaintiffs O'Connor and Big Mountain, interfere with their business, jeopardize Big Mountain's CCB license, and damage their business relations.*

Mr. Mench admits that he took pictures of property owned by Konell or Lifestyle

Ventures but denies that he trespassed on the property. Mr. Mench admits that he sent pictures to

Clackamas County, but denies the characterization of that communication as a complaint about

violations of ZDOs. Mr. Mench denies that he was the only person to take photos of property

owned by the Plaintiffs. Mr. Mench admits that Ms. Benthin issued code violations for two

properties owned by Lifestyle ventures, but Mr. Mench lacks information or knowledge

sufficient to evaluate the truth or falsity of the remainder of Paragraph 59 and as such denies it.

*60. On April 14, 2010, Benthin notified the Pepos family that the art studio that Big Mountain had constructed in 2005 was considered 'habitable space' and was illegal. At the time of the complaint, Big Mountain was constructing a sauna for the Pepos family. Without any hearing, Benthin issued a violation letter and caused the permitting of the electrical work to be delayed, thus shutting down the job for 3 weeks time and subsequently did not respond to the owners' timely request to discuss the shut down order.*

Mr. Mench lacks information or knowledge sufficient to evaluate the truth or falsity of

Paragraph 60 and as such denies it.

*61. On May 19, 2010, Hanschka issued the Denial for Flood Plain Development permit. The denial was arbitrary and served no governmental purpose. The Denial was based upon fabricated and incorrect information and was based upon the finding that the LOMA application was incomplete. In fact, FEMA had reviewed the information submitted to it by O'Connor, had checked the technical and survey information that O'Connor submitted and verified that it was correct, and effectively had approved the LOMA on May 5, 2010. Final approval was aborted as a result of Hanschka concocting a plan: he would not sign the Community Acknowledgement and, thus, would prevent FEMA from issuing a LOMA because the LOMA application would be deemed incomplete.*

Mr. Mench denies that FEMA had effectively approved a LOMA on May 5, 2010. Mr.

Mench lacks information or knowledge sufficient to evaluate the truth or falsity of the remainder

of Paragraph 61 and as such denies it.

*62. Defendant Clackamas County's continued refusal to approve the FDP is arbitrary and serves no governmental purpose.*

Mr. Mench denies Paragraph 62.

*63. On December 14, 2010, Benthin issued a code violation to O'Connor and Konell that they were using residential property, i.e., the Salmon River Rd. property, for commercial purposes. Benthin had no meritorious basis to issue the notice of code violation.*

Mr. Mench admits that Ms. Benthin issued the averred code violation but denies that Ms.

Benthin had no meritorious basis for that action.

*64. On December 22, 2010, and March 9, 2011, Benthin issued code violations to Fred Accuardi for his subdivision that Big Mountain had developed. Benthin had no meritorious basis for these actions but did so to "target" plaintiffs O'Connor and Big Mountain, interfere with their business, and damage their business relations.*

Mr. Mench admits that Ms. Benthin issued the averred code violations but denies the

remainder of Paragraph 64.

*65. On March 22, 2011, O'Connor met with County building officials who agreed that there were no violations at the Accuardi subdivision and they forwarded Benthin written notice of this fact immediately. Notwithstanding this information, Benthin scheduled Mr. Accuardi's complaint for a hearing at which she would seek substantial fines from O'Connor and Big Mountain.*

Mr. Mench lacks information or knowledge sufficient to evaluate the truth or falsity of

Paragraph 65 and as such denies it.

*66. On March 22, 2011, shortly after O'Connor's meeting with building officials relating to the Accuardi subdivision, Benthin issued a code violation to O'Connor and Konell for unlawful business activities at the Salmon River Rd. property. There was no basis for this code violation.*

Mr. Mench admits that Ms. Benthin issued the averred code violation, but denies the

remainder of Paragraph 66.

*67. In or about May 2011, the County advised William Wright that the repair work to his property by Big Mountain after a flood was a potential code violation. The work was for repair of damage to Wright's well, septic system and storage shed. Because the work was all repair, no permits were required. Benthin had no meritorious basis for these actions but did so to "target" plaintiffs O'Connor and Big Mountain, interfere with their business, and damage their business relations.*

Mr. Mench lacks information or knowledge sufficient to evaluate the truth or falsity of

Paragraph 67 and as such denies it.

*68. On June 1, 2011, Clackamas County requested that the Continuing Order be vacated and that the Compliance Hearings Officer schedule a new de novo hearing on the alleged code violations that ewere* [sic] *subject to the February 23, 2010, administrative hearing.*

Mr. Mench lacks information or knowledge sufficient to evaluate the truth or falsity of

Paragraph 68 and as such denies it.

*69. On June 1, 2011, the Compliance Hearings Officer vacated the Continuing Order and ordered a new de novo hearing on the alleged violations. The basis for the Order was: "The absence of an audio recording of the February 23, 2010, hearing would thwart potential judicial review of that hearing, the March 17, 2010, Continuing Order, and any final order issued pursuant to the [County's] original complaint."*

Mr. Mench lacks information or knowledge sufficient to evaluate the truth or falsity of
Paragraph 69 and as such denies it.

*70. On June 13, 2011, Benthin issued a Notice of Hearing and Complaint that plaintiff Konell, as*

*well as Lifestyle, had violated ZDO 703 by constructing the rip-rap wall without an FDP permit. Prior to the scheduled hearing, the County dismissed the code violation complaint against plaintiff Konell and Lifestyle without prejudice to re- charge plaintiff Konell and Lifestyle for the alleged violations.*

Mr. Mench lacks information or knowledge sufficient to evaluate the truth or falsity of Paragraph 70 and as such denies it.

*71. The County's dismissal of the code violation complaint thwarted resolution of the alleged code violation that Konell had violated Title 12 and 13 of the ZDOs by "fail[ing] to submit complete land use applications to abate violation with river." Hanschka's previous demands that plaintiffs O'Connor and Konell obtain a LOMA/LOMC as a condition of the FDP permit, coupled with Hanshcka's refusal to sign the Community Acknowledgement has made subsequent FDP applications for Lot 4400 futile and has prevented development of Lot 4400. Defendants Hanscka and the County thus have created a legal quagmire. Plaintiffs O'Connor and Konell have not yet obtained an FDP for the revetment and, thus, arguably, have continued to violate the ZDOs. Konell cannot develop Lot 4400 as proposed because of the threat of additional code citations for not having a PRCP or FDP permit. However, O'Connor and Konell cannot complete the requirements imposed upon them with respect to the FDP application (i.e., to obtain a LOMA/LOMC) because Hanschka has refused to sign the Community Acknowledgement. Plaintiff Konell thus has been denied the procedural or substantive benefits of the ZDOs and County regulations.*

Mr. Mench denies the averments in Paragraph 71.

*72. In or about September 2011, Benthin issued a notice of possible code violation against Terry and George Skorich for failing to obtain a PRCA permit for landscaping. Big Mountain had performed this work. No permit was required for such work. Benthin had no meritorious basis for these actions but did so to "target" plaintiffs O'Connor and Big Mountain, interfere with their business, and damage their business relations.*

Mr. Mench admits that Ms. Benthin issued the averred notice and that Big Mountain had

performed the work at issue. Mr. Mench denies the remainder of Paragraph 72.


### FIRST CLAIM FOR RELIEF
*Violation of Substantive Due Process*
*(All Plaintiffs vs. all Defendants)*

*73. Plaintiffs reallege paragraphs 1-72 and incorporate them by reference herein.*

Mr. Mench incorporates his responses to Paragraphs 1–72.

*74. This claim is brought against defendants Benthin, Hanschka and Mench in their individual capacities as well as against Clackamas County.*

Mr. Mench admits the averments in Paragraph 74.

*75. Plaintiff Konell has protected property interests. As the property owner of Lot 4400, she had the right to develop Lot 4400 consistently with Clackamas County ZDO's and state and federal law, obtained an Emergency Authorization from ODSL to construct stream bank protection, and was granted a PRCA permit from Clackamas County to construct a residence on that property.*

Mr. Mench lacks information or knowledge sufficient to evaluate the truth or falsity of the averment that Ms. Konell owns the property at issue and on that basis denies the averment. Mr. Mench admits that property owners generally have the right to develop their property in compliance with all relevant permit requirements, but Mr. Mench denies that Ms. Konell obtained all the permits necessary to develop the property at issue.

*76. Plaintiffs Konell and O'Connor have a protected property interest. As property owners of the Salmon River property, Konell and O'Connor had the right to develop the Salmon River property consistently with Clackamas County ZDO's and state and federal law and obtained a building permit from Clackamas County to construct a single family residence on that property.*

Mr. Mench lacks information or knowledge sufficient to evaluate the truth or falsity of the averment that Plaintiffs Konell and O'Connor own the property at issue. Mr. Mench admits that property owners generally have the right to develop their property in compliance with all relevant permit requirements, but Mr. Mench denies that Mr. O'Connor or Ms. Konell obtained all the permits necessary to develop the property at issue.

*77. At all material times, defendants acted under color of state law.*

Mr. Mench denies Paragraph 77.

*78. At all material times, defendant Mench acted in concert with the other defendants.*

Mr. Mench denies Paragraph 78.

*79. The actions of defendants Hanschka and Benthin were approved by final decision makers in Clackamas County or were ratified by Clackamas County.*

Mr. Mench lacks information or knowledge sufficient to evaluate the truth or falsity of Paragraph 79 and on that basis denies it.

*80. Defendants' sustained and myriad efforts to frustrate the development of Lot 4400, including the delay and denial of the FDP permit, the continued refusal to approve the FDP permit, the effective denial and continued denial of the PRCP permit, the issuance of meritless citations relating to Lot 4400, the refusal to sign the Community Acknowledgement, and the thwarting of administrative and judicial review of the plaintiffs' right to entitlement to the FDP permit were arbitrary and capricious and served no legitimate governmental purpose in violation of the substantive due process rights of plaintiff Konell.*

Mr. Mench denies Paragraph 80.

*81. As a result of the conduct of defendants, plaintiff Konell has been damaged as follows: she has been denied the FDP permit; effectively denied the PRCA permit; been required to defend non-meritorious citations; has been denied the full benefit and enjoyment of Lot 4400; and has been denied the procedural and substantive benefits of the ZDOs and County regulations.*

Mr. Mench denies Paragraph 81.

*82. Defendant Benthin and Clackamas County's issuance of meritless citations relating to the Salmon River property were arbitrary and capricious and served no legitimate governmental purpose in violation of the substantive due process rights of plaintiffs Konell and O'Connor.*

Mr. Mench denies Paragraph 82.

*83. As a result of the conduct of defendants, plaintiffs Konell and O'Connor have been damaged as follows: they have been required to defend non-meritorious citations and have been denied the full use and benefit of the Salmon River Rd. property.*

Mr. Mench denies Paragraph 83.

*84. Plaintiffs are entitled to compensatory damages from each of the defendants in amounts to be determined at trial.*

Mr. Mench denies Paragraph 84.

*85. The conduct of defendants Hanschka, Benthin, and Mench was willful [sic] and malicious and plaintiffs are entitled to punitive damages against these defendants in amounts to be determined at trial.*

Mr. Mench denies Paragraph 85.

*86. Pursuant to 42 USC 1988 plaintiffs are entitled to reasonable costs and attorney fees.*

Mr. Mench denies Paragraph 86.

*SECOND CLAIM FOR RELIEF*
*Violation of Procedural Due Process*
*(All Plaintiffs vs. All Defendants)*

*87. Plaintiffs reallege paragraphs 1-86 and incorporate them by reference herein.*

Mr. Mench incorporates his responses to Paragraphs 1–86.

*88. Defendant Hanschka denied the FDP permits in violation of the ZDOs, wrongfully required the completion of the LOMA application as a condition of the FDP, wrongfully refused to sign the Community Acknowledgment, deprived plaintiff Konell of an appeal of the FPD permit decision, and thwarted plaintiff Konell's right to administrative and judicial review of the plaintiffs' entitlement to the FDP permit.*

Mr. Mench denies Paragraph 88.

*89. Defendant Benthin issued meritless citations, destroyed evidence, and knowingly provided false testimony.*

Mr. Mench denies Paragraph 89.

*90. Defendant County wrongfully imposed conditions for the approval of the PRCA permit, denied plaintiff Konell a fair administrative hearing by permitting and basing decisions upon ex parte communications and false testimony, failed to issue a final order on the alleged code violations subject to the February 26, 2010, hearing, destroyed evidence, prevented the appeal of the decision of the administrative hearings officer, and thwarted plaintiffs Konell's right to administrative and judicial review of the plaintiffs' entitlement to the FDP permit.*

Mr. Mench denies Paragraph 90.

*91. Defendant Mench jointly participated in the wrongful conduct of the County, Hanschka and Benthin, engage [sic] in improper ex parte communications with the hearings officer at the February 23, 2010, hearing, participated with Hanschka in the conduct summarized in paragraph 88 and with Benthin in the issuance of a number of the meritless code violations as summarized in paragraph 89.*

Mr. Mench denies Paragraph 91.

*92. As a result of the conduct of defendants, plaintiff Konell has been damaged as follows; she has been denied the FDP permit; effectively has been denied the PRCA permit; has been required to defend non-meritorious citations; has been denied a fair hearing and appeal on the code violations; has been denied the full use and benefit of Lot 4400; and has been denied the procedural and substantive benefits of the ZDOs and County regulations.*

Mr. Mench denies Paragraph 92.

*93. As a result of the conduct of defendants, plaintiffs Konell and O'Connor have been damaged as follows: they have been required to defend non-meritorious citations and have been denied the full use and enjoyment of the Salmon River Rd. property.*

Mr. Mench denies Paragraph 93.

*THIRD CLAIM FOR RELIEF*
*(Violation of 42 USC 1983--First Amendment Retaliation)*
*All Plaintiffs O'Connor Against Defendants County, Hanschka and Benthin*

*94. Plaintiffs reallege paragraphs 1-93 and incorporate them by reference herein.*

Mr. Mench incorporates his responses to Paragraphs 1–93.

*95. Plaintiffs' [sic] have the First Amendment rights to freedom of speech and the right to petition the government for redress of grievances.*

Mr. Mench admits Paragraph 95.

*96. Plaintiffs Konell and O'Connor exercised their First Amendment Rights to petition the government by insisting that Clackamas County follow federal and state law and the ZDOs and County regulations with respect to the development of Lot 4440, including but not limited to development of the revetment on Lots 4200-4400.*

Mr. Mench admits Paragraph 96.

*97. Additionally, plaintiffs Konell and O'Connor exercised their First Amendment Rights to petition the government by insisting that Clackamas County follow federal and state law and the ZDOs and County regulations with respect to the land use applications relating to the construction of the revetment on Lots 4200-4400, including proceedings relating to the citation that Konell had violated Title 12 and 13 of the ZDOs by "fail[ing] to submit complete land use applications to abate violation with river."*

Mr. Mench admits Paragraph 97.

*98. Additionally, plaintiffs O'Connor and Big Mountain exercised their First Amendment Rights as follows: (A) Their right to petition the government for redress by insisting Clackamas County follow federal and state law and the ZDOs and County regulations with respect to the land use applications and issue permits to him and/or Big Mountain to so that they could develop, construct and excavate properties on behalf of plaintiff Konell, Lifestyle and others; (B) O'Connor's right to testify that Clackamas County was inefficient in flood planning and response and had allowed the construction of an improper revetment structure on the Sandy River; and (C) their right to speak and write in public forums to express opinions and criticize*

*Clackamas County public policy and staff conduct regarding flood issues in Clackamas County.*

Mr. Mench admits Paragraph 98.

*99. Defendants retaliated against plaintiffs for exercising First Amendments Rights as alleged in paragraphs 96-98.*

Mr. Mench denies Paragraph 99.

*101. As a result of the retaliation for exercising their First Amendment Rights, plaintiffs Konell and O'Connor have been damaged as alleged in paragraphs 81, 83, and 92-93.*

Mr. Mench denies this paragraph, which is labeled Paragraph 101, but which should be

Paragraph 100.

*101. As a result of the retaliation for exercising First Amendment Rights as alleged in paragraph 98, Big Mountain has been required to defend non-meritorious citations and has lost business opportunities.*

Mr. Mench denies Paragraph 101.

*102. Plaintiffs are entitled to compensatory damages from each of the defendants in amounts to be determined at trial.*

Mr. Mench denies Paragraph 102.

*103. The conduct of defendants Hanschka and Benthin was willful* [sic] *and malicious and plaintiffs are entitled to punitive damages against these defendants in amounts to be determined at trial.*

Mr. Mench denies Paragraph 103.

*WHEREFOR, plaintiffs pray:*
*A. For damages against defendants in amounts to be determined at trial.*
*B. For punitive damages against defendants Hanschka, Benthin and Mench in amounts to be determined at trial.*
*C. For reasonable attorney fees.*
*D. For costs.*
*E. For such other and further relief as this court deems appropriate.*
*F. Plaintiffs request a jury trial on all issues so triable.*

Mr. Mench denies that Plaintiffs are entitled to any of the requested relief.

## DEFENDANT MENCH'S AFFIRMATIVE DEFENSES

1. Mr. Mench is not a public official and was not acting under color of state law. For example, Mr. Mench, who is retired, at all material times volunteered as the Land Use Chair of the Mt. Hood Community Planning Organization, which this Court has already determined is not a public body. Additionally, Mr. Mench did not act in concert with, conspire with, or otherwise act together with public officials in connection with any action or decision related to the actions or properties of Plaintiffs. Because Mr. Mench is neither a public official nor acted under color of state law, he is not subject to suit under 42 U.S.C. § 1983.

2. If the Court determines that Mr. Mench is a public official or acted under color of state law, he is entitled to qualified immunity because at all material times Mr. Mench acted in reasonable reliance on existing law. For example, when taking photographs of the property at issue, Mr. Mench chose to do so from the Sandy River itself, which is a public space, rather than trespassing onto private property.

DATED: January 29, 2013

/s/ DANIEL J. ROHLF
Daniel J. Rohlf (OSB #99006)
Rohlf@lclark.edu
Earthrise Law Center
10015 S.W. Terwilliger Blvd
Portland, OR 97219-7768
Tel: (503) 768-6707
Fax: (503) 768-6642
